UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş.,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>        Defendant. | Court No. 24-cv-00094 |

**COMPLAINT**

Plaintiff Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. ("Kaptan"), by and through its undersigned counsel, hereby brings this action against the United States ("Defendant"), and alleges and states as detailed below.

**INTRODUCTION**

1. This action challenges the final results of the Department of Commerce ("Commerce") in the 2021 administrative review of the countervailing duty (CVD) order on steel concrete reinforcing bar from Turkey with respect to four "programs" or findings set forth below.

2. Kaptan challenges Commerce's decision that exemptions from Turkey's Bank and Insurance Transactions Tax (BITT) are countervailable as *de jure* specific. The record shows that the BITT exemption is available to all establishments that have an industrial registry certificate, and Turkish law requires that every establishment within the industrial sector of the Turkish economy (with the exception of handicrafts, domestic crafts, and small repair shops) possess an industrial registry certificate before starting production activities. Thus, every

industrial enterprise in Turkey is eligible for BITT exemptions. This makes BITT exemptions *de jure* not countervailable, as they are generally available throughout Turkey's economy.

3. Kaptan also challenges Commerce's decision to apply adverse facts available ("AFA") with respect to the rate applied to Kaptan for the benefit arising from the BITT exemption. Kaptan reported all of its purchases of foreign exchange during the period of review, *i.e.*, its exchanges of Turkish lira for foreign currencies. However, Commerce read the Turkish statute as applying the BITT exemption also to transactions in which a company sold one foreign currency to purchase another foreign currency (so-called "arbitrage" transactions). Commerce's interpretation of the Turkish law was never conveyed to Kaptan during the course of the proceeding, when Kaptan may have "cured" its reporting; it was not evident from any precedents; and it was arbitrary and capricious.

4. Kaptan also challenges Commerce's decision concerning the benchmark for valuing a *gratis* lease from the government of certain unimproved industrial land outside the Black Sea village of Sürmene, about 1,000 km from Istanbul. As a benchmark, Commerce selected a subset of properties from within a benchmark submitted by petitioners, which consisted of certain improved industrial leases in a major industrial and transportation hub in the Istanbul area. Commerce rejected, as "unusable," Kaptan's benchmark, even though it was based on more comparable land much closer to Sürmene than petitioners' proposed benchmark. Commerce rejected Kaptan's benchmark on the improper grounds that (i) it was prepared for purposes of the review, (ii) it was submitted as proprietary information, and (iii) the data may have been tainted by the inclusion of non-private leases and Kaptan's own leases.

5. Kaptan also challenges Commerce's decision to apply AFA to a program concerning Social Security Support under Law 4447. The Government of Türkiye reported the amount of Kaptan's usage of this program in a questionnaire response. Kaptan also provided its usage

information for this program, but Commerce unlawfully rejected that submission and refused to consider Kaptan's usage information at verification.

6. Kaptan also challenges Commerce's decision to apply AFA to a program concerning Social Security Support under Law 27256. Kaptan provide its usage information for this program, but Commerce unlawfully rejected that submission and refused to consider Kaptan's usage information at verification. Moreover, since Commerce rejected the only submission providing evidence of the existence of this program, there remained no evidence on the record on the basis of which to make any determination whatsoever as to the existence of this program. Hence, Commerce's application of AFA as to Law 27256 is unsupported by substantial evidence and otherwise unlawful.

7. The foregoing decisions were made without the support of substantial evidence and are otherwise not in harmony with law. Kaptan seeks a remand with instructions that Commerce find (1) that BITT exemptions not countervailable because they lack *de jure* specificity; (2) that Commerce's application of AFA as to the BITT exemption was arbitrary and capricious insofar as Kaptan had no reason to believe that arbitrage transactions were reportable; (3) that Commerce's rejection of the benchmark information provided by Kaptan was unlawful and unsupported by substantial evidence on the record and that Commerce must consider whether the private-sector leases in Kaptan's proffered benchmark are more comparable to the Nur parcel than are the leases in petitioners' proffered benchmark; that Commerce's application of AFA as to Law 4447 was unlawful such that Commerce must select as the amount of the benefit the amount reported in the response of the Government of Turkey; and that Commerce's application of AFA as to Law 27256 was not supported by substantial evidence and otherwise unlawful insofar as (a) there was no evidence that such a law even existed and (b) if there was such evidence, then it appeared only in the submission rejected as untimely by

Commerce, and such submission must be restored to the record to support a finding of countervailability.

## ADMINISTRATIVE DECISION TO BE REVIEWED

8. Paragraphs 1 to 7 are realleged and incorporated herein by reference.

9. Kaptan contests certain aspects of the final results of the countervailing duty administrative review on steel concrete reinforcing bar from the Republic of Türkiye, published as, *Steel Concrete Reinforcing Bar from the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 35,071 (Dep't of Commerce May 1, 2024) ("Final Results"), and accompanying Decision Memorandum ("Decis. Memo").

## JURISDICTION

10. Paragraphs 1 to 9 are realleged and incorporated herein by reference.

11. Kaptan brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii) to contest Commerce's *Final Results* under 19 U.S.C. § 1675. *See Final Results*, 89 Fed. Reg. 35,071, and accompanying *Decis. Mem*. Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

12. Paragraphs 1 to 11 are realleged and incorporated herein by reference.

13. Kaptan is a Turkish producer and exporter of subject merchandise that participated in the review resulting in the contested determination by submitting factual information and legal argument and by participating in the on-site verification conducted by Commerce. Accordingly, Kaptan is an interested party within the meaning of 28 U.S.C. § 2631(k)(1), 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), and is a party to the proceeding within the meaning of 28 U.S.C. § 2631(c).

**TIMELINESS**

14. Paragraphs 1 to 13 are realleged and incorporated herein by reference.

15. Commerce published the Final Results on May 1, 2024. See *Final Results*, 89 Fed. Reg. 35,071. This action was commenced by the filing of a Summons, on May 30, 2024, within 30 days after the May 1, 2024, publication of the *Final Results*; and by the filing of this Complaint within 30 days after the filing of the Summons. Thus, this action was timely commenced pursuant to 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 of the Rules of this Court.

**STATEMENT OF FACTS**

16. Plaintiff incorporates by reference paragraphs 1 through 15 of this Complaint.

17. Commerce initiated this review by notice published as *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023), naming, *inter alia*, Kaptan and its cross-owned affiliates as respondents.

18. Commerce selected Kaptan as a mandatory respondent. Commerce memorandum, "Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkey: Respondent Selection Memorandum" (Mar. 28, 2023), barcode 4358792.

19. Commerce subsequently issued a questionnaire to the Government of Türkiye ("GOT"), "Steel Concrete Reinforcing Bar from the Republic of Turkey: Initial Questionnaire in Countervailing Duty Administrative Review for 2021," barcode 4361512, naming Kaptan as one of the producers/exporters subject to review, *id.* at I-1.

20. Kaptan participated as a mandatory respondent, filing, *inter alia*, the following substantive submissions:

   a. Affiliated parties response, April 17, 2023.
   b. Initial questionnaire response, May 26, 2023.

    c. Affiliated parties supplemental response, July 12, 2023.

    d. Benchmark submission for LTAR property valuation, July 17, 2023.

    e. Benchmark rebuttal submission, July 31, 2023.

    f. Supplemental questionnaire response #2, August 18, 2023.

    g. Supplemental questionnaire response #3, October 2, 2023.

    h. Clarification of receipt of certain social security benefits, October 12, 2023. Commerce rejected this filing as untimely (barcode 4446852).

    i. Second benchmark submission, October 31, 2023.

    j. Pre-preliminary comments, October 25, 2023.

    k. Pre-preliminary rebuttal comments, November 21, 2023.

    l. Case brief, January 8, 2024.

    m. Rebuttal brief, January 13, 2024.

21. In addition, Kaptan participated in an on-site verification, which entailed the following submissions by Kaptan:

    a. Minor corrections in advance of verification, October 18, 2023.

    b. Filing of verification exhibits, October 25, 2023.

22. In regard to the verification of Kaptan referenced in para. 21, Commerce issued the following documents:

    a. Verification agenda, barcode 4437636, September 28, 2023.

    b. Verification report – Kaptan, barcode 4457901, November 2, 2023.

23. Commerce issued the preliminary results of the review as *Steel Concrete Reinforcing Bar from the Republic of Turkey: Preliminary Results of Countervailing Duty Administrative Review and Rescission of Administrative Review, in Part; 2021*, 88 Fed. Reg. 85,234 (Dep't of

Commerce Dec. 7, 2023), accompanied by Commerce's "Decision Memorandum for the Preliminary Results" (barcode 4472600) (November 30, 2023) ("Prelim. Decis. Memo") and by Commerce's "Preliminary Results Calculation" memorandum for Kaptan, barcode 4474422 (November 30, 2023).

24. Commerce issued the final results of the review as *Steel Concrete Reinforcing Bar from the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 35,071 (Dep't of Commerce May 1, 2024), accompanied by Commerce's "Decision Memorandum for the Final Results" (barcode 4549376) (April 24, 2024) ("Final Decis. Memo").

25. In its final results, Commerce assigned a 0.89% benefit rate for Exemptions from Bank and Insurance Transactions Tax (BITT) on Foreign Exchange Transactions received by Kaptan on the basis of Commerce's determination that BITT exemptions are *de jure* specific. The selected benefit rate of 0.89% was applied on an AFA basis, discussed below.

26. *De jure* specific means that the number of industries or enterprises eligible to benefit from the subsidy is expressly limited by law.

27. In the administrative proceeding, Kaptan argued that the law governing the BITT does not provide any exceptions for any enterprise or industry or groups of enterprises or industries, and therefore that the law is not *de jure* specific.

28. In its Decis. Memo, at 13, Commerce rejected Kaptan's argument, stating, "we found the program to be specific under section 771(5A)(D)(i) of the Act as it is limited to firms that conduct certain types of foreign exchange transactions." (Footnote omitted.)

29. Kaptan also explained that, among the categories of entities that may benefit from the BITT exemption, are all establishments that have an Industrial Registry certificate. Turkish law

defines the entities for which possession of an Industrial registry certificate is mandatory to include nearly every type of manufacturer, natural resource extractor, repair shop, etc.; that the Industrial Registry law does not contain any exceptions or exclusions (aside from small handicraft producers); and that the law makes it obligatory for all industrial establishments to register before beginning operations. The GOT provided the text of the BITT law and of the Industrial Registry law, as well as a table showing the distribution of Industry Registry certificates by industry.

30. Despite the evidence and arguments presented in the review, Commerce found the program to be *de jure* specific, stating, "we found the program to be specific under section 771(5A)(D)(i) of the Act as it is limited to firms that conduct certain types of foreign exchange transactions." Decis. Memo at comment 3.

31. Commerce further stated, "The GOT argued that industrial registry certificates can be obtained by all industrial enterprises. However, this does not demonstrate that all eligible enterprises actually apply for and obtain industrial registry certificates. Further, the universe of companies that may benefit from the program is necessarily limited to companies that make foreign exchange transactions. Finally, as noted above, Commerce has found this program countervailable in previous proceedings and the GOT has provided no new information regarding this program that would cause us to reconsider this finding." *Id*.

32. Commerce's final determination as to the countervailability of the BITT program ignores the fact that the Industrial Registry law, which defines the group of productive enterprises for which the BITT exemption is available (the other recipients are not productive enterprises but, rather, such entities as banks and export trading companies), contains no

express or implied exclusions as to any enterprise or industry not countervailable, as it lacks *de jure* specificity under section 771(5A)(D)(i) of the Act.

33. Further, Commerce's conclusion that the BITT exemption is *de jure* specific because it is "limited to firms that conduct certain types of foreign exchange transactions" is erroneous. In actuality, all holders of industrial certificates *qualify* for the BITT exemption, regardless of whether they *actually use* that exemption. The exemption is thus not limited to the firms that actually use it, but is available to all firms that qualify as holders of industrial registry certificates.

34. Commerce applied AFA to Kaptan's BITT exemption benefit rate, "based on Commerce's inability to verify that Kaptan had reported all benefits that it received under this program during the POR." *Id.* at comment 4. As explained in Commerce's verification report (barcode 4457901) at 7, while Kaptan reported all its foreign-exchange (FX) transactions involving the sale of Turkish lira and the purchase of FX, *e.g.*, US dollars, Kaptan did not report so-called "arbitrage" transactions, in which Kaptan sold one foreign currency in exchange for another foreign currency. As Commerce states, "Company officials explained that they did not view arbitrage involving foreign currencies (other than TL) as subject to the BITT program." *Id.*

35. In its case brief, Kaptan argued that Commerce could not lawfully apply AFA because (i) Commerce had not given Kaptan an opportunity to cure its alleged error in reporting, (ii) Commerce's interpretation that the BITT applied to arbitrage transactions was arbitrary and capricious and unsupported by substantial evidence, and (iii) Commerce's refusal to accept as a verification exhibit a screen shot showing Kaptan's total arbitrage transactions in the POR was likewise arbitrary and capricious.

36. In its Final Results, Commerce found that Kaptan's arguments were unpersuasive, and applied an AFA rate to Kaptan for the BITT program.

37. Commerce also calculated a countervailable benefit with respect to certain unimproved land that Kaptan's affiliate, Nur Gemicilik, occupied and used for purposes of a shipbuilding operation in Sürmene, Trabzon Province, under a rent-free 49-year lease from a Turkish government entity.  Sürmene is about 1000 km distant from Istanbul, and is far removed from the transport and infrastructure hub of the greater Istanbul area.

38. The parties offered two benchmarks for the valuation of the Sürmene lease.  Petitioners submitted a report they found on the Internet, prepared by real estate company Collier's International.  Kaptan provided a report prepared by the Turkish office of international realtors Cushman & Wakefield.  Commerce chose to rely solely on the Colliers report for benchmarking, selecting certain parcels in the city of Çerkezköy, Tekirdağ Province, adjacent to Istanbul, and citing its use of the same benchmark in a previous review.  Prelim. Decis. Memo at 16.

39. Kaptan fully briefed the issue of the land benchmark in its case brief.

40. In its final determination, Commerce continued to rely on the Colliers report as a benchmark, Final Decis. Memo at 10-12.  Commerce found that the Cushman & Wakefield report was unreliable because it was prepared for purposes of the litigation; because it was business proprietary; and because the benchmark data included lease values for government leases.

41. Commerce also applied AFA to Kaptan with respect to two programs concerning exemption from Social Security payments, one under Law 4447 and the other under Law 27256.

42. In its initial questionnaire response, at 57, Kaptan reported receiving benefits in the form of social security exemptions under, *inter alia*, Law 4447. Commerce did not ask Kaptan any follow-up questions in this issue.

43. Commerce asked the GOT questions about Law 4447 in a second supplemental questionnaire, to which the GOT responded on October 2, 2023 (barcode 4438731). The GOT answered the standard questions appendix, and provided the text of the law as well as usage figures for, *inter alia*, Kaptan.

44. On October 12, 2023, Kaptan sought to provide clarifications as to its own receipt of benefits arising from the GOT's October 2, 2023, response, including its benefits received under Law 4447, but Commerce rejected the filing as untimely (bar code 4446852).

45. At verification, Kaptan sought to provide information concerning its benefits under Law 4447, but Commerce declined to accept this information. *See*, Commerce's verification report at 9-10.

46. In its final determination, Commerce applied AFA to Kaptan in regard to the Law 4447 program because "the GOT failed to clearly identify the industry in which the respondent companies are classified under this program; further, it did not identify the usage codes that each industry is associated with." Final Decis. Memo at 17.

47. In regard to Law 27256, Kaptan reported its benefits under this law in its submission of October 12, 2023, which Commerce rejected as untimely, *supra*.

48. Kaptan sought to provide information concerning its benefits under Law 27256 at verification, but Commerce declined to accept this information; *see*, ¶44, *supra*.

49. In its final determination, Commerce applied AFA to Kaptan with respect to Law 27256, citing, as evidence of the program's existence, its own memorandum rejecting Kaptan's

October 12, 2023 submission, and the passage in its own verification report declining to accept information on the receipt of benefits under this program. Final Decis. Memo at 20-21.

## STATEMENT OF CLAIMS

### COUNT ONE

#### Commerce's Improperly Found BITT Exemptions To Be *De Jure* Specific

50. Plaintiff incorporates by reference paragraphs 1 through 49 of this Complaint.

51. The administrative record contains evidence that every industrial company in Turkey is required to obtain an industrial registration certificate before beginning operations, and that all these companies are eligible for exemption from the BITT. Commerce's decision that BITT exemptions are *de jure* specific is unsupported by substantial evidence on the record and is otherwise not in harmony with law.

### COUNT TWO

#### Commerce Improperly Rejected The C&W Report As A Potential Land Benchmark

52. Plaintiff incorporates by reference paragraphs 1 through 51 of this Complaint.

53. The property leased to Nur was unimproved industrial land near Sürmene, in a relatively sparsely-populated province about 1,000 km from Istanbul. Commerce chose a benchmark based on improved industrial land in the Istanbul area, and rejected a benchmark based upon comparable, unimproved land near Sürmene. Commerce's decision that the Cushman and Wakefield benchmark was unreliable and therefore could not be used as a benchmark is unsupported by substantial evidence on the administrative record and is otherwise not in harmony with law.

## COUNT THREE

### Commerce's Application Of Adverse Facts Available With Respect To Law 4447 Was Not Supported By Substantial Evidence And Was Otherwise Unlawful

54. Plaintiff incorporates by reference paragraphs 1 through 53 of this Complaint.

55. Assuming *arguendo* that the GOT's response concerning Law 4447 was incomplete, the record – specifically, the GOT's supplemental response of October 2, 2023 – nevertheless contains the full amount of benefits Kaptan received under this law. Commerce could, therefore, have readily calculated a benefit ratio for Kaptan based on this figure.

56. Moreover, when the issue pertaining to this law entered the record, Commerce abused its discretion by rejecting the submission in which Kaptan sought to provide its usage data for this program, and further abused its discretion by declining to accept any information in this connection during verification. Commerce's application of adverse facts available with respect to Law 4447 is therefore unsupported by substantial evidence and otherwise unlawful.

## COUNT FOUR

### Commerce's Application Of Adverse Facts Available With Respect To Law 27256 Was Not Supported By Substantial Evidence And Was Otherwise Unlawful

57. Plaintiff incorporates by reference paragraphs 1 through 57 of this Complaint.

58. When the GOT submitted its October 2, 2023 supplemental questionnaire response, Kaptan undertook a renewed analysis of its benefits under social security exemptions provided under Laws 4447 and 27256, which it submitted on October 12, 2023, as clarification comments with respect to the GOT's October 2 filing. Commerce rejected the filing of these clarification comments as untimely. Commerce's rejection of Kaptan's October 12 filing was arbitrary and capricious and an abuse of discretion.

59. With Commerce's rejection of Kaptan's October 12 filing, there remained no evidence of record that the Law 27256 program even existed, nor that Kaptan had received any benefits under that law. Commerce's application of adverse facts available was therefore unsupported by substantial evidence and hence unlawful.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment as follows:

(A)     Enter judgment in favor of Plaintiff;

(B)     Hold unlawful Commerce's determination that BITT exemptions are *de jure* specific;

(C)     Hold unlawful Commerce's rejection of the C&W report;

(D)     Direct Commerce to make a determination whether the benchmark in the C&W report is more comparable to the leased property than the benchmark in the Colliers report and, if so, to recalculate the benefit under the land LTAR program accordingly;

(E)     Hold unlawful Commerce's application of adverse facts available with respect to Law 4447;

(F)     Direct Commerce to calculate a benefit to Kaptan under Law 4447 according to the figure reported in the GOT's October 2, 2023 questionnaire response;

(G)     Hold unlawful Commerce's application of adverse facts available with respect to Law 27256;

(H)     Remand for a redetermination in harmony with the Court's decision; and

(I)     Grant Plaintiff such additional relief as the Court deems just and proper.

>Respectfully submitted,
>
>/s/ *David L. Simon*
>
>David L. Simon
>LAW OFFICES OF DAVID L. SIMON, PLLC
>1025 Connecticut Ave., N.W., Ste.1000
>Washington, D.C. 20036
>(202) 481-9000
>dlsimon@dlsimon.com
>
>Counsel for Plaintiff

Dated:  June 27, 2024

## CERTIFICATE OF SERVICE

      I certify that copies of the complaint in the above-captioned case were served by certified mail, return receipt requested, or email and first class mail(*), on this June 27, 2024, upon each of the interested parties listed below:

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza, Room 346
New York, New York 10278

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Office of the Chief Counsel
Trade Enforcement and Compliance
U.S. Department of Commerce
1401 Constitution Avenue NW
Washington, DC 20230

John R Shane, Esq.
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036

Matthew M. Nolan, Esq.
Arent Fox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344

Cagri Arici
Embassy of Türkiye
2525 Massachusetts Avenue, NW
Washington DC 20008

*Burak Guresci
Government of the Republic of Türkiye
Ministry of Trade
Sögütözü Mah. 2176. Sk. No: 63
06530 Çankaya/Ankara, Turkiye
Email: gurescib@ticaret.gov.tr

                                                /David L. Simon/
                                             David L. Simon
                                             Law Offices of David L. Simon, PLLC
                                             1025 Connecticut Ave., NW, Ste 1000
                                             Washington, DC 20036
                                             (202) 481-9000

Dated: June 27, 2024                                    *Counsel for Plaintiff*