**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br> and <br><br> REBAR TRADE ACTION COALITION, <br><br> Defendant-Intervenor. | **Court No. 24-cv-00096** <br><br> *PUBLIC VERSION* |

**RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**OF PLAINTIFF KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş.**

David L. Simon, Esq.
LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Tel.: (202) 481-9000
Email: DLSimon@DLSimon.com

Date: November 18, 2024          *Counsel to Kaptan Demir Çelik End. ve Tic, A.Ş.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENTS PURSUANT TO RULE 56.2(c)(1) ........................................... 3

    I.   Administrative Determination To Be Reviewed ....................................... 3

    II.  Issues Presented ..................................................................................... 3

    III. Relief Sought .......................................................................................... 5

STANDARD OF REVIEW ................................................................................. 6

SUMMARY OF THE ARGUMENT .................................................................. 7

ISSUE 1: BANK AND INSURANCE TRANSACTIONS TAX ........................ 11

    I.   STATEMENT OF FACTS – BITT ........................................................ 11

    II.  ARGUMENT – BITT ........................................................................... 16

        A.  Commerce's Finding of *De Jure* Specificity Is Contrary to Law ...... 16

        B.  Commerce's Application of AFA for Kaptan's BITT Exemption Is
            Unlawful ........................................................................................ 18

ISSUE 2: LAND LTAR BENCHMARK ............................................................ 23

    I.   STATEMENT OF FACTS – LAND LTAR ........................................... 23

    II.  ARGUMENT – LAND LTAR ............................................................... 25

        A.  Commerce's Rejection of the C&W Report Was Unlawful .............. 25

        B.  The C&W Benchmark Is Superior To The Colliers Benchmark ....... 28

ISSUE 3: AFA – SOCIAL SECURITY SUPPORT UNDER LAW 4447 ............... 31

    I.   STATEMENT OF FACTS –  AFA, LAW 4447 ..................................... 31

    II.  ARGUMENT – AFA, LAW 4447 ......................................................... 34

ISSUE 4: AFA – SOCIAL SECURITY SUPPORT UNDER LAW 27256 ............. 36

    I.   STATEMENT OF FACTS – AFA, LAW 27256 ................................... 36

    II.  ARGUMENT – AFA, LAW 27256 ....................................................... 39

CONCLUSIONS ................................................................................................. 42

## **TABLE OF AUTHORITIES**

**CASES**

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 93 S. Ct. 2367, 37 L. Ed. 2d 350 (1973) .......................................................................... 22

*BGH Edelstahl Siegen GmbH v. United States*, 600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022) ............................................................................................................. 17

*BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) ........................ 35

*Church v. Hubbard*, 6 U.S. 187, 2 Cranch 187 ........................................................... 20

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ....................................................... 7

*FDIC v. Meyer*, 510 U.S. 471, 476, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) ............ 40

*Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States,* 178 F. Supp. 2d 1305 (Ct. Int'l Trade 2001), ........................................................................................... 22

*Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369 (Fed. Cir. 2003) .................................................................................................................. 7, 19

*Kaptan Demir Çelik End. ve Tic. A.S. v. United States*, 2024 Ct. Intl. Trade LEXIS 116, Slip Op. 2024-116 (October 21, 2024) ......................................... passim

*Kaptan Demir v. United States*, CIT No. 22-149 ......................................................... 21

*Kaptan Demir v. United States*, CIT No. 23-131 ......................................................... 21

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244; 219 L. Ed. 2d 832 (2024). ..... 7, 20

*Nan Ya Plastics Corp. v. United States*,  810 F.3d 1333 (Fed. Cir. 2016). ................... 40

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ................... passim

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) ..................... 7, 29

*Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 273 F. Supp. 3d 1225 (Ct. Int'l Trade 2017) ................................................................................................. 9, 29

*Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 282 F. Supp. 3d 1352 (Ct. Int'l Trade 2018) .................................................................................................... 30

*Qingdao Sea-Line Int'l Trading Co. v. United States*,  503 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) .................................................................................................... 34

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023) ........ 17

*Sandt Tech. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344  (Fed. Cir. 2001) ..... 25, 26

*Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295  (Fed. Cir. 2016) ...... 25, 26

*United States v. Cont'l Forwarding, Inc.*, 53 C.C.P.A. 105  (1966) ............................. 20

*Vicentin S.A.I.C. v. United States*, 466 F. Supp. 3d 1227 (Ct. Int'l Trade 2020) .......... 22

*Zhaoqing New Zhongya Aluminum Co. v. United States*, 929 F. Supp. 2d 1324 (Ct. Int'l Trade 2013) .......................................................................................... 30

*Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011) ......................................................................................................................... 34

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) .................................................................................... 6

19 U.S.C. § 1677e(a). ................................................................................................ 34

19 U.S.C. § 1677e(b) ................................................................................................. 34

19 U.S.C. § 1677e(d)(2) ...................................................................................... 21, 23

19 U.S.C. § 1677m ..................................................................................................... 21

19 U.S.C. § 1677m(d) .......................................................................................... 15, 20

## OTHER AUTHORITIES

*britannica.com/* ........................................................................................................ 41

*merriamwebster.com/ dictionary* .............................................................................. 41

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, *reprinted in* 1994 U.S.C.C.A.N. 4040 .............. 17

*Webster's New International Dictionary of the English Language*, 2d ed. unabridged (1959) ..................................................................................................... 41

## REGULATIONS

19 C.F.R § 351.104(a)(2)(i) ................................................................................ 10, 39

19 C.F.R. § 351.104(a)(2)(ii) ................................................................................... 40

19 C.F.R. § 351.511(a)(2)(i) ..................................................................................... 29

## ADMINISTRATIVE DETERMINATIONS

*Affirmative Countervailing Duty Determination: Honey From Argentina*, 66 Fed. Reg. 50,613 (Dep't of Commerce Oct. 4, 2001) ....................................................... 27

*Certain Tool Chests and Cabinets From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 82 Fed. Reg. 56,582 (Dep't of Commerce Nov. 29, 2017) ...................................................................................... 27

*Certain Uncoated Groundwood Paper From Canada: Final Affirmative Countervailing Duty Determination,* 83 Fed. Reg. 39,414 (Dep't of Commerce Aug. 9, 2018)............................................................................................................... 27

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Rescission of Review, in Part, 2015*, 83 Fed. Reg. 1235 (Dep't of Commerce Jan. 10, 2018) ....................................................... 27

*Honey from Argentina: Preliminary Affirmative Countervailing Duty Determination and Alignment with Final Antidumping Duty Determination on Honey from the People's Republic of China*, 66 Fed. Reg. 14,521 (Dep't of Commerce Mar. 13, 2001).............................................................................27

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results and Partial Rescission of Countervailing Duty Administrative Review the Review; 2015*, 83 Fed. Reg. 16,051 (Dep't of Commerce April 13, 2018)............................................27

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind the Review in Part; 2015*, 82 Fed. Reg. 57,574  (Dep't of Commerce Dec. 6, 2017) ....................27

*Steel Concrete Reinforcing Bar from the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 35,071 (Dep't of Commerce May 1, 2024)...........................................................................................3

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş., | |
| Plaintiff, | |
| v. | **Court No. 24-cv-00096** |
| UNITED STATES, | |
| Defendant, | ***PUBLIC VERSION*** |
| and | |
| REBAR TRADE ACTION COALITION, | |
| Defendant-Intervenor. | |

## RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD
## OF PLAINTIFF KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş.

Plaintiff Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. ("Kaptan") respectfully moves for judgment on the agency record regarding the final results of the Department of Commerce ("Commerce") in the 2021 administrative review of the countervailing duty ("CVD") order on steel concrete reinforcing bar ("rebar") from the Republic of Türkiye and submits this brief in support thereof. For the reasons set forth below, Kaptan requests that this Court remand this case to Commerce for reconsideration.

## INTRODUCTION

This action challenges four aspects of the final results in Commerce's 2021 administrative review of the CVD order on rebar from Turkey, two of which were decided, on virtually identical facts, in this Court's decision regarding the 2020 review of the same order,

Case 1:24-cv-00096-GSK    Document 24    Filed 11/17/24    Page 7 of 51
*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

*Kaptan Demir Çelik End. ve Tic. A.S. v. United States*, 2024 Ct. Intl. Trade LEXIS 116, Slip Op. 2024-116 (October 21, 2024) ("*Kaptan I*").

 *First*, Kaptan challenges Commerce's decision that exemptions from Türkiye's Bank and Insurance Transactions Tax ("BITT") are countervailable as *de jure* specific. This decision is governed by *Kaptan I.*

 Kaptan also challenges Commerce's decision to apply adverse facts available ("AFA") to Kaptan regarding the BITT exemption. Commerce's decision turns on the agency's interpretation of a Turkish law, which is an issue of fact. Here, Commerce's interpretation is not supported by substantial evidence.

 *Second*, Kaptan challenges Commerce's decision concerning the benchmark for valuing a lease from the Turkish Government of certain unimproved industrial land outside the Black Sea village of Sürmene, in Trabzon province, about 1,200 km from Istanbul (the "Nur parcel"). This decision is also governed by *Kaptan I.*

 *Third*, Kaptan challenges Commerce's decision to apply AFA to a program concerning Social Security Support under Law 4447. Commerce asserts that Kaptan failed to report its benefits under this program, but in fact Kaptan did report its benefits thereunder, and the agency actually included them in its benefits calculation. The application of AFA therefore fails.

 *Fourth*, Kaptan challenges Commerce's application of AFA to a supposed program concerning Social Security Support under Law 27256. The only trace of this program is in a letter from Commerce rejecting a Kaptan submission as untimely. The regulations preclude Commerce from basing a decision on information in a rejected submission. Moreover, a letter generated by the agency cannot constitute evidence because it is not something *submitted to* the tribunal.

## STATEMENTS PURSUANT TO RULE 56.2(c)(1)

### I. Administrative Determination To Be Reviewed

Kaptan contests certain aspects of the final results of the CVD administrative review on rebar from Türkiye, published as *Steel Concrete Reinforcing Bar from the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 35,071 (Dep't Commerce May 1, 2024) ("Final Results"), and accompanying Final Decision Memorandum ("FDM")(PR247).

### II. Issues Presented

This appeal presents the following issues.

> **Issue 1**:  Commerce found BITT exemptions countervailable as *de jure* specific, that is, expressly limited to an enterprise or industry or group thereof.  In fact, BITT exemptions are available to all Turkish companies with Industrial Registry certificates, which are mandatory for all productive enterprises in Turkey.  In identical litigation concerning the 2020 rebar CVD review, this Court held Commerce's *de jure* analysis to be unsupported by substantial evidence. *Kaptan I*, *supra*. Did Commerce err in concluding that BITT exemptions are *de jure* specific?

> **Answer**:  Commerce erred.  BITT exemptions are not *de jure* specific, because they are not limited to certain enterprises or industries, but are available widely throughout the economy. Commerce's decision is not supported by substantial evidence. This case is governed by *Kaptan I*.

> **Issue 1a:** Commerce applied AFA to Kaptan because Kaptan did not include "arbitrage" transactions (foreign exchange transactions exchanging one foreign currency for another) is its benefits dataset. Commerce did not inform Kaptan of this interpretation of the BITT law, which had not been applied in previous administrative reviews, until the verification was underway.  Did Commerce err in applying AFA to Kaptan for failure to include arbitrage transactions in its benefits dataset?

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [...]*

**Answer:** Commerce erred.  The interpretation of foreign law is an issue of fact, and there are no facts on the record to support Commerce's interpretation. Moreover, Commerce's failure to inform Kaptan of its interpretation until it was too late for Kaptan to respond was an abuse of discretion.

**Issue 2**:  In regard to the lease of land in Trabzon Province by Kaptan's affiliate Nur Gemicilik, Commerce rejected a benchmark report – the Cushman and Wakefield ("C&W") report – for rents of vacant industrial land in Trabzon as unreliable based on the agency's characterization of the benchmark as BPI in its entirety, and because it was prepared for the underlying review.  In *Kaptan I*, this Court found Commerce's identical decision on this point to be unsupported by substantial evidence.  Is Commerce's rejection of the C&W report supported by substantial evidence, and, if not, did Commerce err in selecting an Istanbul-area benchmark proffered by petitioners rather than the Trabzon benchmarks in the C&W report as the proper benchmark?

**Answer**:  Commerce erred. Commerce's decision as to the reliability of the C&W report is unsupported by substantial evidence, as it was in *Kaptan I*.  Moreover, the Trabzon properties in the C&W report are more comparable to the Nur property than are the Istanbul-area properties proffered by the petitioners in the "Colliers report," and the C&W properties therefore constitute the appropriate benchmark.

**Issue 3**:  In its Initial Questionnaire Response ("IQR"), Kaptan reported receipt of benefits under Law 4447. In its Preliminary Decision Memo ("PDM"), Commerce claimed that Kaptan had not timely reported benefits under Law 4447, but in its calculation worksheet the agency nevertheless made a calculation of Kaptan's benefits under Law 4447 as reported in Kaptan's IQR. Did Commerce err in asserting that Kaptan failed to report its benefits under Law 4447, and thereby impeded the investigation, such that Commerce was deprived of the ability to issue supplemental questions to Kaptan and the Government of Turkey ("GOT") on this issue?

**Answer:**  Commerce erred.  Commerce relied on Kaptan's IQR for calculation of the Law 4447 benefits in the preliminary calculations but then inconsistently asserted that Kaptan had not

reported such benefits in its IQR.  Commerce's contradictory positions cannot both be correct, and the fact is that Kaptan timely reported its law 4447 benefits and thus did not impede the proceeding. Commerce's position that there was a gap in the record as to Law 4447 is therefore unsupported by substantial evidence.  Further, Commerce's assertion that Kaptan failed to use its best efforts and, instead, impeded the proceeding is likewise unsupported by substantial evidence.

**Issue 4:** Commerce applied AFA to Kaptan for its supposed failure to report benefits under Law 27256.  However, there is no reference whatsoever to Law 27256 in any response on the record by Kaptan or the GOT.  The only reference to Law 27256 is in a letter written by Commerce itself, rejecting as untimely a Kaptan submission. Did Commerce err in considering a self-prepared letter as substantial evidence on which to predicate an AFA finding as to Kaptan with respect to Law 27256?

**Answer:**  Commerce erred.  Commerce's regulations prohibit the agency from using information in a response rejected as untimely for any purpose other than to support the finding of untimeliness.  Moreover, a document prepared by Commerce itself is not information "*submitted to* the tribunal" and therefore cannot constitute evidence, much less evidence of a substantial nature.  Therefore, Commerce's application of AFA as to Law 27256 was unsupported by substantial evidence.

## III.  Relief Sought

Kaptan asks this Court to find the following and to provide relief as follows:

(1)    Commerce's finding that BITT exemptions are *de jure* specific is unsupported by

substantial evidence (*see*, *Kaptan I*[1]). Kaptan asks this Court to require Commerce to reverse its

finding as to *de jure* specificity.

(2)    Commerce's application of AFA as to the BITT exemption is unsupported by

substantial evidence insofar as Commerce's opinion that arbitrage transactions were subject to

---

[1] In *Kaptan I* at 14, the Court states, "legal eligibility for the BITT Exemption appears to be broad and non-enterprise- or industry-specific."

the BITT exemption was itself unsupported by substantial evidence.  Kaptan asks that the Court direct Commerce to articulate the evidence upon which it bases its interpretation that the BITT exemption applies to arbitrage transactions and, if the agency has no such evidence, to reverse the AFA determination.

(3)     Commerce's rejection of the C&W report as BPI and prepared for litigation was unlawful and the agency's selection of the Colliers benchmark proposed by petitioners was unsupported by substantial evidence; Kaptan asks that the Court direct Commerce to weigh the relative merits of the benchmarks proffered by the parties (*see, Kaptan I*[2]);

(4)     Commerce's application of AFA as to Law 4447 was unsupported by substantial evidence because Kaptan timely reported its benefits under Law 4447.  Kaptan asks that the Court direct Commerce to calculate a benefit ratio for Kaptan based on information of record.

(5)     Commerce's application of AFA as to Law 27256 was unsupported by substantial evidence, insofar as there was no evidence of such a program on the record.  Kaptan asks that the Court direct Commerce to articulate the evidence on the record for its finding that law 27256 provided benefits to Kaptan, and, if there is no such evidence, to reverse its determination as to this program.

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[2] In *Kaptan I* at 18, the Court states, "Commerce's explanation of its selection of the Colliers report is not in accordance with law. Remand is accordingly required on this issue as well: Commerce must either further explain or reconsider its choice of a benchmark to value the land that Nur used free of charge."

For issues of statutory construction,

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. … {C}ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273; 219 L. Ed. 2d 832, 867 (2024).

"Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the agency's determination, the Court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). Substantial evidence review requires that the court assess whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

## SUMMARY OF THE ARGUMENT

Commerce found that exemptions from Turkey's Bank and Insurance Transactions Tax ("BITT") constituted a *de jure* specific subsidy. A *de jure* specific subsidy is one that is "expressly limited" to "an enterprise or industry" or to "a group of such enterprises or industries." 19 U.S.C. § 1677(5A)(D)(i), (iii). Thus, if BITT exemptions are available to more than a small number of enterprises or industries, or groups thereof, then BITT exemptions are not *de jure* specific.

The BITT exempts foreign-currency transactions by enterprises having an Industrial Registry certificate.  Turkish law requires virtually every productive enterprise to have an Industrial Registry certificate, with exceptions only for certain small handicraft or repair operations. Thus, the BITT exemption is generally available, and hence not *de jure* specific. This Court has already found, on the same facts, that Commerce's finding of *de jure* specificity in regard to the BITT exemption was unsupported by substantial evidence, in *Kaptan I*, and it should do so here.

With respect to Commerce's application of AFA to Kaptan with regard to the BITT exemption:  Commerce's decision was predicated on the agency's interpretation of the Turkish law as applying not only to "spot" transactions (exchange of Turkish lira for foreign currency) but also to "arbitrage" transactions (exchange of one foreign currency for another).  Commerce's interpretation of the Turkish law is factual in nature, since it is an interpretation of a foreign law. Therefore, to survive review, the interpretation must be based on substantial evidence. However, Commerce cites not a single fact to support its interpretation. Commerce's application of the BITT exemption to arbitrage transactions is therefore unsupported by substantial evidence, and should therefore be found unlawful.  Furthermore, upon deciding to interpret the Turkish statute in this way, Commerce had an obligation to disclose the interpretation to Kaptan by issuing a supplemental questionnaire directing Kaptan to include arbitrage transactions in its BITT exemption dataset.  By failing to do so, Commerce failed to follow the requirements of the AFA provisions of the law to afford the respondent an opportunity to cure any defects.

Commerce also found that the terms of the government's lease of land to Kaptan's affiliate Nur constituted a subsidy, because the lease was for less than adequate remuneration ("LTAR").  Kaptan challenges Commerce's benchmark selection.  The Nur parcel is located

outside the Black Sea village of Sürmene, in Trabzon province, about 1,200 km from Istanbul, and was unimproved land when Nur leased it. When selecting a benchmark, Commerce must "consider product similarity … and other factors affecting comparability." *Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 273 F. Supp. 3d 1225, 1250-53 (Ct. Int'l Trade 2017). To calculate the benefit, Commerce selected an Istanbul-area benchmark of turnkey (*i.e.,* improved) industrial property provided by petitioners, rather than the local benchmark provided by Kaptan.

Kaptan's proposed benchmark is in a study prepared by international real estate brokerage firm, Cushman & Wakefield ("C&W"). The C&W report evaluated long-term leases of unimproved land in Trabzon province following internationally-recognized standards for property valuation. Petitioners submitted a report prepared by another international real estate brokerage, Colliers International ("Colliers"). This report relies on internal, undisclosed information held by Colliers and does not disclose the raw data or methodologies used. The Colliers benchmark reports average values for turnkey short- and long-term leases of improved industrial and logistical facilities, in and near Istanbul, a key transportation and commercial hub between Europe and Asia.

Commerce rejected the C&W benchmark as unusable, on the grounds that the C&W report was (i) BPI in its entirety and (ii) intrinsically not credible because it was prepared specifically for the underlying administrative review. Commerce rejected the C&W report without further evaluation, despite the agency's reliance on Federal Circuit precedent that requires a "rule-of-reason" examination of such evidence. Commerce's decision to reject the C&W benchmark as unusable, and to accept the Colliers benchmark, is unsupported by substantial evidence. In *Kaptan I*, this Court found that Commerce's rejection of the same C&W report was not supported by substantial evidence, and it should do so here.

Commerce also applied AFA to Kaptan with respect to Law 4447, which excuses an employer from paying a portion of its social security obligations in certain situations. Commerce's application of AFA is grounded on the assertion that Kaptan failed to include this program in its IQR.  However, the facts are otherwise:  Kaptan reported its Law 4447 benefits in the narrative to its IQR and quantified them in an exhibit and Excel worksheet.  Commerce's treatment was internally inconsistent:  In its preliminary benefit calculations worksheet, Commerce included a line item for the reported Law 4447 benefits.  However, in the text of the PDM, Commerce asserted that Kaptan had failed to report this very benefit.  Commerce cannot have it both ways.  In fact, there was no gap in the record to be filled by facts available ("FA"), since Kaptan did report its benefits; and there was no evidence that Kaptan failed to exercise its best efforts in its responses, as required for AFA, since, again, Kaptan reported its Law 4447 benefits.  This AFA determination is therefore unsupported by substantial evidence and should be reversed.

Finally, Commerce applied AFA to Kaptan with respect to benefits under a supposed Law 27256.  The existence of such a law appears nowhere on the record except in a letter written by Commerce, itself.  The evidence Commerce cites as supporting the existence of this program consists of a submission by Kaptan that Commerce had rejected as untimely.  Commerce's regulations prohibit the agency from relying on rejected filings for any purpose whatsoever (other than to justify the rejection itself).  19 C.F.R. § 351.104(a)(2)(i).  Therefore, Commerce's reference to the substantive contents of Kaptan's rejected submission was a prohibited act. Moreover, such a letter cannot be considered evidence, since it is not information *presented to* a tribunal but is, rather, a statement of the tribunal itself. Commerce's application of AFA for Law 27256 is therefore unsupported by substantial evidence and must be reversed.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

Kaptan's detailed arguments follow.

## ISSUE 1: BANK AND INSURANCE TRANSACTIONS TAX

### I. STATEMENT OF FACTS – BITT

Commerce calculated a 0.89% benefit rate for Exemptions from Bank and Insurance Transactions Tax ("BITT") on Foreign Exchange Transactions received by Kaptan on the basis of Commerce's determination that BITT exemptions are *de jure* specific.   FDM at 5, PR247.

The Turkish government ("GOT") imposes a tax on all foreign-exchange ("forex") transactions, *i.e.*, on transactions in which a Turkish entity exchanges Turkish lira ("TRY") for foreign currency or exchanges a foreign currency for TRY. Kaptan IQR Exh. 30 at 14-16.  CR51, PR59.   During the POR, the BITT rate was 0.2% of the transaction value. *Id*. at 21.

The BITT law exempts certain forex transactions from BITT, including (*id*. at 17,19):

- Foreign exchange sales to enterprises having Industrial Registry certificate, and

- Foreign exchange sales to exporters which are members of Exporters' Associations.

The Industrial Registry Law (Law No. 6948) requires virtually all productive enterprises to obtain Industrial Registry certificates (*id*. at 27):

> Article 1 – The places that produce or obtain a material continuously and in series by changing the characteristics, shape, precision or composition of a substance or by processing these substances with the help of machinery, equipment, looms, tools or other means and forces or only by manual labor and the places where the mines are extracted and processed by are considered industrial enterprise, the work done here are considered industrial works and those who run these are considered industrialist.
>
> Establishments that carry out continuous and serial repairs and plants that produce electricity or other energy, large construction sites such as shipbuilding and enterprises that produce information technology and software are also included in this article. Handicrafts and domestic crafts and small repair shops are not subject to this law.

Law 6948 also makes registration mandatory for all enterprises defined above:

> Article 2 – It is obligatory for industrial enterprises to be registered in the industrial registry … and to submit the corresponding industrial registry certificate to authorized officials. Industrial enterprises must pre-register with the industrial registry before starting production activities. For industrial enterprises to be issued business and working licenses, the letter stating that they are registered in the industrial registry is sought by the administrations that issue business and working licenses.

Thus, every enterprise that manipulates tangible or intangible material must obtain an Industrial Registry certificate. Without such a certificate, an enterprise cannot obtain a business license.

The GOT reported that more than [      ] enterprises in [      ] different sectors of the economy hold Industrial Registry certificates (GOT IQR Exh. 37, CR 115):

[



























]

In its questionnaire responses, Kaptan reported all of its BITT-exempt spot forex transactions in the POR; Kaptan IQR Exh. 30 at 1-4, CR51.

In its second supplemental questionnaire response (SQR2), at Exh. 9, in response to a request from Commerce, Kaptan provided supporting documentation for its BITT-exempt spot forex transactions; CR169.

Commerce asked no further questions regarding Kaptan's BITT exemption.

Commerce conducted an on-site verification of Kaptan.  In its verification agenda, PR187, Commerce stated that it would:

1. Discuss (a) an overview of the {BITT exemption} program and (b) eligibility criteria.

2. Examine (a) a copy of the application; (b) any required certificates; (c) approval documents; and (d) source documentation demonstrating the amount of the benefit received.

3. Review how the company records the benefit in its accounting system.

4. Examine accounts to confirm that all benefits under this program were reported.

Kaptan's Verification Exhibit VE-9 contains documentation relating to Kaptan's benefits under the BITT, including, as relevant hereto, a screen shot from Kaptan's accounting system showing that, in addition, to spot forex transactions, Kaptan engaged in "arbitrage" forex transactions, in which the company exchanged one foreign currency for another.  CR226.

Commerce verified that Kaptan had accurately reported the benefits of its exemption from BITT with respect to spot forex transactions.  Verification report at 6-7, CR233, PR222. However, Commerce also inquired as to whether Kaptan had any "arbitrage" transactions, since Kaptan had not reported any, and found that Kaptan had, indeed, had arbitrage transactions. Commerce summarized this as follows, *id*. (footnotes omitted):

Noting that the law provides an exemption of BITT for "foreign exchange sales to entities" having an industrial registration or who are members of exporters unions, we inquired whether Kaptan made exchanges between foreign currencies (e.g., USD to Euros) during the POR. Company officials queried Oracle using transaction code "1", for arbitrage. This search which yielded numerous arbitrage transactions between foreign currencies (e.g., USD to Swiss Francs, Euros, and Great Britain Pounds) in 2021. Company officials explained that they did not view arbitrage involving foreign currencies (other than TL) as subject to the BITT program. We selected one transaction and requested that company officials provide the bank order and bank slip corresponding to the transaction. The documentation indicated no BITT was incurred for this transaction. Later during verification, company officials attempted to provide these arbitrage exchanges. However, we indicated that we would not be accepting this new information at verification.

In the preliminary results of the review, Commerce found that the BITT exemption was countervailable because it was *de jure* specific (PDM at 14-15, footnote omitted), PR229:

We also find that this {BITT exemption} program is specific under section 771(5A)(D)(i) of the Act, because, as discussed above, the program is limited to firms that conduct certain types of foreign exchange transactions that were exempted by Law 6802 (Article 33) (the Expenditure Expenses Law).

Also, in the PDM, Commerce applied AFA to Kaptan for this program because Kaptan had not reported its arbitrage transactions, *id*. at 9 (footnotes omitted):

Commerce was unable to verify that Kaptan reported all benefits that it received from under the Bank and Insurance Transactions Tax on Foreign Exchange Transactions (BITT) program during the POR. Specifically, during verification, Commerce discovered that Kaptan failed to report all benefits it received under this program during the POR. As a result, we determine that Kaptan withheld necessary information requested by Commerce and, therefore, significantly impeded this review. Thus, we lack complete information to calculate a benefit properly and accurately for Kaptan under this program and, as a result, we must rely on facts otherwise available, in accordance with sections 776(a)(1) and 776(a)(2)(A), (C), and (D) of the Act.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

In its case brief (at 28-9), Kaptan argued that Commerce's finding of *de jure* specificity was controverted by the fact that "BITT exemptions are broadly available throughout the Turkish economy," explaining that all productive enterprises are required to hold Industrial Registry certificates and are therefore eligible for the exemption.  PR235, CR241.

With regard to the application of AFA, Kaptan argued that Commerce could not lawfully surprise Kaptan with a last-minute interpretation of the Turkish law that would require reporting of transactions that Kaptan believed were not reportable, *i.e.*, the arbitrage transactions, citing 19 U.S.C. §1677m(d).  Furthermore, when the verifiers informed Kaptan of their opinion that arbitrage transactions were reportable – after they had observed the entire arbitrage account in Kaptan's records, including the sum of all arbitrage transactions – Kaptan proffered a summary report and a full report of such transactions, but Commerce declined to accept the information, even though it was taken directly from Kaptan's information system in the presence of the verifiers.  Kaptan Case Brief at 35-37, CR241, PR235.  Kaptan further argued that, before resorting to AFA, Commerce failed to make the required additional finding that Kaptan "failed to cooperate by not acting to the best of its ability to comply with a request for information." Finally, Kaptan argued that, in applying the highest available AFA rate, Commerce failed to evaluate the "situation that resulted in the application of AFA" as required by the statute.  Case brief at 38.

In its FDM, PR247, Commerce decided that the BITT is countervailable, claiming that BITT is *de jure* specific despite the breadth of coverage of the Turkish law (at comment 3):

> Kaptan argues that the BITT exemptions are widely available throughout Türkiye, on the basis that any company that has an industrial registry certificate may use this program. Further, Kaptan holds that all enterprises are required to hold an Industrial Registry certificate, and thus BITT exemptions are broadly available. Therefore, Kaptan claims that this program is not

specific. We disagree. The GOT argued that industrial registry certificates can be obtained by all industrial enterprises. However, this does not demonstrate that all eligible enterprises actually apply for and obtain industrial registry certificates. Further, the universe of companies that may benefit from the program is necessarily limited to companies that make foreign exchange transactions. Finally, as noted above, Commerce has found this program countervailable in previous proceedings and the GOT has provided no new information regarding this program that would cause us to reconsider this finding.

With respect to the application of AFA for BITT to Kaptan, Commerce asserted that Kaptan had not acted to the best of its ability, without accounting for the interpretation of the law that Commerce failed to communicate until the middle of verification (*id.*, comment 4, footnote omitted):

> Kaptan failed to report all benefits under this program during the POR; as such, we find that Kaptan did not provide information that was complete, accurate, and verifiable. Thus, we determine that Kaptan did not put forth "maximum effort" and failed to cooperate by not acting to the best of its ability to comply with a request for information.
> …
> Next, Kaptan claims that the error in reporting these BITT benefits was made in good faith and was simply based on a misunderstanding of what the company was required to report for this program. We find this argument unpersuasive. The Federal Circuit has found there is no intent requirement in finding that a party failed to act to the best of its abilities. Thus, Kaptan's argument that it was unaware that these benefits need to be reported is irrelevant. Finally, as evidenced by Kaptan's attempt to provide this missing information at verification, such information was easily available to the company.

This appeal followed.

## II. ARGUMENT – BITT

### A. Commerce's Finding of *De Jure* Specificity Is Unsupported by Substantial Evidence

Commerce incorrectly found the BITT exemptions to be *de jure* specific. Commerce found this program *de jure* specific under 19 U.S.C. § 1677(5A)(D)(i). FDM, PR247, at

comment 3, based on an analysis that has since been rejected by this Court. *Kaptan I* at 10-17.

This subparagraph of the statute defines *de jure* specificity as follows:

> Where the authority providing the subsidy, or the legislation
> pursuant to which the authority operates, expressly limits access to
> the subsidy to an enterprise or industry, the subsidy is specific as a
> matter of law.

This court has previously found the language of this provision to be unambiguous:

> Under the plain meaning of enterprise, to be *de jure* specific, a
> subsidy must be limited to a specific business organization or a
> limited group of businesses. … See 19 U.S.C. §1677(5A)(D)(i).
> There is no ambiguity in this provision.

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023).

The *Statement of Administrative Action* clarifies that "a group of such enterprises or industries," 19 U.S.C. § 1677(5A), means "a sufficiently small number of enterprises, industries, or groups thereof" or "narrowly focused subsidies provided to or used by discrete segments of an economy." *Statement of Administrative Action Accompanying the Uruguay Round Agreements Act*, H.Doc. 103-316, at 930, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4242 ("*SAA*"); *BGH Edelstahl Siegen GmbH v. United States*, 600 F. Supp. 3d 1241, 1255 (Ct. Int'l Trade 2022).

Here, every productive enterprise in Turkey is *eligible* for the exemption, because every productive enterprise is required to have an Industrial Registry certificate.  In total, [      ] enterprises in [  ] sectors of the economy hold Industrial Registry certificates.  These numbers are a far cry from the "sufficiently small number of enterprises, industries, or groups thereof" or "discrete segments of an economy" required before a subsidy can be considered *de jure* specific. Therefore, the BITT law does not "expressly limit access to the subsidy to an enterprise or industry," as required by the statute for *de jure* specificity.

In its FDM, Commerce misstates the facts when it says, "The GOT argued that industrial registry certificates *can* be obtained by all industrial enterprises." Emphasis added.  In fact, the

Turkish law does not state that certificates voluntarily or permissively "can" be obtained, but, rather, that they *must* be obtained.  The Turkish Industrial Registry law is *mandatory*, just as having a driver's license is a mandatory condition for driving a car. Because every productive enterprise in Turkey *must* have an Industrial Registry certificate, Commerce's argument that "this does not demonstrate that all eligible enterprises actually apply for and obtain industrial registry certificates" is beside the point.  The issue for *de jure* specificity is not whether all productive enterprises *in fact* have industrial registry certificates; rather, the issue is whether Turkish law, on its face, exempts any enterprise or industry from the requirement for an Industrial Registry certificate, and this is simply not the case.

Commerce also makes the erroneous argument that the BITT exemption is *de jure* specific because "the universe of companies that may benefit from the program is necessarily limited to companies that make foreign exchange transactions." FDM, PR247, comment 4.  The fact is that all holders of Industrial Registry certificates are *entitled* to the BITT exemption. Whether a given certificate holder *chooses* to make forex transactions and thereby benefit from the exemption has nothing to do with the *de jure* specificity of the exemption.  By analogy, not all persons with driver's licenses drive cars, but they are all *entitled* to drive a car.  The program is universally available to all entities with an Industrial Registry certificate, with no exceptions.

This Court rejected Commerce's approach to this issue in the immediately preceding review, in *Kaptan I*, and this appeal should be governed thereby.

### B.  Commerce's Application of AFA for Kaptan's BITT Exemption Is Unlawful

Because Commerce's decision on the countervailability of BITT exemptions must be remanded, the Court may not need to address Commerce's unlawful decision to resort to AFA when calculating benefits under BITT exemptions in arbitrage transactions.  To the extent the

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

Court addresses this issue, Commerce's application of AFA was unlawful because Commerce did not inform Kaptan of Commerce's interpretation of BITT exemption provisions, and failed to provide Kaptan an opportunity to remedy any deficiency in reporting based on Commerce's interpretation of BITT provisions.

Commerce's application of AFA to Kaptan's BITT exemption turns on a single issue: Is the BITT applicable only to transactions in which the company exchanges Turkish lira ("TL") for foreign currency, or does it also apply to "arbitrage" transactions in which the company exchanges one foreign currency for another.

Commerce takes the position that the BITT exemption applies alike to TL forex purchases and to arbitrage transactions. See the Kaptan verification report at 6-7, quoted, *supra*, PR222, CR233. Commerce found Kaptan's reporting deficient because Kaptan did not report its arbitrage transactions.

In fact, there is no evidence supporting Commerce's interpretation of the BITT law; the fact that this was an issue, or that Commerce interpreted the BITT law to apply to arbitrage transactions, never arose on the record before Kaptan's verification. There is no mention of the BITT in Commerce's verification report of the Government of Turkey (PR220), for example. Nor did Commerce ever ask Kaptan to provide a dataset of its arbitrage transactions, say, in a supplemental questionnaire. Nor was there any suggestion in Commerce's agenda for the Kaptan verification, PR187, that Kaptan's arbitrage transactions were at issue.

Commerce's interpretation of the Turkish law as subjecting arbitrage transactions to the BITT exemption is a factual issue, and Commerce's apparent factual determination not supported by substantial evidence. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Huaiyin Foreign Trade,*

*supra,* 322 F.3d 1374 (Fed. Cir. 2003). "Foreign law may not be judicially noticed. Its terms and administration are questions of fact to be proved like any other fact." *United States v. Cont'l Forwarding, Inc.*, 53 C.C.P.A. 105, 112 (1966), quoting *Church v. Hubbard*, 6 U.S. 187, 2 Cranch 187. Here, there is no evidence whatsoever that Commerce's interpretation of the Turkish statute as applying to arbitrage transactions is correct.[3]

There is nothing in Kaptan's experience to suggest that Commerce's interpretation is correct. From Kaptan's point of view, nothing in the bank transaction documents differentiates a tax-exempt transaction from a transaction on which the tax is not incident in the first place. Thus, for both a spot transaction and an arbitrage transaction, the bank documents show no tax due and owing; it is not apparent from any documentation whether the lack of tax incidence is because of the BITT exemption or because certain transactions, *e.g.*, arbitrage transactions, are simply not covered by the BITT in the first place. As Commerce noted in the Kaptan verification report (PR222 at 7):

> Company officials explained that they did not view arbitrage
> involving foreign currencies (other than TL) as subject to the BITT
> program.

Thus, there is no visible difference between a BITT-exempt forex transaction and an arbitrage transaction that does not incur BITT in the first place.

By failing to notify Kaptan of its interpretation of the BITT exemption, Commerce failed to follow the statute governing AFA. 19 U.S.C. § 1677m(d) requires Commerce to notify a respondent if its submissions are deficient:

---

[3] This issue is not governed by the line of cases culminating in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 603 U.S. __ (2024) as those cases address an agency's interpretation of its own governing statute, not an interpretation of foreign law.

> If the administering authority … determines that a response to a request for information … does not comply with the request, the administering authority … shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

Commerce violated 19 U.S.C. § 1677m by failing to notify Kaptan in a timely manner as to the purported deficiency.

Furthermore, even were this Court to affirm Commerce's unsupported factual finding interpreting foreign law, Commerce's AFA decision is also unlawful because Commerce selected the highest rate it could justify under its AFA hierarchy without making the necessary finding under 19 U.S.C. § 1677e(d)(2).  The additional finding under section 1677e(d)(2) requires an evaluation of the circumstances giving rise to AFA:

> In carrying out paragraph (1), the administering authority may apply any of the countervailable subsidy rates or dumping margins specified under that paragraph, including the highest such rate or margin, based on the evaluation by the administering authority of the situation that resulted in the administering authority using an adverse inference in selecting among the facts otherwise available.

Commerce failed to evaluate the situation that resulted in the application of AFA, namely, that Kaptan had not been apprised of Commerce's interpretation of the BITT law as requiring Kaptan to report arbitrage transactions.  Indeed, the BITT exemption has been a feature of all the cases in which Kaptan has been a respondent since the law was implemented, *see*, *Kaptan Demir v. United States*, CIT No. 22-149 (appeal from 2019 review)[4]; *Kaptan Demir v. United States*, CIT No. 23-131 (2020 review),[5] and there has been no suggestion in any of these cases that arbitrage transactions were considered exempt from the BITT.

---

[4] This case was stayed pending a CAFC decision on an issue unrelated to the BITT; ECF#63.
[5] *See, e.g.*, Kaptan's post-argument submission, ECF51.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [...]*

Commerce may not deviate from an established methodology without giving an explanation for the deviation:

> {W}hen Commerce chooses to deviate from an established practice or methodology, the agency must clearly explain itself so that the court may assess the reasonableness of its decision. *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808, 93 S. Ct. 2367, 37 L. Ed. 2d 350 (1973) (the agency has a 'duty to explain its departure from prior norms.')."

*Vicentin S.A.I.C. v. United States*, 466 F. Supp. 3d 1227, 1238 (Ct. Int'l Trade 2020).

Furthermore, Kaptan fully reported all spot transactions, and had it understood Turkish law as Commerce interpreted the law, there is no reason to believe Kaptan would have failed to report its arbitrage transactions:  Kaptan has always been fully compliant with all information requests.  However, since it had no idea that Commerce considered arbitrage transactions to be reportable, Kaptan had no reason to alter its usual BITT reporting in the present review.

Commerce asserts that it had no obligation to consider Kaptan's intent in regard to the reporting of arbitrage transactions, rebutting Kaptan's assertion that its error – if, indeed, Kaptan was wrong that these transactions were not reportable – was in good faith.  *See*, FDM comment 4, citing *Nippon Steel, supra, Corp.* 337 F.3d at 1382-83, PR247.  However, Commerce must, and failed to, consider the situation under which Kaptan did not report arbitrage transactions, including the lack of notice to Kaptan, under 19 U.S.C. § 1677e(d)(2).

Moreover, Commerce's failure to inform Kaptan of its interpretation of the BITT law as applicable to arbitrage transactions, at a time when Kaptan could have cured its reporting, constituted an abuse of discretion.  *See*, *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States,* 178 F. Supp. 2d 1305, 1316 (Ct. Int'l Trade 2001), framing the issue as whether the agency's action precluded the respondent from having a "meaningful opportunity to participate

in the review" and remanding (at 1321) to give the respondent an "opportunity to submit those documents that it would have provided at the verification..."

In sum, this Court should find unsupported by substantial evidence Commerce's decision that the BITT exemption is *de jure* specific; and should find that Commerce's application of AFA to Kaptan for its failure to report its arbitrage transactions is contrary to the statute, unsupported by substantial evidence, and an abuse of discretion.

### ISSUE 2: LAND LTAR BENCHMARK

## I. STATEMENT OF FACTS – LAND LTAR

Commerce calculated a countervailing duty rate of 0.74% for the alleged receipt of subsidies under Law 5084 by Nur Gemicilik A.S. ("Nur") for a rent-free right to occupy and use for 49 years certain unimproved industrial land located outside the village of Sürmene in the Black Sea province of Trabzon, 1,200 km from Istanbul, in exchange for Nur's developing the land and employing a certain number of workers. *FDM* at 5 and cmt. 2, PR247; *see*, *Kaptan Benchmark Submission*, Ex.1; PR133/CR138-46, *Ptnr's Benchmark Submission,* PR134; *Kaptan Benchmark Rebuttal,* PR135-37.

In its benchmark submission, Kaptan provided a report by the international real estate firm, Cushman & Wakefield ("C&W"), of rental rates for land close to the unimproved industrial land leased by Nur and located in areas similar to the Nur leasehold in Trabzon province. The benchmark rent for comparable land from commercial lessors in Sürmene/Trabzon area was 3.97 TL/square meter per month, *id*. at 2. CR138, PR133.

Exhibit 3 to Kaptan's benchmark submission included per-capita GDP figures for statistical regions of Turkey, from which the disparity between GDP in the Sürmene/Trabzon

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, [...]*

region (54,009 TL in 2021) and that in the Istanbul region (140,698 TL), which was the location of benchmarks provided by petitioners, was apparent. CR145, PR133.

Exhibit 4 to Kaptan's benchmark submission contained the industry standards according to which the C&W study was prepared, namely, the Royal Institute of Chartered Surveyors (RICS), thus providing the objective basis for the C&W report. CR146, PR133.

Petitioners submitted benchmarks for turnkey commercial and industrial leases in the "Greater Istanbul Industrial Market" (PR134 Ex. 1 at 8), an important population center and industrial, commercial and transportation hub, from a published report by Colliers International, another real estate firm active in Turkey. These benchmarks ranged from 27 to 71 TL/m$^2$/month for the fourth quarter of 2021; PR134 at Exh. 2.

In summary, the Nur parcel was unimproved land in Trabzon province, 1200 km from Istanbul. The C&W benchmarks were also in Trabzon province and were of vacant industrial or commercial land. The Colliers benchmark properties, in contrast, are improved, turnkey commercial and industrial properties in the Greater Istanbul Industrial Area, which is a highly developed industrial, commercial, and logistics hub.

Ultimately, Commerce rejected Kaptan's benchmark on the factually incorrect ground that it was confidential in its entirety, the legally incorrect conclusion that it is unreliable for the mere fact of being prepared for purposes of the administrative review, and the erroneous assertion that some of the benchmark rates in the C&W report may have been based upon prices provided by non-private entities. *FDM* at 10-11, PR247. Upon finding that it could not use the C&W benchmark, Commerce used the Colliers rental value for turnkey industrial and commercial property in Çerkezköy, an industrial and logistics hub near Istanbul. *PDM* at 16, *unchanged in final*, FDM247 at 5. The Çerkezköy benchmark rental rate was 24 TL/m$^2$/month

for the first half of the POR and 32 TL/m$^2$/month for the second half.  Petitioners' benchmark at

Exh. 2, PR134.

## II.  ARGUMENT – LAND LTAR

### A.  Commerce's Rejection of the C&W Report Was Unlawful

Commerce's rationale for rejecting the C&W report is unsupported by substantial

evidence and is inconsistent with Commerce's practice.

Commerce said here (FDM at 12, PR247), as it did last year (*see, Kaptan I,* at 23):

> When evidence has been generated expressly for the purpose of
> an administrative proceeding, we find that said evidence is at "risk
> of litigation-inspired fabrication or exaggeration," which
> diminishes its weight and *results in the evidence being unreliable*.

Commerce goes from expressing a *preference* for benchmark data not commissioned by

a party to expressing a blanket rule that commissioned studies are flatly "unreliable."

Commerce's rule against commissioned reports ignores the fact that the C&W report was done

in accordance with internationally recognized standards;  CR145, PR133.  Neither the

petitioners nor Commerce alleged, much less proved, that the C&W report deviated from these

professional standards. At the same time, the Colliers report does not even claim to have been

conducted with reference to internationally recognized standards. PR134.

As it did in the previous review, Commerce predicates its rejection of the C&W

benchmark on *Sandt Tech. v. Resco Metal & Plastics Corp*., 264 F.3d 1344, 1350-51 (Fed. Cir.

2001). FDM at 11 n.47, PR247.  However, the Court in *Kaptan I* at 23 dismissed Commerce's

reading of the statute, and it should do so here. Now, citing another patent-infringement case,

*Transweb, LLC v. 3M Innovative Props. Co*., 812 F.3d 1295, 1301-2 (Fed. Cir. 2016),

Commerce asserts (FDM at 11, PR247, note 48) that –

> the Federal Circuit, in evaluating whether a party's claim had been
> sufficiently corroborated with evidence in a patent case, opined
> that "contemporaneous documentary evidence provides greater
> corroborative value" in determining whether a party's litigation
> "story is credible." We continue to find that the Federal Circuit's
> concerns are equally applicable to evidence created for the purpose
> of an adjudicatory administrative proceeding, such as this one.

However, *Transweb*, like *Sandt* before it, applies a rule-of-reason test to the evidence offered in

corroboration of a party's testimonial recollections. *Transweb*, *supra*, at 1301, citing *Sandt*, 264

F. 3d at 1350.  In fact, the detailed evidentiary hierarchy in patent cases like *Sandt* and

*Transweb* is of limited applicability in trade cases, where the underlying activity is entirely

different from that in patent cases. The rule-of-reason approach is certainly applicable to trade

cases, but patent-infringement tests of contemporaneity and the like have little relevance in

trade jurisprudence. In any event, Commerce's reliance on *Transweb* is no more convincing

than its reliance on *Sandt*. The fact is that Commerce did not apply a rule-of-reason test to its

evaluation of the credibility of the C&W report, and it should have done so.  Indeed, the record

reflects Commerce's rejection of the C&W report out of hand, with no mention of the standards

under which it was done (CR146) or the terms of the agreement between C&W and Kaptan

(CR141-5).

Commerce further predicates its rejection of the C&W report on the proposition that

"Commerce prefers to use public benchmark information where available." FDM at 11, PR247.

A *preference* for public information does not preclude Commerce from relying on proprietary

information where the latter provides a more comparable benchmark than the public report.  As

Kaptan explained in its case brief (at 22, CR241, PR235), Commerce has repeatedly used

nonpublic information for benchmarking. In *Certain Uncoated Groundwood Paper From

Canada: Final Affirmative Countervailing Duty Determination,* 83 Fed. Reg. 39,414 (Dep't

Commerce Aug. 9, 2018),  and accompanying Dec. Mem., at 127-128 (footnotes omitted),

Commerce was explicit[6]:

> We also disagree that Commerce requires that information used
> to measure the adequacy of remuneration under 19 CFR
> 351.511(a)(2) be public. Nowhere in 19 CFR 351.511(a)(2) does
> the regulation state such a requirement, or even a preference, for
> public data. Rather, 19 CFR 351.511(a)(2) states a preference for
> "prices stemming from actual transactions between private parties,
> actual imports, or, in certain circumstances, actual sales from
> competitively run government auctions." In many cases, these
> prices are non-public prices which parties place on the record; the
> petitioner cited to numerous cases in its case brief where
> Commerce has used proprietary information to measure adequacy
> of remuneration in recent determinations. No party cited to any
> CVD case precedent where Commerce required, or expressed a
> preference for, public information to measure adequacy of
> remuneration under 19 CFR 351.511.

In the present case, even though the body of the C&W report was proprietary, all

interested parties had access to the full report under APO, and C&W's actual benchmark

figures were public, PR133 at 2.

---

[6] *See also*, *e.g.*, *Honey from Argentina: Preliminary Affirmative Countervailing Duty
Determination and Alignment with Final Antidumping Duty Determination on Honey from the
People's Republic of China*, 66 Fed. Reg. 14,521, 14,531 (Dep't Commerce Mar. 13, 2001) ("the
Secretary will normally measure the adequacy of remuneration by assessing whether the
government price is consistent with market principles. Based on our analysis of the proprietary
data provided by the GOA"), *unchanged in Final Affirmative Countervailing Duty
Determination: Honey From Argentina*, 66 Fed. Reg. 50,613 (Dep't Commerce Oct. 4, 2001);
*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the
People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review,
and Rescission of Review, in Part, 2015*, 83 Fed. Reg. 1235 (Dep't Commerce Jan. 10, 2018),
*Dec.Mem.*, at 15-16; *Steel Concrete Reinforcing Bar From the Republic of Turkey: Preliminary
Results of Countervailing Duty Administrative Review and Intent To Rescind the Review in Part;
2015*, 82 Fed. Reg. 57,574  (Dep't Commerce Dec. 6, 2017), *Dec.Mem.*, at 15-16 (unchanged in
*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results and Partial
Rescission of Countervailing Duty Administrative Review the Review; 2015*, 83 Fed. Reg. 16,051
(Dep't Commerce April 13, 2018)); *Certain Tool Chests and Cabinets From the People's
Republic of China: Final Affirmative Countervailing Duty Determination*, 82 Fed. Reg. 56,582
(Dep't Commerce Nov. 29, 2017), *Dec.Mem.*, cmt.5 & n.109

Commerce's claim that the confidentiality of the C&W report justifies rejecting it in favor of the Colliers report is particularly troubling in light of Commerce's explicit disregard for the fact that the data underlying the Colliers report are not on the record at all: "the fact that the Colliers report is based on nonpublic data compiled by Colliers does not, itself, disqualify the data, …" FDM at 10, PR247. It is a stunning irony that Commerce rejects Kaptan's C&W report because it is proprietary while adopting the petitioners' Colliers report which Commerce, itself, admits is based on proprietary information.

Finally, Commerce thoroughly garbles the facts in asserting that "prices in the{C&W} study may have been partially based on prices provided by non-private entities and Kaptan's own data." FDM at 12, PR247. The C&W report contains prices for purchases of land from the government, but those prices are tabulated separately from the prices of privately owned land. Similarly, the C&W report contains the details of the Nur parcel (CR138 at §3), but these are included to show the comparability between the Nur property and the benchmark properties; at no time does the C&W report include Nur's property inside its benchmark figures. The only figures Kaptan proposed for actual use as the benchmark are those specifically from the C&W table for "land rent comparable in Trabzon," CR138 at 33, which does not include government rentals or Nur's own rent. *See*, C&W report at 2, CR138.

In sum, Commerce's position here is no different from its position in *Kaptan I*, and should be rejected for the same reasons.

### B. The C&W Benchmark Is Superior To The Colliers Benchmark

Commerce's unlawful rejection of the C&W report caused the agency to refrain from evaluating the merits of the C&W report, which is far superior to the Colliers benchmark in factors affecting comparability. Commerce's regulations provide the standard for selecting a

Case 1:24-cv-00096-GSK    Document 24    Filed 11/17/24    Page 34 of 51
*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

benchmark: "In choosing such transactions or sales, {Commerce} will consider product similarity; quantities sold, imported, or auctioned; and other factors affecting comparability." *See* 19 C.F.R. § 351.511(a)(2)(i). That is, "Commerce must consider relevant record evidence in determining the comparability of land parcels it uses in creating a reasonable benchmark that lacks distortive pricing." *Özdemir, supra*, 273 F. Supp. 3d at1250-53; *see*, *Kaptan I* at 21 expressing a concern over using a benchmark "based on a non-representative sample of higher-priced lands in a different area of Turkey." Further, substantial evidence review requires that the Court assess whether the agency action is reasonable given the record as a whole. *Nippon Steel, supra*, 458 F.3d at 1350-51. In determining whether substantial evidence supports the agency's determination, the court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel, supra*, 337 F.3d at 1379.

Commerce chose, as benchmark, a single property from the Colliers report, namely, a land rental from the town of Çerkezköy in the Istanbul area. FDM at 10, PR247; the parcel is identified in Commerce's preliminary calculation worksheet, CR239; see petitioners' benchmark, PR134 Exh. 2. The Colliers report identifies Çerkezköy as within the "Greater Istanbul Area Industrial Market." PR134 at 8. Çerkezköy is the situs of the "Çerkezköy Organized Industrial Zone {which} is one of the largest and most established industrial zone{s} in Turkey with its approximately 1,273 hectares of land…. containing a total of 155 industrial parcels and 306 industrial establishments" employing "approximately 77,000 persons" and in which "infrastructure and superstructures are full and ready." Kaptan benchmark rebuttal, PR135-7, Exh.2 at 2. In contrast, Nur's unimproved parcel needing a benchmark comparison is located outside a small Black Sea town, 1,200 km from Istanbul.

Not only is Sürmene/Trabzon 1,200 kilometers away from petitioners' Çerkezköy/

Tekirdağ benchmark and the Istanbul industrial market, but the per capita GDP of Trabzon

province (54,009 Turkish lira/year in 2021) is less than half the per capita annual GDP in

Tekirdağ (132,803 TL/yr) (US\$6,014 *vs*. US\$14,787, respectively).  PR135-7 Exh.1 at 1-2.

Further differences between Trabzon and the Istanbul area are apparent in the areas respective

export volumes (Trabzon: \$1.1 billion *vs*. Istanbul: \$108.8 billion) and import volumes

(Trabzon: \$1.2 m̲illion *vs*. Istanbul:138.2 b̲illion).  C&W report §C.1 ("location") at 11, CR138.

Kaptan's proposed benchmark from the C&W report provides the average rental rates in

Trabzon of 13 properties similar to the unimproved land at issue here; CR138-46 at §E p.28.

These differences render the C&W benchmark properties much more comparable to the

undeveloped Nur land on the eastern Black Sea coast than the developed Çerkezköy

industrial/commercial property in the Istanbul area favored by petitioners and selected by

Commerce. *See*, *Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 282 F. Supp. 3d 1352 (Ct.

Int'l Trade 2018) ("*Özdemir II*") (noting Commerce's agreement that prices in Istanbul and

Istanbul area "deviate substantially from the other prices in the dataset," skewed the

benchmark, and should be removed); *Zhaoqing New Zhongya Aluminum Co. v. United States*,

929 F. Supp. 2d 1324, 1328-1330 (Ct. Int'l Trade 2013) (rejecting benchmark of developed

urban land to value undeveloped land).  As the Court opined in *Kaptan I* at 21, "{T}he

estimated value of foregoing rent for Nur's use of the Trabzon land could be inaccurately high

if based on a non-representative sample of higher-priced land rentals in a different area of

Turkey."

Commerce's use of the Çerkezköy property as the benchmark is therefore unsupported

by substantial evidence.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

## ISSUE 3: AFA – SOCIAL SECURITY SUPPORT UNDER LAW 4447

### I.    STATEMENT OF FACTS –  AFA, LAW 4447

In its IQR, in the section concerning "other subsidies," Kaptan reported receipt of

benefits under Law 4447, a/k/a Law 6645.  CR21 (narrative), CR76 (exhibit), PR59.

In its supplemental questionnaire response (SQR) of October 2, 2023 (CR184, PR189)

at 13-14, the GOT explained that the relevant provision of Law 4447 operates within Law 6645:

> Title of the program is Unemployment Insurance Premium
> Incentive under Law No. 4447.  The program is established by the
> Law No. 6645, which added a provision to the Law 4447
> (Additional Article 4) on April 4, 2015.

The GOT further explained that the law reduced the unemployment insurance premium,

from 2% to 1%, for companies that achieved certain workplace safety goals.  *Id*.

In its IQR at Exh. 31, Kaptan provided a table of all social security benefits for all

reporting companies. CR76.  Within that table, Kaptan reported benefits under Law 4447/6645

as TL [      ], *id*.

The GOT's October 2 SQR, *supra*, CR184, PR189, contained further information on

Law 4447/6645. Exhibit 5 contained the text of the law (CR189), while Exh. 6 reported the

amount of benefits received by Kaptan and Nur in 2019, 2020, and 2021 (CR190). The total

amount for Kaptan and Nur was TL [      ], which is less than the amount reported by Kaptan. In

Exh. 7 (CR191), the GOT provided figures for the total usage of benefits under Law 4447,

spread over [     ] individual companies with a total value of TL [            ]. In Exh. 7, *id*., the

GOT provided total usage by NACE code (a statistical classification of economic activities).

The GOT uses NACE codes in reporting a number of programs:

- In GOT's IQR Exh. 3 (CR80, PR63), NACE codes are referenced in an International

   Energy Agency report on natural gas consumption by sector, with specific reference

to NACE groups for "iron and steel," 24.1, 24.2, 24.3, 24.51, and 24.52, and economy-wide descriptions and codes for every sector.

- In its IQR Exh. 37 (CR119, PR102), GOT provided the distribution of enterprises having Industrial Registry certificates by NACE code, specifically showing, *inter alia*, "basic metals" in code 24.

In none of its supplemental questionnaires did Commerce ask for further information concerning the NACE codes that the GOT used to identify sectoral usage of benefits.

Commerce conducted verifications in October 2023. In its agenda for the GOT verification, Commerce chose to verify only two programs: a natural gas LTAR program not applicable to Kaptan, and the land LTAR program relating to Kaptan/Nur. PR183. In its agenda for the Kaptan verification, Commerce chose to verify, as relevant hereto, Social Security Supports under Laws 5510/6661, 6111, 4857, 7103, and 6764 (Intern Salary Support). PR187. Commerce specifically excluded from its verification agenda the two programs at issue herein, namely, 4447/6645 and 27256 (discussed *infra*). In its verification report for Kaptan, Commerce declined to accept any documentation regarding Law 4447. PR222 at 9-10.

After completing verification, Commerce issued its preliminary results on November 30, 2023. PR228. For the preliminary results, Commerce included in its calculations worksheet Kaptan's reported figure for its benefits under Law 4447/6645, finding that the benefit under this program was 0.0025% and hence "not measurable" (*i.e.,* too small to include in the benefit calculations), CR239. Here is an excerpt from Commerce's benefit calculation worksheets (CR239):

[

]

However, in its PDM, PR229 at 7, Commerce stated that "Kaptan had previously not reported {any benefits under Law 4447/6645} during the course of this review, {which} should have been provided in IQR." Commerce expanded on the consequences of Kaptan's supposed failure to provide information, *id*:

> Due to Kaptan's failure to timely report these programs in response to Commerce's Initial Questionnaire, Commerce was not able to complete a full analysis of the program (*i.e.,* sending out supplemental questionnaires to the GOT and Kaptan).

Apparently, because Commerce was unaware of Kaptan's inclusion of this program in its IQR Exh. 31, CR76, the agency failed to send out supplemental questionnaires in a timely manner, then blamed Kaptan for the agency's own failure.

In the final results, Commerce applied adverse facts available to the GOT's reporting for this program, explaining, PR229 at 17-18 (footnote omitted):

> {I}n its supplemental questionnaire response, the GOT provided an incomplete response regarding this program. Specifically, the GOT failed to clearly identify the industry in which the respondent companies are classified under this program; further, it did not identify the usage codes that each industry is associated with.

Commerce explained, *id.* at 19 (footnote omitted):

> {T}he GOT failed to clearly identify the industry in which the respondent companies are classified, nor did it identify the usage codes that each industry is associate {sic} with. Thus we are unable to perform a complete *de facto* analysis. In particular, we are unable to determine which industry received the largest amount of the subsidies under this program, and if the respondents were part of one of those industries.

As AFA, Commerce made two determinations. (1) For the GOT, Commerce determined, as AFA, that the Law 4447 program was "specific, within the meaning of section 771(5A) of the Act." PDM at 7, PR229. (2) For Kaptan, as an AFA rate, in the absence of any non-*de minimis* rate for a similar program in any segment of the rebar reviews, Commerce selected another

program that reduces a company's tax obligations, namely, an "Investment Incentives Certificates" program with a rate of 1.81%. *Id*. at 8-9. Commerce made no changes in the final results; FDM at 5, PR247.

## II.   ARGUMENT – AFA, LAW 4447

Commerce's AFA determination as to Law 4447 is unsupported by substantial evidence because it is contrary to the factual record.

In determining whether substantial evidence supports an agency determination, the court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel, supra*, 337 F.3d at 1379.

Commerce may rely on facts available (FA) only where there is a gap in the record. 19 U.S.C. § 1677e(a). In *Qingdao Sea-Line Int'l Trading Co. v. United States*, 503 F. Supp. 3d 1355, 1361 (Ct. Int'l Trade 2021), this Court explained, "'The use of facts otherwise available … is only appropriate to fill gaps when Commerce must rely on other sources of information to complete the factual record.' *Zhejiang Dunan Hetian Metal Co. v. United States,* 652 F.3d 1333, 1346 (Fed. Cir. 2011) (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003))."

Commerce may apply adverse facts available (AFA) only if a respondent failed to cooperate to the best of its ability; *see*, 19 U.S.C. § 1677e(b). In *Qingdao Sea-Line*, 503. F. Supp. 3d at 1361, this court explained that Commerce must make a separate evaluation of whether a respondent's cooperation was to the best of its ability:

> Furthermore, Commerce may make a separate determination that the respondent failed to cooperate "to the best of its ability" and apply AFA. 19 U.S.C. § 1677e(b)(1)(A). A respondent does not cooperate to the "best of its ability" when it fails to "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries." *Nippon Steel*, 337 F.3d at 1382. The

> Federal Circuit in *Nippon Steel* explained that Commerce must
> make an objective and subjective determination regarding
> respondent's efforts in assessing whether it acted to the best of its
> ability. *Id*. at 1382-83. The Federal Circuit clarified that this test
> applies "regardless of motivation or intent" on the part of the
> respondent, and that it "does not condone inattentiveness,
> carelessness, or inadequate record keeping." *Id*.

Moreover, before selecting the AFA rate, Commerce must evaluate the respondent's conduct and

select a rate commensurate to that conduct, reserving the highest AFA rates for the most

egregious conduct; *id*. at 1362:

> In selecting an AFA rate, however, Commerce must "consider
> the totality of the circumstances in selecting an AFA rate,
> including, if relevant, the seriousness of the conduct of the
> uncooperative party." *BMW of N. Am. LLC v. United States*, 926
> F.3d 1291, 1302 (Fed. Cir. 2019).

Commerce's application of AFA fails at the very first step, namely, identifying a gap in

the record. In the PDM, Commerce asserts, "Due to Kaptan's failure to timely report these

programs in response to Commerce's Initial Questionnaire, Commerce was not able to complete

a full analysis of the program." PDM at 7. The PDM thus ignores Kaptan's timely reporting of

benefits under this law, when, in its IQR, it explained each of the social security benefits and

provided a table of its receipt of benefits, CR76. Kaptan's reporting timely notified Commerce

of these programs, allowing the agency to issue supplemental questionnaires to Kaptan or the

GOT if it considered Kaptan's reporting incomplete.

Commerce's claim that Kaptan failed to timely report its benefits under Law 4447 is

belied by Commerce's own preliminary calculation worksheet, *supra,* where Commerce

explicitly captured Kaptan's benefits under this law and calculated them to be so small as to be

"unmeasurable" for purposes of benefit analysis. CR239.

Commerce also ignores the GOT's October 2, 2023, SQR2, in which the GOT provided

the text of the statute and regulations, the specific usage by Kaptan, and the NACE-based

sectoral usage statistics. CR184, PR189.  Commerce claims that the GOT failed to identify the NACE category in which Kaptan's activities fell, but the failure was Commerce's, not GOT's, since GOT had previously given full descriptions of the NACE categories.  Kaptan, a producer of rebar, is clearly in NACE category 24 (iron and steel) (see got IQR Exh. 3, quoted above, CR80, PR63), and GOT provided Turkey's law 4447 usage by NACE code (GOT SQR2 Exh. 8, CR184, PR189).  The GOT relies on NACE codes for sectoral-usage analyses throughout their responses, and it is disingenuous for Commerce to assert that GOT failed to explain them.  If Commerce had any questions about the NACE categorizations, it could have issued a supplemental questionnaire after the GOT's IQR or at any time thereafter.

Regardless of whether Commerce was correct to apply specificity as AFA with respect to the GOT's responses, the agency was wrong to assert a gap in the record with respect to Kaptan's reporting. And, without such a gap, Commerce was wrong to apply FA in the first place, much less AFA.  Kaptan reported its receipt of benefits under law 4447, CR76, and Commerce could not lawfully ignore the information provided.

In sum, Commerce's application of AFA to Kaptan with respect to law 4447 is unsupported by substantial evidence and hence unlawful.  This Court should remand this issue to Commerce for reconsideration in light of the full record.

### ISSUE 4: AFA – SOCIAL SECURITY SUPPORT UNDER LAW 27256

### I.        STATEMENT OF FACTS – AFA, LAW 27256

Commerce wrongfully applied AFA to Kaptan with respect to Law 27256 because there is no factual record relating to Law 27256 at all.  PDM at 8-9, PR229; FDM at 6 (no change from PDM), PR247.

None of Kaptan's submissions on the record mention Law 27256 at all. None of the GOT's submissions mention law 27256 at all, either.

The record concerning Law 27256 is this:  On October 2, 2023, GOT filed a SQR that contained details of respondents' benefits under various social security programs.  CR184-92; PR189-97.  Within a few days thereafter, on October 12, 2023, Kaptan filed a letter, CR194, PR199, which Commerce *rejected* from the record as untimely, CR205, PR210 (October 16, 2023).  In its rejection letter, Commerce stated,

> This letter concerns the Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.'s (Kaptan) clarification comments to the second supplemental questionnaire response, submitted by the Government of Turkey (GOT), dated October 12, 2023, in the above-captioned review. The U.S. Department of Commerce (Commerce) has determined that Kaptan's response contains untimely filed new factual information correcting its initial questionnaire response, dated May 26, 2023. Specifically, Kaptan's comments contain untimely new factual information regarding benefits received under three Social Security Institution programs, [     ], [     ], and [     ], which should have been reported either as part of Commerce's request for information in the initial questionnaire regarding other programs for which Kaptan received benefits during the POR and AUL or pursuant to 19 C.F.R. 351.301(c)(5), as described below.

This is the only reference in the entire record to Law 27256 – namely, in Commerce's own letter rejecting Kaptan's submission on this law.

Commerce also placed on the record a rejection memorandum, PR211, stating, in full (footnote omitted):

> On October 12, 2023, Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. (Kaptan) filed a supplemental questionnaire response that contained untimely new factual information.  On October 16, 2023, the U.S. Department of Commerce (Commerce) notified Kaptan that it was rejecting Kaptan's submission.  Commerce is hereby requesting that the Central Records unit reject and remove the letter from Kaptan with following barcodes: 4445596-01 and 4445597-01.

In the Kaptan Verification Report, CR233, PR222, at 9-10, Commerce refers to the same information which Commerce had previously rejected from the record:

> When presenting information regarding the social security support programs, company officials attempted to provide information for benefits it, Geri, Martaş and Nur received under laws 4447 and 27256. We stated that Commerce did not include this program in the verification outline; further, we explained to company officials that these programs had been included in its October 12, 2023, which Commerce had rejected as untimely. Thus, we stated that we would not accept any information regarding this program at verification.

In its case brief, Kaptan argued that there was no evidence of record of the existence of a program under Law 27256. CR241, PR235 at 46.

In its final results, Commerce rejected Kaptan's argument that Commerce's own letter does not constitute evidence of the existence of a countervailable program, and went on to apply AFA for Kaptan's supposed failure to report the program. PR247.

In the FDM at 20-21, PR247, Commerce stated the grounds on which it found that Kaptan had failed to report its benefits under Law 27256:

> Kaptan stated that this program is not on the record. However, this is incorrect. While Commerce rejected the October 12 filing that initially listed this program, the program was listed in both Commerce's Rejection Letter rejecting the submission,[84] and was identified in the company's Verification Report.[85] Therefore, record information, supplemented by the use of AFA (as explained in greater detail in Comment 7), indicates that Kaptan benefited from this program during the POR, and we correctly included this program in our subsidy calculations.

Note 84 above references Commerce's rejection letter, quoted in the previous subsection; the footnote states:

> [84] See Commerce's Letter, "Rejection of Untimely New Factual Information in October 12, 2023, Filing," dated October 16, 2023 (Rejection Letter).

Note 85 references Commerce's verification report; it states:

[85] See Verification Report at 9-10 ("When presenting information regarding the social security support programs, company officials attempted to provide information for benefits it, Geri, Martas and Nur received under laws 4447 and 27256. We stated that Commerce did not include this program in the verification outline; further, we explained to company officials that these programs had been included in its October 12, 2023, which Commerce had rejected as untimely").

Thus, the *only* sources for Commerce's claim that Law 27256 even exists are the references to it in Commerce's own letter and the cross-reference to that letter in the verification report.

This appeal ensued.

## II.    ARGUMENT – AFA, LAW 27256

Commerce cannot lawfully claim that the existence of Law 27256 is shown by evidence in the record.  Commerce cannot rely on Kaptan's submission of October 12, 2023 (CR194, PR199), because Commerce rejected that submission as untimely. CR205, PR210.  When Commerce rejects a submission as untimely, the regulations prohibit Commerce from using any information in that submission:

> The Secretary, in making any determination under this part, will not use factual information, written argument, or other material that the Secretary rejects.

19 C.F.R. § 351.104(a)(2)(i).  Thus, Commerce cannot use Kaptan's October 12 filing in making any determination.

The impermissibility of using a rejected document for any substantive purpose is underscored by the following subsection of the regulation, which allows Commerce to retain a copy of the rejected document on the record *solely* to show the reason the document was rejected:

> The official record will include a copy of a rejected document, solely for purposes of establishing and documenting the basis for rejecting the document, if the document was rejected because: (A) The document, although otherwise timely, contains untimely filed new factual information (see § 351.301(c));…

19 C.F.R. § 351.104(a)(2)(ii).  Thus, Commerce's regulations preclude Commerce from relying on a rejected submission *for any purpose* other than establishing the reason for the rejection.

Thus, Commerce violates its own regulation in when it refers to a law number from a rejected submission for proof that such a law exists and that Kaptan failed to report benefits thereunder.  This reference to a specific statement in a document rejected as untimely constitutes a use for a purpose other than establishing the reason why the document was rejected, and such a use is expressly prohibited by the regulation.

In sum, there is no record evidence that Kaptan received or reported or tried to report any benefits under Law 27256, or even that such a law exists.  The factual record contains no reference whatsoever to this program; it does not appear in any submission of record by either Kaptan or the GOT.  Hence, there is no gap in the record, to be filled by FA/AFA.

Moreover, aside from the regulatory prohibition against Commerce's relying on the contents of a document that it has rejected as untimely, the fact is that Commerce cannot rely on factual statements in its own letter as evidence in reaching a determination.

The definition of "evidence" precludes Commerce from treating as evidence a supposed "fact" that appears nowhere but in a letter generated by the agency itself.  The trade laws and regulations do not define "evidence." In the absence of a statutory definition, the ordinary or common meaning of the word applies.  *FDIC v. Meyer*, 510 U.S. 471, 476, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); *Nan Ya Plastics Corp. v. United States*,  810 F.3d 1333, 1345 (Fed. Cir. 2016). A standard dictionary defines "evidence" as "something that furnishes proof; specifically: something legally *submitted to a tribunal* to ascertain the truth of a matter."

*https://www.merriamwebster.com/ dictionary/ evidence*, accessed Nov. 7, 2024 (emphasis

added).  *Webster's New International Dictionary of the English Language*, 2d ed. unabridged

(1959), defines "evidence" as –

> That which is legally submitted to a competent tribunal as a means
> of ascertaining the truth of any alleged matter of fact under
> investigation before it.

*See also*, *https://www.britannica.com/dictionary/evidence*, accessed Nov. 11, 2024 ("material

that is *presented to* a court of law to help find the truth about something" (emphasis added)).

Thus, "evidence" is material *submitted to* a tribunal, as distinct from material *generated*

*by* a tribunal.

Thus, Commerce's rejection letter of October 16, which was the sole basis on which

Commerce found a gap in the record relating to supposed Law 27256, does not constitute

evidence at all, and therefore, *a fortiori* does not constitute substantial evidence. The rejection

letter was generated by Commerce, itself.  Any "facts" that Commerce may wish to include in its

rejection letter must be supported by evidence on the record.  However, Commerce cannot rely

on the very submission that the agency rejected as untimely to support any statement of fact;

such a cross-reference is precluded by the regulations quoted above. Therefore, Commerce's

rejection letter does not constitute evidence of the existence of Law 27256.

 Furthermore, Commerce's references to Law 27256 that derive from the rejection letter –

specifically, the reference to law 27256 in the Kaptan verification report, CR233, PR222 – are

likewise tainted by the impermissibility of the reference in the rejection letter on which they rely.

In sum, there is no evidence on the record that law 27256 exists.  There is, therefore, no

evidence of a gap in the record with respect to this supposed law, and consequently no support

for either FA or AFA.

Kaptan therefore asks the Court to remand Commerce's AFA determination as to Law 27256 with instructions to reconsider the record as to the existence of this law, and, in the absence of evidence that Law 27256 exists, to reverse its AFA determination.

## CONCLUSIONS

For the reasons set forth above, Kaptan asks that this matter be remanded to Commerce, as summarized below.

On the BITT issue, Kaptan asks the Court to find that Commerce's determination that the BITT exemption is *de jure* specific is unsupported by substantial evidence, and to remand accordingly.

On the BITT/AFA issue, Kaptan asks the Court to remind with a direction that Commerce either identify with precision the evidentiary basis for its interpretation of the BITT law as applicable to arbitrage transactions or forego the AFA aspect of the benefit calculation.

On the land LTAR issue, Kaptan asks the Court to remand with a direction that Commerce consider the C&W benchmark on its merits and conduct a factual analysis of the comparability of the C&W benchmark properties with the Collier Çerkezköy property.

On the issue of AFA for Law 4447, Kaptan asks the Court to remand with an instruction that Commerce articulate its evidentiary basis for deciding that arbitrage transactions are exempt from BITT and, if it has none, to recalculate Kaptan's benefit based on Kaptan's reported spot transactions.

*Public (Non-Confidential) Version*
*Confidential information redacted in brackets, […]*

On the issue of AFA for Law 27256, Kaptan asks the Court to direct Commerce to reverse its finding that Kaptan received a benefit under Law 27256.  Alternatively, if, upon remand, Commerce reconsiders and reverses its rejection of Kaptan's October 12 letter, Commerce must then revise Kaptan's benefits calculations according to the contents of the letter.

Respectfully submitted,

/s/ *David L. Simon*

David L. Simon

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Email: dlsimon@dlsimon.com

*Counsel to Kaptan Demir Çelik Endüstrisi
ve Ticaret A.Ş.*

November 17, 2024

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The confidential version of this brief contains 12,578 words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, the Table of Authorities, and this Certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

/s/ *David L. Simon*
David L. Simon

Date:  November 17, 2024

*Counsel to Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br>　and<br><br>REBAR TRADE ACTION COALITION,<br><br>　　　　Defendant-Intervenor. | **Court No. 24-cv-00096** |

## <u>ORDER</u>

Upon consideration of the Rule 56.2 Motion Of Plaintiff Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. For Judgment On The Agency Record, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Kaptan's motion is granted, and it is further

**ORDERED** that this case is remanded to Commerce for reconsideration of the BITT tax exemption consistently with the opinion accompanying this Order, and it is further

**ORDERED** that this case is remanded to Commerce for reconsideration of the LTAR benchmark for the Nur parcel consistently with the opinion accompanying this Order; and it is further

**ORDERED** that this case is remanded to Commerce for reconsideration of the application of adverse facts available ("AFA") to Kaptan as to Law 4447, consistently with the opinion accompanying this Order, and it is further

**ORDERED** that this case is remanded to Commerce for reconsideration of the application of adverse facts available ("AFA") to Kaptan as to Law 27256, consistently with the opinion accompanying this Order, and it is further

**ORDERED** that Commerce shall file its final results of redetermination on remand within 90 days of the date of this order.

**SO ORDERED**.


Dated: _____        _____
           New York, NY                                    JUDGE