# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____
                                    )

| | |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
|    v. ) | Court No. 24-00096 |
| ) | |
| UNITED STATES, ) | |
| ) | |
|         Defendant, ) | |
| ) | |
|    and ) | |
| ) | |
| REBAR TRADE ACTION COALITION, ) | |
| ) | |
|         Defendant-Intervenor. ) | |

_____ )

## ORDER

Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the plaintiff's Rule 56.2 motion for judgment on the agency record is denied; and it is further

ORDERED that judgment shall issue for the United States.


Dated: _____
     New York, New York

                                      _____
                                           JUDGE

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Court No. 24-00096 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |
| and | ) ) | |
| REBAR TRADE ACTION COALITION, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

_____ )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S <u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

BRETT A. SHUMATE
Principal Deputy Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station

OF COUNSEL
Heather Holman
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
   Trade Enforcement Compliance

Washington, D.C. 20044
Telephone: (202) 307-0315
Email: Collin.T.Mathias@usdoj.gov

February 21, 2025                                    *Attorneys for Defendant United States*

## TABLE OF CONTENTS

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT UPON
AGENCY RECORD ................................................................................................ 1

STATEMENT PURSUANT TO RULE 56.2 ......................................................... 2

    I.     Administrative Determination Under Review ........................................ 2

    II.    Issues Presented For Review ................................................................. 2

STATEMENT OF FACTS ...................................................................................... 3

SUMMARY OF THE ARGUMENT ...................................................................... 8

ARGUMENT ............................................................................................................ 10

    I.     Standard Of Review ............................................................................ 10

    II.    Commerce's Determination That The BITT Exemption Program Is *De Jure* Specific Is Supported By Substantial Evidence And In Accordance With Law .. 11

    III.   Commerce's Benchmark Selection For Valuing Nur's Land Is Supported By Substantial Evidence And In Accordance With Law ........................................... 14

        A.    Commerce's Determination That The Cushman & Wakefield Benchmark Rate Was Unusable Is Supported By Substantial Evidence And In Accordance With Law ............................................................ 15

        B.    Commerce's Determination To Rely On The Colliers Benchmark Rate Is Supported By Substantial Evidence And In Accordance With Law ........ 18

    IV.   Commerce's Use Of AFA For The BITT Exemption, Social Security Support Under Law 4447, And Social Security Support Under 27256 Is Supported By Substantial Evidence And In Accordance With Law ........................................... 19

        A.    Legal Framework ..................................................................... 19

        B.    Commerce's Application Of AFA To The BITT Exemption Program Is Supported By Substantial Evidence And In Accordance With Law ........ 20

        C.    Commerce's Application Of AFA To The Social Security Support Under Law 4447 Program Is Supported By Substantial Evidence And In Accordance With Law ............................................................ 24

D.      Commerce's Application Of AFA To The Social Security Support Under Law 27256 Program Is Supported By Substantial Evidence and In Accordance With Law ............................................................................. 27

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Algoma Steel Corp., Ltd. v. United States,*
865 F.2d 240 (Fed. Cir. 1989)........................................................................ 11, 14

*Atl. Sugar, Ltd. v. United States,*
744 F.2d 1556 (Fed. Cir. 1984)........................................................................ 10

*Bebitz Flanges Works Priv. Ltd. v. United States,*
433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020)........................................................ 22

*Consol. Edison Co. v. NLRB,*
305 U.S. 197 (1938)................................................................................ 10, 30

*Consolo v. Fed. Mar. Comm'n,*
383 U.S. 607 (1966)................................................................................ 10

*Dongtai Peak Honey Indus. Co. v. United States,*
971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014)........................................................ 11

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996)........................................................................ 10

*Goodluck India Ltd. v. United States,*
11 F.4th 1335 (Fed. Cir. 2021)...................................................................... 23, 28

*Hung Vuong Corp. v. United States,*
483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020)..................................................... 22, 23

*Hyundai Steel Co. v. United States,*
659 F. Supp. 3d 1327 ................................................................................ 11, 14

*Jiaxing Brother Fastener Co. v. United States,*
428 F. Supp. 3d 1364 (Ct. Int'l Tr. 2020) ........................................................... 23

*Kaptan Demir Celik Endustrisi veTicaret A.S. v. United States,*
736 F. Supp. 3d 1318 (Ct. Int'l Trade 2024)..................................................... 11, 14

*Maverick Tube Corp. v. United States,*
857 F.3d 1353 (Fed. Cir. 2017)...................................................................... 26

*Nippon Steel Corp. v. United States,*
337 F.3d 1373 (Fed. Cir. 2003)........................................................ 20, 24, 27, 30

v

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006) ......................................................... 10, 22

*Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States,*
    273 F. Supp. 3d 1225 (Ct. Int'l Trade 2017) ................................... 18, 20

*Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States,*
    282 F. Supp. 3d 1352 (Ct. Int'l Trade 2018) ........................................ 19

*Papierfabrik August Koehler SE v. United States,*
    843 F.3d 1373 (Fed. Cir. 2016) ............................................................. 29

*Sandt Tech. v. Resco Metal & Plastics Corp.,*
    264 F.3d 1344 (Fed. Cir. 2001) ............................................................. 17

*Thai Pineapple Pub. Co. v. United States,*
    187 F.3d 1362 (Fed. Cir. 1999) ............................................................. 10

*TransWeb, LLC v. 3M Innovating Props Co.,*
    812 F.3d 1295 (Fed. Cir. 2016) ............................................................. 17

*United States v. Eurodif S.A.,*
    555 U.S. 305 (2009) ............................................................................... 10

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) ............................................................................... 11

*Yantai Timken Co. v. United States,*
    521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ........................................ 11

## Statutes

19 U.S.C. § 1516a(b)(1)(B) ........................................................................ 10
19 U.S.C. § 1677 ................................................................................... passim
19 U.S.C. § 1677e ................................................................................ passim
19 U.S.C. § 1677m ...................................................................... 22, 23, 26

## Regulations

19 C.F.R. § 351.301(c)(1) ........................................................................... 23
19 C.F.R. § 351.301(c)(5) ....................................................................... 5, 28
19 C.F.R. § 351.308(c) ............................................................................... 20
19 C.F.R. §351.511(a)(2) ........................................................................... 17

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____
)
KAPTAN DEMIR CELIK ENDUSTRISI VE )
TICARET A.S., )
)
                Plaintiff, )
)
    v. )      Court No. 24-00096
)
UNITED STATES, )
)
              Defendant, )
)
    and )
)
REBAR TRADE ACTION COALITION, )
)
           Defendant-Intervenor. )
_____ )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record (Pl. Br., ECF No. 23) filed by plaintiff, Kaptan Demir Celik Endustrisi ve Ticaret A.S. (Kaptan). Kaptan challenges certain aspects of the Department of Commerce's final results in the 2021 administrative review of the countervailing duty order covering steel concrete reinforcing bar (rebar) from Turkey. As demonstrated below, Commerce's final results are supported by substantial evidence and are in accordance with law. Therefore, we respectfully request that the Court deny the motion and enter judgment for the United States.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

I.     <u>Administrative Determination Under Review</u>

The administrative determination under review is Commerce's final results in the 2021 administrative review of the countervailing duty order on rebar from Turkey.  *See Steel Concrete Reinforcing Bar From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 35,071 (Dep't of Commerce May 1, 2024) (P.R. 249)[1], and accompanying Issues and Decision Memorandum (IDM) (P.R. 247).  The period of review covered by the final results is January 1, 2021, through December 31, 2021.  *Id.*

II.    <u>Issues Presented For Review</u>

1.  Whether Commerce's determination that exemptions from the Bank and Insurance Transactions Tax (BITT) on foreign exchange transactions are *de jure* specific is supported by substantial evidence and in accordance with law.

2.  Whether Commerce's selection of a land benchmark was supported by substantial evidence and in accordance with law.

3.  Whether Commerce's use of an adverse inference when selecting from among the facts otherwise available on the record to calculate a benefit for Kaptan under the BITT program was supported by substantial evidence and in accordance with law.

4.   Whether Commerce's use of an adverse inference when selecting from among the facts otherwise available on the record to find Social Security Support Under Law 4447 specific was supported by substantial evidence and in accordance with law.

---

[1]  Citations to the public documents (P.R.) and confidential documents (C.R.) refer to the record of the underlying administrative review.

5. Whether Commerce's use of an adverse inference when selecting from among the facts otherwise available on the record to find Social Security Support Under Law 27256 countervailable was supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On November 6, 2014, Commerce issued a countervailing duty order covering Turkish rebar. *See Steel Concrete Reinforcing Bar from the Republic of Turkey*, 79 Fed. Reg. 65,926 (Dep't of Commerce Nov. 6, 2014). On November 1, 2022, Commerce published a notice of opportunity to request an administrative review of that order for the period January 1, 2021, through December 31, 2021. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 65,750 (Dep't of Commerce Nov. 1, 2022) (P.R. 1). Commerce published a notice initiating an administrative review of 23 producers and/or exporters of rebar from Turkey, including the two parties Commerce ultimately selected as mandatory respondents: Kaptan Demir Celik Endustrisi ve Ticaret A.S. (Kaptan) and the cross-owned entities Colakoglu Metalurgi A.S. and Colakoglu Dis Ticaret A.S. (collectively, Colakoglu). *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 50, 55 (Dep't of Commerce Jan. 3, 2023) (P.R. 14), corrected by *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 15,642, 15, 659 (Dep't of Commerce Mar. 14, 2023) (P.R. 28); Respondent Selection Memo, Mar. 28, 2023, (P.R. 29).

After receiving questionnaire responses, comments, and other factual information from the Government of Turkey (GOT), Kaptan, and Colakoglu, as well as conducting verification of all three, Commerce issued its preliminary results on December 7, 2023. *See Steel Concrete*

*Reinforcing Bar from the Republic of Turkey: Preliminary Results of Countervailing Duty Administrative Review and Rescission of Administrative Review, in Part; 2021*, 88 Fed. Reg. 85,234 (Dep't of Commerce Dec. 7, 2023) (P.R. 231) and accompanying Preliminary Decision Memorandum, Dec. 1, 2023, (P.R. 229) (PDM).

Commerce preliminarily determined that the exemption Kaptan received from the GOT's Bank and Insurance Transactions Tax (BITT) on foreign exchange transactions constituted a countervailable subsidy. PDM at 14-15. Commerce explained that the exemption constituted a financial contribution in the form of revenue forgone by the GOT to Kaptan, provided a benefit in the amount of the tax savings to the company, and was *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) because it was limited to firms that conducted certain types of foreign exchange transactions. *Id.* Commerce used an adverse inference when selecting from among the facts otherwise available (AFA) to calculate a benefit for Kaptan under the BITT Program because it found that Kaptan failed to report some transactions. PDM at 9 (citing Kaptan's Verification Report at 7, Nov. 6, 2023, (P.R. 222)).

Commerce also preliminarily found that an agreement between the GOT and Nur, a cross-owned affiliate of Kaptan, providing Nur with rent-free land pursuant to Law 5084, constituted a countervailable subsidy. *Id.* at 16-17. Commerce explained that the provision of rent-free land constituted a financial contribution in the form of land provided for less-than-adequate remuneration, and that the rent exemption program was regionally specific because the subsidy was limited to companies in designated geographic areas. *Id.* at 16. Commerce calculated the benefit from this program using a benchmark based on Colliers International's

*Real Estate Market Turkey Review*, which was submitted by the petitioner.[2]  *Id.* (citing

Petitioner's Benchmark Submission, July 20, 2023, (P.R. 134)).

Additionally, Commerce applied AFA for three programs.  First, for the BITT exemption

program, Commerce determined that 19 U.S.C. § 1677e(a)(2)(a), (b) and (c) applied because

Kaptan failed to fully report its benefits under the program in its questionnaire responses,

withholding necessary information which Commerce could not verify, significantly impeding the

review.  PDM at 9.  Commerce further determined that it would apply AFA because Kaptan

attempted to provide the information after the deadline had passed.  *Id.*  This proved that Kaptan

could have provided the information that Commerce requested, but failed to do so, so Commerce

determined, pursuant to 19 U.S.C. § 1677e(b) that Kaptain failed to cooperate by not acting to

the best of its ability in responding to Commerce's requests for information regarding the benefit

received form the exemption.  *Id.*

Second, Commerce applied AFA to find Social Security Support under Law 4447

specific.  Kaptan did not timely provide information about this program, failing to submit details

by the deadline for submitting new factual information pursuant to 19 C.F.R. § 351.301(c)(5).

*Id.* at 7.  Kaptan attempted twice to submit new factual information regarding this program, once

in a late filing and once at verification, which Commerce rejected because neither were

submitted in accordance with regulatory time limits.  *See* Rejection of Untimely New Factual

Information, Oct. 16, 2023, (P.R. 211).  Commerce determined that necessary information was

missing from the record under 19 U.S.C. § 1677e(a)(1), and that Kaptan withheld information

requested by Commerce which significantly impeded the proceeding, pursuant to 19 U.S.C.

---

[2] The Petitioner is the Rebar Trade Action Coalition, consisting of Byer Steel Group, Inc., Commercial Metals Company, Gerdau Ameristeel U.S. Inc., Nucor Corporation, and Steel Dynamics Inc.

5

§ 1677e(a)(2)(C), and requiring Commerce to gap-fill using information from the record. PDM at 7. Commerce further determined that both the GOT and Kaptan failed to cooperate by not acting to the best of their abilities within the meaning of 19 U.S.C. § 1677e(b)(1) when they provided incomplete responses to the Initial and Supplemental questionnaire regarding this program. Kaptan's Initial Questionnaire Response (IQR) at 56-60, May 26, 2023, (C.R. 21, P.R. 59); Government of Turkey's Initial Questionnaire Response (GOT IQR) at 109-119, May 29, 2023, (C.R. 77, P.R. 60); Government of Turkey's Second Supplemental Questionnaire Response (GOT 2SQR) at 13-22, October 2, 2023 (C.R. 184, P.R. 189) Commerce therefore used AFA to gap-fill the missing information about the program, finding that Kaptan's late attempts to provide the requested information, and the GOT's inclusion of similar information in other parts of the questionnaire proved that the parties could have cooperated with Commerce's requests, but failed to do so. PDM at 6.

Finally, in the preliminary results, Commerce applied AFA to the Social Security Support under Law 27256 Program when it found that Kaptan failed to provide necessary information by the established deadline and its untimely attempts to provide information did not reflect its acting to the best of its ability. PDM at 7-8. Commerce determined that necessary information was missing from the record under 19 U.S.C. § 1677e(a)(1) and that Kaptan failed to provide such necessary information by the deadline established under 19 U.S.C. § 1677e(a)(2)(B) because Kaptan did not provide any information regarding this program when Commerce requested such information in its initial questionnaire. Kaptan's IQR at 56-60 (C.R 21, P.R. 59); PDM at 6-9. Furthermore, Kaptan's late attempts to provide the information in a late filing and at verification prove that it could have submitted the information at the proper time, but failed to do so. PDM at 8. As a result, Commerce determined that Kaptan failed to cooperate by not acting to the best

of its ability to respond to Commerce's request for information, and accordingly applied an adverse inference to the facts otherwise available pursuant to 19 U.S.C. § 1677e(b). PDM at 6-9.

On May 1, 2024, Commerce issued the Final Results, making no major changes from its Preliminary Results. *See Steel Concrete Reinforcing Bar From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 35,071 (Dep't of Commerce May 1, 2024) (P.R. 249), and accompanying Issues and Decision Memorandum (IDM), May 28, 2024, (P.R. 247). Commerce continued to find that the BITT exemption program was *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) because it was limited to firms that conducted certain types of foreign exchange transactions. IDM at 13.

Commerce also continued to rely on Colliers International's *Real Estate Market Turkey Review* to determine a benchmark to value Nur's exemption from paying rent on its land. Commerce explained that the Colliers International report was the only usable data source on the record, as the only alternative provided by Kaptan was entirely business proprietary, was commissioned by Kaptan for the purposes of the underlying review, and appeared to be based, at least partly, on information reflecting transactions by nonprivate third parties. IDM at 10-11.

Finally, Commerce continued to select from among the facts otherwise available on the record regarding the BITT exemption program, the Social Security Support Under Law 4447 program, and the Social Security Support Under Law 27256 program because necessary information was not available on the record, parties withheld the information Commerce requested, information was not furnished by the appropriate deadlines, parties significantly impeded the proceeding and/or because information provided could not be verified. *See* IDM at 14-23. Additionally, Commerce found that Kaptan's and the GOT's failure to provide information on these programs, which it informed Commerce were available to it, did not reflect

either party cooperating by acting to the best of its ability, so Commerce continued to apply an adverse inference to the facts otherwise available with regards to the BITT exemption program, and the Social Security Support Under Law 4447 and 27256 programs.

This action ensued.

## SUMMARY OF ARGUMENT

Commerce's determination that the BITT exemption program is *de jure* specific and therefore countervailable is supported by substantial evidence and in accordance with law. The BITT exemption program only benefits enterprises that both obtain an industrial registry certificate and conduct foreign exchange transactions. Therefore, the users of the program are limited to a smaller group of entities and the program is *de jure* specific pursuant to 19 U.S.C. § 1677(5A).

Commerce's selection of a land benchmark in valuing the government of Turkey's provision of rent-free land to Kaptan's cross-owned affiliate, Nur, is also supported by substantial evidence and in accordance with law. Commerce reasonably determined that the benchmark information submitted by Kaptan was not reliable because it was entirely proprietary, was prepared for the purpose of an adjudicative proceeding, and was based on information obtained from nonprivate sources. Having made that determination, Commerce reasonably relied on the only other benchmark information on the record, which did not have similar reliability issues.

Finally, Commerce's use of an adverse inference when selecting from among the facts otherwise available on the record regarding the BITT exemption program, Social Security Support Under Law 4447 program, and Social Security Support Under Law 27256 program is supported by substantial evidence and in accordance with law. First, Kaptan failed to report all

the benefits that it received under the BITT exemption program, so Commerce could not verify that information and reasonably determined that Kaptan withheld necessary information and significantly impeded the review, necessitating the use of facts otherwise available on the record to gap-fill the missing information. Kaptan attempted to provide the information at verification, proving that it could have provided the information earlier, but failed to cooperate by not acting to the best of its ability by not timely providing the requested benefit information, warranting Commerce's use of an adverse inference. Next, with regards to Social Security Support Under Law 4447, both Kaptan and the GOT repeatedly failed to provide requested information, so Commerce reasonably determined that such information was not on the record, and that the parties withheld requested information and significantly impeded the review, necessitating the use of facts available. Kaptan provided the information requested for other programs reviewed, but failed to do so for this program, demonstrating that it failed to cooperate by not acting to the best of its ability and justifying the use of an adverse inference. Commerce found that the use of facts otherwise available on the record to gap-fill the missing information was necessary for Social Security Support Under 27256 because Kaptan failed to provide information on this program within the appropriate deadline, resulting in necessary information missing from the record. Additionally, Commerce reasonably determined that Kaptan failed to cooperate by not providing the information timely, demonstrated by the fact that it attempted twice to provide information regarding this program at a later time, proving that it could have done so but failed to act to the best of its ability when requested, thus warranting the use of an adverse inference.

# ARGUMENT

## I.    Standard Of Review

This Court sustains any determination, finding or conclusion by Commerce unless it is unsupported by substantial evidence upon the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may also be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from evidence upon the record does not render Commerce's finding unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions.  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

This Court defers to Commerce's "selection and development of proper methodologies." *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (citation omitted).  Moreover, Commerce is accorded particular deference in antidumping and countervailing duty determinations. *See*, *e.g.*, *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts.").

"Absent constitutional constraints or extremely compelling circumstances{,} the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (citations and internal quotation marks omitted). This Court has thus held that "{Commerce} has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007), *aff'd*, 300 F. App'x 934 (Fed. Cir. 2008); *Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015).

## II. Commerce's Determination That The BITT Exemption Program Is *De Jure* Specific Is Supported By Substantial Evidence And In Accordance With Law

Commerce's determination that the BITT exemption program is *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) is supported by substantial evidence and in accordance with law.[3] To find that a foreign government's program is a countervailable subsidy, Commerce must find that the foreign government "provide{d} a financial contribution," that a "benefit {was} thereby conferred," and that the subsidy was "specific." 19 U.S.C. § 1677(5)(A)-(B). A subsidy is *de jure* specific pursuant to § 1677(5A)(D)(i) if "the legislation pursuant to which the authority

---

[3] We acknowledge that this Court has rejected a similar *de jure* specificity finding in *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, 736 F. Supp. 3d 1318, 1329-1330 (Ct. Int'l Trade 2024) ("[B]ecause the provisions of Turkish law that Commerce cites do not constitute "substantial evidence on the record" for de jure specificity, the court remands for a redetermination of whether the BITT Exemption is countervailable."). However, prior decisions of this Court do not bind the present dispute. *See Hyundai Steel Co. v. United States*, 659 F. Supp. 3d 1327, 1335 n.18 (citing *Algoma Steel Corp., Ltd. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989)). Further, this Court has not entered judgment in that litigation, in which Commerce is currently proceeding under protest.

operates{} expressly limits access to the subsidy to an enterprise or industry" or to "a group of {} enterprises or industries." *Id.* Furthermore, "where a foreign government expressly limits access to a subsidy to a sufficiently small number of enterprises, industries, or groups thereof, further inquiry into actual use of the subsidy is unnecessary." *Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, at 930, reprinted in 1994 U.S.C.C.A.N. 4040, 4242 (SAA).

The BITT is governed by Article 33 of Law 6802 (the Expenditure Expenses Law), which stipulates that Turkish companies must pay a tax on their sales in foreign currencies for spot transactions. *See* PDM at 14; *see also* Kaptan's IQR at 50-55 (C.R. 21, P.R. 59). The following transactions and sales are exempted from the tax: (1) foreign exchange transactions among and between banks and authorized institutions; (2) foreign currency sales to the Ministry of Treasury and Finance; (3) foreign currency sales, by the lending local bank or the local bank that intermediates the loan, to corporate borrowers for repayment of their foreign currency-denominated loans; (4) foreign exchange sales to enterprises having an industrial registry certificate; and (5) foreign currency sales to export companies which are members of exporters' associations. Kaptan's IQR at 50-55 (C.R. 21, P.R. 59). Kaptan reported that it was eligible to receive this tax exemption because it possesses an industrial registry certificate and is part of an exporters' association. Kaptan's IQR at 52 (C.R. 21, P.R. 59).

Commerce found that the BITT exemption program provided Kaptan a financial contribution in the form of revenue forgone and that Kaptan received a benefit in the form of tax savings to the company. PDM at 14-15. Commerce further found that the program is *de jure* specific because it is expressly limited to a group of enterprises, namely, enterprises that conduct certain types of foreign exchange transactions pursuant to Law 6802. *Id.*; IDM at 13. Thus,

Commerce reasonably determined that the BITT exemptions program met all the requirements of countervailability pursuant to 19 U.S.C. § 1677(5A)(D)(i).

Kaptan argues that the BITT exemption program is not *de jure* specific because every business in Turkey is eligible for the exemption because productive businesses are required to have an industrial registry certificate. Pl. Br. at 17. However, Kaptan fails to provide supporting evidence that every Turkish company is eligible for a certificate or show that every firm actually obtains such a certificate. Further, Kaptan has not shown that the GOT provides the BITT subsidy to the every business that has a certificate. Even if every firm in Turkey obtained such a certificate, Kaptan overlooks the fact that the BITT exemption is only provided to a *subset* of the companies holding the industrial registry certificate: those firms conducting foreign exchange transactions. IDM at 13. Therefore, the program is "expressly limit{ed}" to enterprises performing the foreign exchange transactions. *See* 19 U.S.C. § 1677(5A)(D)(i). The GOT expressly limited the BITT subsidy to enterprises that partake in foreign exchange transactions *and* satisfy the condition of possessing a certificate. Given that the universe of companies that may benefit from the BITT is only those companies that both hold industrial registry certificates and make foreign exchange transactions, the universe of companies that may benefit from it is limited pursuant to § 1677(5A)(D)(i).

Kaptan's "driver's license" analogy, comparing the mandatory industrial registry certificate to a driver's license being mandatory to drive a car, is a false comparison. *See* Pl. Br. at 18. The benefit of a driver's license is the ability to drive a car. However, the benefit of holding an industrial registry certificate is that it entitles a firm for the BITT exemption only upon making foreign exchange transactions. There is no BITT benefit to holding the certificate without the further limitation of engaging in foreign exchange transactions, just as there is no

13

benefit of a driver's license without a car to drive.  Enterprises must meet multiple conditions to benefit from the BITT subsidy.

The record demonstrates that the BITT exemption program is only available to those businesses who hold an industrial registry certificate *and* make foreign exchange transactions. Therefore, the BITT program is expressly limited to a group of enterprises who satisfy this criteria, and Commerce's determination that the program is *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) is supported by substantial evidence and in accordance with law.

### III. Commerce's Benchmark Selection For Valuing Nur's Land Is Supported By Substantial Evidence And In Accordance With Law

Commerce's choice of a benchmark rate to value the land that Nur received from the government of Turkey is supported by substantial evidence and in accordance with law.[4]  Nur entered into an agreement with the local government of the Surmene district of Turkey to receive rent-free land pursuant to Law 5084, which allows entities to use land for free for 49 years in exchange for investment into the property.  PDM at 16.  Kaptan does not challenge that this agreement satisfied the criteria of a countervailable subsidy.  Instead, Kaptan argues that Commerce should have used Kaptan's benchmark submission, the Cushman & Wakefield Report, as the land benchmark for valuing Nur's rent-free land.  Pl. Br. at 23-30.  However, Commerce reasonably determined that this submission was not usable because the information in that report is nonpublic, commissioned by Kaptan for the purposes of the administrative review, and relies on some prices from transactions of non-public entities.

---

[4] We also acknowledge that this Court has remanded a similar benchmark selection in *Kaptan Demir Celik Endustrisi ve Ticaret A.S.*, 736 F. Supp. 3d at 1332-33.  However, prior decisions by this Court do not bind the present dispute.  *See Hyundai Steel Co.*, 659 F. Supp. 3d at 1335 n.18 (citing *Algoma Steel Corp.*, 865 F.2d at 243).  Further, this Court has not entered judgment in that litigation, and the remand was only for further explanation.

## A.    Commerce's Determination That The Cushman & Wakefield Benchmark Rate Was Unusable Is Supported By Substantial Evidence And In Accordance With Law

To calculate the value of the benefit that Nur received, Commerce computed the amount Nur should have paid for its rent-free land during the period of review by multiplying the area of land by a benchmark rate.  PDM at 16.  In determining which benchmark rate to use, Commerce considered a Rent Estimation Study by Cushman and Wakefield (Cushman & Wakefield Report), submitted by Kaptan, and data from Colliers International's *Real Estate Market Turkey Review* (Colliers Report), submitted by petitioner.  *Id.*; Kaptan's Benchmark Submission, July 20, 2023 (C.R. 138-46, P.R. 133); Petitioner's Benchmark Submission, August 18, 2023 (P.R. 170).  Commerce determined that the Cushman & Wakefield Report was not useable for several reasons and that the Colliers Report was therefore the best benchmark information on the record.  IDM at 11-12.

First, the information provided by Kaptan is business proprietary in its entirety.  *See* Kaptan's Benchmark Submission (C.R. 138-46, P.R. 133).  Kaptan argues that even though the "body" of the Cushman & Wakefield Report was proprietary, the actual figures were public, and all parties had access to the business proprietary information under the administrative protective order.  Pl. Br. at 27.  However, this argument does not change the fact that the report itself, and the analysis underlying the proposed benchmark, is business proprietary.  IDM at 11.  Kaptan acknowledges that Commerce prefers to use public benchmark information where available.  Pl. Br. at 26-27.  Kaptan argues that Commerce's preference should not preclude Commerce's use of proprietary information but does not argue that the preference itself is unreasonable or contrary to law.  *Id.* at 26.  Using public information allows Commerce to be more transparent in

its decision-making, and more thorough in its public documentation. Given Commerce's

undisputed preference for public benchmark information, Commerce cited the proprietary nature

of the report as one reason among others that it ultimately decided that the report was unusable.

IDM at 11.

Kaptan attempts to equate the business proprietary nature of the body of Cushman &

Wakefield Report with the nonpublic data used by Colliers to compile its report. Pl. Br. at 28.

However, the non-public portions of each report are not comparable. The body of the Colliers

Report is still public, unlike the body of the Cushman & Wakefield Report, Kaptan's Benchmark

Submission, (C.R. 138-46, P.R. 133), and is therefore better suited for Commerce's use given the

preference for public information. IDM at 11. Furthermore, the fact that the Colliers Report is

based on numbers compiled by Colliers weighs in favor of using that report because not using

secondary sources or compiling sets of data from other sources increases the report's reliability.

IDM at 10. Commerce reasonably considered this as one factor.

Commerce also considered that the Cushman & Wakefield report was commissioned by

Kaptan for the purpose of this administrative review, as Kaptan admits. IDM at 11-12; Pl. Br. at

25-26. Commerce has previously declined to use benchmarks commissioned for the purposes of

countervailing duty proceedings due to "the risk of litigation-inspired fabrication or exaggeration

that may come from later-developed evidence, intended to corroborate the party's story." IDM

at 11 (quoting *Certain Softwood Lumber Products from Canada: Final Affirmative*

*Countervailing Duty Determination, and Final Negative Determination of Critical*

*Circumstances*, 82 Fed. Reg. 51814 (Dep't of Commerce Nov. 8, 2017), and accompanying IDM

at 82); *see also Coated Free Sheet Paper from Indonesia: Final Affirmative Countervailing Duty*

*Determination*, 72 Fed. Reg. 60,642 (Dep't of Commerce Oct. 25, 2007), and accompanying

IDM at Comment 12 (finding a study commissioned specifically for the purposes of an investigation to be unreliable).

Furthermore, the Federal Circuit, in evaluating whether a party's claim had been sufficiently corroborated by the evidence in a patent case, stated that "contemporaneous documentary evidence provides greater corroborative value" in determining whether a party's litigation "story is credible." *TransWeb, LLC v. 3M Innovating Props Co.*, 812 F.3d 1295, 1301-02 (Fed. Cir. 2016) (quoting *Sandt Tech. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001). Kaptan argues that these cases are of "limited applicability" in trade cases, because tests of contemporaneity have "little relevance in trade jurisprudence." Pl. Br. at 26. This line of reasoning seems to suggest that trade cases have a lower evidentiary standard than other cases, like patent cases, which is simply untrue. The Court in *TransWeb* and in *Sandt* directly support Commerce's reasoning in this context: a report prepared at the request of a party for an adjudicatory administrative proceeding is less credible than a report prepared in the ordinary course of business. *See TransWeb*, 812 F.3d at 1301-02. Thus, Commerce acted reasonably in rejecting the Cushman and Wakefield Report.

Commerce's final consideration in rejecting the Cushman & Wakefield report was that prices appear to have been partially based on prices provided by non-private entities, which further limits the reliability of the report as a benchmark. IDM at 12 (citing Kaptan's Benchmark Submission at Exhibit 1 (C.R. 138)); *see also* 19 C.F.R. § 351.511(a)(2) (stating Commerce's preference for market-determined prices). Kaptan argues that the government prices are irrelevant to the proposed benchmark because they are provided as a comparison. Pl. Br. at 28. However, the comparison rates being unreliable is still a consideration Commerce must account for when determining the reliability of the report as a whole.

In completing its analysis, Commerce determined that the Cushman & Wakefield Report submitted by Kaptan was unusable because its proprietary nature, it was prepared in the context of an adjudicative proceeding, and the fact that it relied on prices provided by non-private parties. IDM at 11. This conclusion was reasonable, supported by substantial evidence on the record, and in accordance with law.

**B.     Commerce's Determination To Rely On The Colliers Benchmark Rate Is Supported By Substantial Evidence And In Accordance With Law**

After determining that the benchmark information submitted by Kaptan was unusable, Commerce reasonably relied on the only other benchmark information on the record: the Colliers Report. IDM at 10-11. From the Colliers Report, Commerce relied on the benchmark data from one region in Turkey - Cerkezhoy, Tekirdag - because it had the most similar population density to Surmene, Trabzon, where the land in question is located. IDM at 11. The standard used to select a benchmark emphasizes the importance of comparability. 19 C.F.R. § 351.511(a)(2)(i); *see also Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States*, 273 F. Supp. 3d 1225, 1252 (Ct. Int'l Trade 2017). Given that population density is the most relevant and quantifiable metric available on the record, Commerce reasonably valued population density when determining that the Cerkezhov, Tekirdag benchmark is comparable. IDM at 11.

Kaptan argues that Commerce should have considered factors other than population density when selecting which regional data to use as a benchmark, including factors such as GDP, distance from a commercial center, and import volumes. Pl. Br. at 30. However, this argument assumes that there were other available benchmarks on the record that may have been more comparable to the land at issue. As explained above, Commerce reasonably concluded that the only other available benchmark on the record, the Cushman & Wakefield Report, was unusable due to several concerns about its reliability. IDM at 11. Accordingly, Commerce

reasonably chose the most comparable data available in the Colliers Report based on population density that was on the record.

Kaptan does not argue that any other benchmark from the Colliers Report would have been more comparable to Nur's land.  *See* Pl. Br. at 30.  Instead, Kaptan's reliance on *Ozdemir* appears solely to compare the Colliers Report to the Cushman & Wakefield Report.  *Id.* at 30 (citing *Ozdemir Boru San. Ve Tic. Ltd. Sti. v. United States*, 282 F. Supp. 3d 1352 (Ct. Int'l Trade 2018)).  Without a proposed comparator, *Ozdemir* is inapplicable when the only other alternative has been reasonably rejected by Commerce.  Here, Commerce's analysis appropriately followed 19 C.F.R. § 351.511(a)(2)(i), because a market price was available as a benchmark in the Colliers Report.

Accordingly, Commerce's decision to rely on the data from the Colliers Report to calculate a benchmark price for land was supported by substantial evidence and in accordance with law.

## IV.  Commerce's Use Of AFA For The BITT Exemption, Social Security Support Under Law 4447, And Social Security Support Under 27256 Is Supported By Substantial Evidence And In Accordance With Law

### A.  Legal Framework

Commerce applies the facts otherwise available to make a determination when necessary information is unavailable, or when an interested party withholds information requested by Commerce, fails to provide the information by the deadline, significantly impedes the proceeding, or provides information that cannot be verified.  *See* 19 U.S.C. § 1677e(a)(1)-(2).  Commerce may also apply an adverse inference in selecting among the facts otherwise available if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information."  19 U.S.C. § 1677e(b)(1).

A respondent's failure to cooperate to the "best of its ability" is "determined by assessing whether {the} respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries{.}" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). The statutory trigger for an adverse inference "is simply a failure to cooperate to the best of respondent's ability, *regardless of motivation or intent*." *Id.* at 1383 (emphasis added). Although this standard does not require perfection and recognizes that mistakes sometimes occur, "it does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.* at 1382.

When selecting an AFA rate, Commerce may rely on information from (1) the petition; (2) the final determination in the investigation; (3) any previous administrative review; or (4) any other information on the record. 19 U.S.C. § 1677e(b)(2); 19 C.F.R. § 351.308(c). In selecting an adverse rate from among the possible sources, Commerce seeks to use a rate that is sufficiently adverse to effectuate the statutory purpose of inducing respondents to provide Commerce with complete and accurate information in a timely manner. *See Ozdemir*, 273 F. Supp. 3d at 1245. This ensures "that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *See* SAA, H.R. Doc. No. 103-316, at 870.

**B.     Commerce's Application Of AFA To The BITT Exemption Program Is Supported By Substantial Evidence And In Accordance With Law**

Commerce appropriately applied AFA to calculate Kaptan's benefit under the BITT exemption program because Commerce could not verify that Kaptan reported all the benefits it received under the program when Kaptan withheld necessary information requested by Commerce, significantly impeding the review and failing to cooperate by not acting to the best of its ability to comply with Commerce's request for information.

In its questionnaire, Commerce required Kaptan to report all benefits it received under the BITT exemption program. Commerce's Initial Questionnaire at III-24 and Sec. III Standard Questions Appendix, Question D, April 3, 2023, (P.R. 30) ("What record does your company keep regarding *each of the benefits* received under this program?") (emphasis added). During verification, Commerce determined that Kaptan failed to report the benefits received from the BITT exemption program because it only reported some of its foreign exchange transactions; specifically, Kaptan did not report arbitrage transactions involving exchanges between foreign currencies. Kaptan's Verification Report at 7, November 11, 2023 (P.R. 222, C.R. 233). After Commerce noticed that Kaptan did not report arbitrage transactions, Kaptan attempted to introduce new evidence during verification, which Commerce declined to consider. *See id.* Because of this, Commerce found that Kaptan failed to provide necessary information timely and failed to cooperate, justifying the application of AFA. IDM at 14-15.

Kaptan blames Commerce for the missing transactions, arguing that it was unaware that Commerce interpreted the BITT program as including arbitrage transactions. Pl. Br. at 19. However, Commerce's "interpretation" of the program is irrelevant. Commerce requested Kaptan to report *each* benefit received under the program. Initial Questionnaire at III-24 and Sec. III Standard Questions Appendix, Question D. Commerce did not need to specify types of transactions were relevant to its inquiry for Kaptan to respond fully to Commerce's request for information on all benefits it received from the program. It was Kaptan's duty to provide all of the requested information, and it failed to do so.

Kaptan now asserts that this is a "factual issue" involving the interpretation of Turkish law. Pl. Br. at 19-20. Even if the interpretation of foreign law is a factual question, as Kaptan contends, this inquiry was unnecessary for Commerce to determine the answer to the actual

relevant factual inquiry here: did Kaptan provide all of the necessary information for Commerce to review? Kaptan failed to do so, as evidenced by Kaptan's attempts to provide these arbitrage exchanges after verification showed these foreign currency purchases. *See* Kaptan's Verification Report at 7 (P.R. 222, C.R. 233).

Kaptan further argues that Commerce "failed to evaluate the situation that resulted in the application of AFA," attributing any missing information to a misunderstanding. Pl. Br. at 21. This misunderstanding does not render Commerce's use of AFA unlawful. There is no intent requirement in finding that a party failed to cooperate by not acting to the best of its ability. *Nippon Steel*, 337 F.3d at 1373, 1382-83. Therefore, Kaptan's claim that it would have fully complied with Commerce's request for information had it "understood . . . Commerce's interpret{ation}" is irrelevant. Pl. Br. at 22; *see Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) (sustaining Commerce's application of AFA where the Court found that the respondent's incorrect reporting was not acting to the best of its ability, despite respondent's alleged misunderstanding of reporting requirements); *Bebitz Flanges Works Priv. Ltd. v. United States*, 433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) (sustaining Commerce's finding that a respondent did not act to the best of its ability when respondent argued that it was unaware of the requirements).

Further, Kaptan contends that Commerce violated 19 U.S.C. § 1677m by not issuing a deficiency notice after Kaptan did not provide arbitrage transaction in its questionnaire response. Pl. Br. at 21. Commerce could not have known that Kaptan had arbitrage transactions precisely because Kaptan did not report any in its questionnaire response. *See* Kaptan IQR at 51-54, Exhibit 30 (P.R. 59, C.R. 21, 30). Further, Commerce's determination that arbitrage transactions may qualify as benefits was not a decision in "response to a request for information," which

triggers § 1677m(d) obligations.  *See* 19 U.S.C. § 1677m(d).  Finally, verification is not an

appropriate or practicable place to provide information that Commerce requested in its initial

questionnaires.  *See* 19 C.F.R. § 351.301(c)(1); *see also Goodluck India Ltd. v. United States*, 11

F.4th 1335 (Fed. Cir. 2021); *Hung Vuong Corp.*, 483 F. Supp. 3d at 1349 ("[V]erification is not

an opportunity for a do-over").  Verification is not an information-gathering exercise, and during

verification Commerce is not required to accept revisions to previously reported information,

unless they are minor corrections.  *See Goodluck India*, 11 F.4th at 1343.  Accepting new

information at verification would be inconsistent with Commerce's statutory obligation to verify

the information on which it relies.  *See Truck and Bus Tires from the People's Republic of*

*China: Final Affirmative Countervailing Duty Determination, Final Affirmative Critical*

*Circumstances Determination, in Part,* 82 Fed. Reg. 8,606 (Dep't of Commerce Jan 27, 2017)

and accompanying Issues and Decision Memorandum at 61.

　　Kaptan argues that it was not obligated to report benefits received from the BITT for

arbitrage transactions because Commerce has not included such transactions in past

countervailability determinations.  Pl. Br. at 21.  Again, this argument ignores Kaptan's duty to

report all benefits received under the program, even those accrued from arbitrage.  Furthermore,

Commerce's failure to appropriately consider arbitrage transactions in prior segments does not

preclude it from including them in this segment to ensure a more accurate countervailing duty

rate.  *See Jiaxing Brother Fastener Co. v. United States*, 428 F. Supp. 3d 1364, 1379 n.29 (Ct.

Int'l Tr. 2020) ("Each of Commerce's proceedings are treated as independent proceedings with

separate records and which lead to independent determinations.").

　　Kaptan's failure to provide complete information on the benefits it received from the

BITT exemption program amounts to its withholding of information such that Commerce could

not verify it, which significantly impeded the proceeding, warranting the use of facts available. 19 U.S.C. § 1677e(2)(A), (C) and (D). Furthermore, Commerce reasonably determined that Kaptan failed to cooperate by not acting to the best of its ability to provide the information, since its untimely provision of the information at verification demonstrates on the record that the information on benefit that Commerce was requested was available, and that Kaptan failed to provide it. *Nippon Steel*, 337 F.3d 1373, 1382-83. Thus, Commerce's use of AFA with regards to the benefit received by Kaptan under the BITT exemption program is supported by substantial evidence and in accordance with law.

### C. Commerce's Application Of AFA To The Social Security Support Under Law 4447 Program Is Supported By Substantial Evidence And In Accordance With Law

Commerce applied AFA to find Social Security Support Under Law 4447 countervailable because necessary information was not available on the record, both Kaptan and the GOT withheld necessary information requested by Commerce and significantly impeded the review, and both entities failed to cooperate by not acting to the best of their ability to comply with Commerce's requests for information.

As is its practice, Commerce requested that Kaptan and the GOT provide information on any programs provided to the respondents. Commerce's Initial Questionnaire at II-27, (P.R. 30). Specifically, Commerce asked parties to "describe {programs} in detail, including the amounts, date of receipt, purpose, and terms." *Id.* Kaptan failed to provide any information regarding Social Security Support Under Law 4447 in its initial questionnaire response. *See generally* Kaptan's IQR (C.R. 21, P.R. 59). In that response, Kaptan merely provided that Kaptan received a benefit from a program under Law 6645, and did not explain that that law was in any way related to Law 4447. Kaptan IQR at Exhibit 31 (C.R. 76); *see also* Pl. Br. at 31 ("Kaptan

reported receipt of benefits under Law 4447, a/k/a Law 6645"). Similarly, in the GOT's initial

questionnaire response, it failed to provide any information regarding Social Security Support

Under Law 4447. GOT's Initial Questionnaire Response (GOT IQR), May 29, 2023 (C.R. 77,

P.R. 60). In its supplemental response, the GOT linked Law 4447 and Law 6645 (Law 6645 is

the implementing legislation for Law 4447), but failed to provide complete information

regarding this program because it failed to identify the industry in which respondent companies

are classified under the program, and did not identify the usage codes with which each industry

is associated. GOT's Second Supplemental Questionnaire Response, October 2, 2023 (C.R. 184,

P.R. 189) (GOT 2SQR); *see also* PDM at 6. Therefore, Commerce concluded that necessary

information regarding this program was not available on the record because both Kaptan and the

GOT withheld information requested by Commerce, which significantly impeded the

proceeding, warranting the use of AFA. *See* IDM at 18.

Kaptan asserts that Commerce's conclusion that there was a gap in the record is flawed

because Kaptan timely reported information regarding Social Security Support Under Law 4447

in its initial questionnaire response. Pl. Br. at 35. Kaptan did not; instead, it reported

information under Law 6645 without connecting it to Law 4447. *See* Kaptan IQR at Exhibit 31

(C.R. 76). At verification, Kaptan attempted to untimely submit information related to Law

4447, but Commerce declined to consider new information submitted at verification. Kaptan's

Verification Report at 9-10 (P.R. 222, C.R. 233). This failure to properly connect the benefit

received to the subsidy program created a gap in the record, justifying Commerce's use of facts

available.

Further, Kaptan contends that the GOT's use of NACE economic sector codes to respond

to other parts of Commerce's questionnaire renders GOT's use of NACE codes with regards to

Social Security Support Under Law 4447 sufficient to fill any gap in the record. Pl. Br. at 31-32, 35-36. However, the NACE codes provided regarding this program are not the same NACE codes used in other areas of the questionnaire to report natural gas consumption and industrial registry certificates. GOT IQR at Exhibit 3 (C.R. 80, P.R. 63) and 37 (C.R. 119, P.R. 102). The GOT's reporting of the NACE codes for Social Security Support Under Law 4447 merely list the code (*i.e.* a letter followed by four numbers), but do not provide any explanation of what the code means and are different numbers compared to those provided in other exhibits. *Compare* GOT 2SQR at Exhibit 8 (C.R. 192) *with* GOT IQR at Exhibit 3 (C.R. 80, P.R. 63) and 37 (C.R. 119, P.R. 102). By contrast, the NACE codes provided elsewhere in the GOT's questionnaire response clearly indicate to which industries the codes correlate. *See* GOT IQR at Exhibit 37 (C.R. 119, P.R. 102). Therefore, it was impossible for Commerce to determine the significance of the NACE codes provided for Social Security Support Under Law 4447 by using those provided elsewhere in questionnaire responses.

Finally, Kaptan argues that, if Commerce did not understand the NACE categorizations provided in the GOT's supplemental questionnaire responses, Commerce should have issued another supplemental questionnaire. Pl. Br. at 36. To the extent that Kaptan is making a § 1677m argument, Kaptan is wrong. Commerce was already providing the GOT an opportunity to remedy its earlier deficient response. After the GOT failed to respond to questions regarding Social Security Support Under Law 4447 in the initial questionnaire as it was directed to do, Commerce requested this information in a supplemental response. GOT Supplemental Questionnaire at 2, Sept. 18, 2023, (P.R. 174). When the GOT again failed to provide the information, Commerce found that the GOT withheld necessary information regarding the program, which significantly impeded the proceeding. *See Maverick Tube Corp. v. United*

*States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017) ("{the respondent} had already failed to provide the information requested in Commerce's original questionnaire, and the supplemental questionnaire notified {the respondent} of that defect, § 1677m(d) does not require more").  Therefore, Commerce appropriately used facts available to fill the gap in the record pursuant to 19 U.S.C. § 1677e; *see also Nippon*, 337 F.3d at 1381 ("{t}he mere failure of a respondent to furnish requested information – for any reason – requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination").[5]

D. **Commerce's Application Of AFA To The Social Security Support Under Law 27256 Program Is Supported By Substantial Evidence And In Accordance With Law**

Commerce lawfully applied AFA to countervail Kaptan's use of Social Security Support Under Law 27256 because necessary information regarding this program was not on the record, and Kaptan failed to cooperate by not acting to the best of its ability to provide the information. 19 U.S.C. § 1677e.  Kaptan argues that Commerce cannot countervail this program because the existence of the program is not "shown by evidence on the record."  Pl. Br. at 39.  However, the lack of evidence on the record is precisely *why* Commerce was justified in using AFA:  the information is missing on the record because parties failed to timely submit it, and Commerce therefore reasonably relied on other information on the record, with the use of an adverse inference, to make a determination regarding this program.  IDM at 22-23.

---

[5] Kaptan does not make arguments regarding Commerce's use of an adverse inference in selecting from among the facts otherwise available.  This decision is similarly supported by substantial evidence and in accordance with law.  The GOT's provision of NACE codes with sufficient detail in other parts of the questionnaire prove that it was possible for it to report the information Commerce requested, but that it decided not to.  This does not reflect that the GOT put forth maximum effort to comply with Commerce's requests.  *Nippon,* 337 F.3d at 1382; 19 U.S.C. § 1677e.  Therefore, Commerce's use of adverse facts available is supported by substantial evidence and in accordance with law.

Early in the proceeding, Commerce issued a questionnaire to respondents and the GOT requiring them to report any programs used by respondents over the average useful life of the period of review. Initial Questionnaire at II-27 (P.R. 30). Both Colakoglu and Kaptan, and the GOT, failed to report any benefit received from Social Security Support Under Law 27256 in their initial questionnaire responses. *See* GOT IQR (C.R. 21, P.R. 59); Kaptan's Initial Questionnaire Response, May 26, 2023 (C.R. 21, P.R. 59); Colakoglu's Initial Questionnaire Response, March 26, 2023 (C.R. 10, P.R. 58). Given that Commerce had no knowledge of the program, it did not ask parties for more information on the program in supplemental questionnaires. Kaptan then submitted information on October 12, 2023, more than four months after Commerce initially requested the information, providing information on benefits received from Social Security Support Under Law 27256. *See* Commerce's Letter, "Rejection of Untimely New Factual Information in October 12, 2023," October 16, 2023 (Rejection Letter) (C.R. 205, P.R. 210). Commerce rejected Kaptan's submission as untimely new factual information, and rejected it under 19 C.F.R. § 351.301(c)(5). *Id.* At verification, Kaptan again attempted to provide information regarding Social Security Support Under Law 27256. *See* Kaptan's Verification Report, November 2, 2023 (C.R. 233, P.R. 222). Commerce again rejected the information because verification is not an appropriate venue to provide new factual information. *Goodluck India*, 11 F.4th at 1335.

As a result of Kaptan's failure to submit information by the appropriate deadline, necessary information regarding Social Security Support Under Law 27256 was not available on the record. IDM at 22-23. Commerce's use of facts available is in accordance with law. 19 U.S.C. § 1677e(a)(1) and (a)(2)(B). Furthermore, Kaptan's untimely provision of information on the program proved that it could have furnished the requested information, but did not,

demonstrating that Kaptan failed to cooperate by not acting to the best of its ability in responding to Commerce's requests for information on the program, thus warranting Commerce's use of an adverse inference when choosing from among the facts available. 19 U.S.C. § 1677e(b); *see Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1383 (Fed. Cir. 2016) (finding that the respondent did not act to the best of its ability to provide information requested by Commerce when it submitted the requested information past the deadline).

Now, Kaptan argues that the record contains no information about Social Security Support Under Law 27256. Pl. Br. at 39. Specifically, Kaptan asserts that Commerce's knowledge of Social Security Support Under Law 27256 is derived exclusively from rejected filings, which are included "solely for purposes of establishing and documenting the basis for rejecting the document." Pl. Br. at 40 (citing 19 C.F.R. § 351.104(a)(2)(ii)). Kaptan contends that, without the rejected new factual information, Commerce would have no knowledge "that such a law exists," resulting in no gap in the record because Commerce rejected the information. Pl. Br. at 40.

Accepting Kaptan's argument would directly contradict the purpose of the AFA statute: to ensure that a party does not "obtain a more favorable result by failing to cooperate than if it had cooperated fully," ensuring that parties do not "benefit from {their} own lack of cooperation." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 at 870 (1994). Kaptan informed Commerce of the existence of Social Security Support Under Law 27256, but failed to do so in a way that preserved that information on the record. *See* Rejection Letter (C.R. 205, P.R. 210). Without the application of AFA, Kaptan would be rewarded for failing to adequately respond to Commerce's questionnaires.

Regardless, Kaptan discussed Social Security Support Under Law 27256 at verification. *See* Verification Report at 10. Commerce was put on notice of this program by Kaptan, and Kaptan failed to timely provide sufficient information for Commerce to analyze whether Kaptan received a benefit under the program. This resulted in a gap in the record, due to Kaptan's failure to cooperate, justifying the application of AFA. *See Nippon*, 337 F.3d at 1381.

Kaptan suggests that substantial evidence can only include "evidence" that is "submitted to a tribunal." *See* Pl. Br. at 40-41. Regardless of the dictionary definition of "evidence," Commerce's awareness of Law 27256 resulted from Kaptan's actions during the proceeding, including its belated attempts to submit information regarding this program, which the statute allows Commerce to consider. 19 U.S.C. § 1677e(d)(2) (requiring Commerce to evaluate "the situation that resulted in the administering authority using an adverse inference . . . ."). This qualifies as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). Here, the evidence of the existence of the program is directly relevant to Commerce's determination to apply AFA to the program, and it is adequate to support the conclusion that the information Commerce requested was not available on the record, and that Kaptan did not act to the best of its ability to provide it.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Kaptan's motion for judgment on the agency record and sustain Commerce's final results.

Respectfully submitted,

BRETT A. SHUMATE
Principal Deputy Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL
Heather Holman
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
   Trade Enforcement Compliance

/s/ Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Email: Collin.T.Mathias@usdoj.gov

February 21, 2025

*Attorneys for Defendant United States*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation in Court of International Trade Standard Chambers Procedures § 2(B)(1), and contains approximately 8,892 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Collin T. Mathias