Slip Op. 25 - 131

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., |
| **Plaintiff,** |
| v. |
| UNITED STATES, |
| **Defendant,** |
| and |
| REBAR TRADE ACTION COALITION, |
| **Defendant-Intervenor.** |

Before: Gary S. Katzmann, Judge
Court No. 24-00096

## OPINION AND ORDER

[The Final 2021 Review is sustained in part and remanded in part for Commerce's reconsideration]

Dated: October 6, 2025

David L. Simon, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S.

Collin T. Matthias, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With him on the briefs were Brett Shumate, Principal Deputy Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the briefs was Heather A. Holman, Senior Attorney, U.S. Department of Commerce.

Maureen E. Thorston, Wiley Rein LLP, of Washington, D.C., argued for Defendant-Intervenor Rebar Trade Action Coalition. With her on the briefs were John R. Shane, Alan H. Price, Stephanie M. Bell, and Stephen A. Morrison.

Katzmann, Judge: The U.S. Department of Commerce ("Commerce") determined that

Turkish steel producer Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") received

countervailable subsidies during the 2021 review of Commerce's countervailing duty order on

Court No. 24-00096                                                    Page 2

Turkish rebar.[1]  See Steel Concrete Reinforcing Bar From the Republic of Turkiye: Final Results of Countervailing Duty Administrative Review; 2021, 89 Fed. Reg. 35071 (Dep't Com. May 1, 2024), P.R. 249 ("Final 2021 Review").   Kaptan now challenges these results, arguing that Commerce (1) incorrectly found a foreign exchange tax exemption to be specific and misapplied an adverse inference to calculate Kaptan's benefits; (2) improperly calculated a benchmark for benefits that Kaptan's subsidiary received; (3) should not have applied an adverse inference when determining Kaptan's social security benefits under Turkish Law 4447; and (4) lacked any evidence to calculate Kaptan's social security benefits under Turkish Law 27256.   See generally Pl.'s Mot. for J. on the Agency R., Nov. 17, 2024, ECF No. 23 ("Pl.'s Br.")

The court remands in part the Final 2021 Review for Commerce's further explanation or reconsideration. Finding that Kaptan's arguments regarding the application of an adverse inference to determine its benefits under Turkish Law 4447 are unexhausted or waived, the court sustains this aspect of the Final 2021 Review.

## BACKGROUND

### I.    *Legal and Regulatory Background*

#### A.    *Countervailing Duties*

The Tariff Act of 1930 ("Tariff Act"), as amended, "establishes a remedial regime to combat unfair trade practices."  LA Molisana S.p.A. v. United States, 138 F.4th 1353 (Fed. Cir. 2025).  One of these remedies, the imposition of a countervailing duty, is "directed towards the unfair conduct of foreign governments."  Guangdong Wireking Housewares & Hardware Co. v.

---

[1] Rebar is a steel rod that is embedded into concrete to strengthen a concrete structure.  Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, __ n.1, 666 F. Supp. 3d 1334, 1336 n.1 (2023) (citations omitted).

United States, 745 F.3d 1194, 1196 (Fed. Cir. 2014).  Under 19 U.S.C. § 1671(a), if Commerce

"determines that the government of a country or any public entity within the territory of a country

is providing, directly or indirectly, a countervailable subsidy," Commerce will apply a

countervailing duty "equal to the amount of the net countervailable subsidy."

A subsidy is countervailable if it is specific under 19 U.S.C. § 1677(5A).  See Gov't of

Quebec v. United States, 105 F.4th 1359, 1373 (Fed. Cir. 2024).  Section 1677(5A) provides three

subcategories of "specific" subsidies but only two are relevant here.  A subsidy can be specific as

a matter of law (de jure specific) if the foreign government "expressly limits access to the subsidy

to an enterprise or industry."  19 U.S.C.§ 1677(5A)(D)(i).  Alternatively, a subsidy may be specific

as a matter of fact (de facto specific) if certain factors are met:

> (I) The actual recipients of the subsidy, whether considered on an enterprise or
> industry basis, are limited in number. (II) An enterprise or industry is a predominant
> user of the subsidy. (III) An enterprise or industry receives a disproportionately
> large amount of the subsidy. (IV) The manner in which the authority providing the
> subsidy has exercised discretion in the decision to grant the subsidy indicates that
> an enterprise or industry is favored over others.

19 U.S.C § 1677(5A)(D)(iii).

As the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") recently explained,

"[t]he de jure specificity inquiry is separate from the de facto inquiry and the two are based on

different factors."  Gov't of Quebec, 105 F.4th at 1374.

### B.    *Facts Otherwise Available*

In countervailing duty proceedings, Commerce "obtains most of its factual information

. . . from submissions made by interested parties during the course of the proceeding."   19

C.F.R.§ 351.301(a); see also QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir.

2011) ("Although Commerce has authority to place documents in the administrative record that it

deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce." (internal quotation marks and citation omitted)).  Commerce relies on facts otherwise available to reach the applicable determination if

> necessary information is not available on the record, or . . . an interested party or any other person— (A) withholds information that has been requested by [Commerce] under this subtitle, (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to [19 U.S.C. § 1677m(c)(1) and (e)], (C) significantly impedes a proceeding under this subtitle, or (D) provides such information but the information cannot be verified as provided in [§] 1677m(i).

19 U.S.C. § 1677e(a).  The Federal Circuit has held that a gap in the record is a necessary condition for Commerce to rely on facts otherwise available.  See Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011) ("[I]t is clear that Commerce can only use facts otherwise available to fill a gap in the record.").

If Commerce also finds that an interested party has "failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C.  § 1677e(b)(1); see also Saha Thai Steel Pipe Pub. Co. v. United States, 46 CIT __, __, 605 F. Supp. 3d 1348, 1361 (2022).

If Commerce discovers that a party's submission is deficient, it must "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  That said, Commerce need not continuously provide opportunities for correction. See Maverick Tube Corp. v. United States, 857 F.3d 1353, 1361 (Fed. Cir. 2017).  If the party submits supplementary information that Commerce finds unsatisfactory or untimely, Commerce may "disregard all or part of the original and subsequent responses."  19 U.S.C. § 1677m(d).

Court No. 24-00096                                                                         Page 5

### II.    *Factual History*

On November 6, 2014, Commerce issued a countervailing duty order covering Turkish

rebar.  See Steel Concrete Reinforcing Bar from the Republic of Turkey: Countervailing Duty

Order, 79 Fed. Reg. 65926 (Dep't Com. Nov. 6, 2014).  On November 1, 2022, Commerce initiated

its administrative review of the order for the period from January 1, 2021, through December 21,

2021.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed.

Reg. 50, 55 (Dep't Com. Jan. 3, 2023), P.R. 14.  Commerce issued its preliminary results on

December 7, 2023.  See Steel Concrete Reinforcing Bar from the Republic of Turkey: Preliminary

Results of Countervailing Duty Administrative Review and Rescission of Administrative Review,

in Part; 2021, 88 Fed. Reg. 85234 (Dep't Com. Dec. 7, 2023), P.R. 231; Mem. from J. Maeder to

A. Elouaradia, re: Decision Memorandum for the Preliminary Results of the 2021 Countervailing

Duty Administrative Review and Rescission of Review in Part: Steel Concrete Reinforcing Bar

from the Republic of Turkey (Dep't Com. Nov. 30, 2023), P.R. 229 ("Prelim. IDM").

Kaptan submitted a case brief challenging Commerce's preliminary determination.  See

Letter from Law Office of David L. Simon, PLLC to G. Raimondo, re: Steel Concrete Reinforcing

Bar from Turkey; Case Brief (Jan. 8, 2024), P.R. 235 ("Kaptan Case Br.").  Commerce issued its

final results on May 1, 2024.  See Final 2021 Review; Mem. from J. Maeder to R. Majerus, re:

Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review

of Steel Concrete Reinforcing Bar from the Republic of Turkiye; 2021 (Dep't Com. Apr. 24, 2024),

P.R. 247 ("IDM").

Commerce found that Kaptan received six countervailable subsidies—four of which are

relevant to this case—and calculated six respective countervailing duty rates.  See IDM at 5–6.

The court summarizes below Commerce's determinations at issue in this case: (1) concluding that

exemptions from the Turkish Bank and Insurance Transactions Tax ("BITT") are specific as a matter of law; (2) relying on a report by Colliers International ("Colliers") to value the rent-free lease of land by Kaptan's affiliate; (3) applying adverse facts available to calculate Kaptan's benefit under Turkish Law 4447; and (4) applying adverse facts available to calculate Kaptan's benefit under Turkish Law 27256.

### A.    Exemption from Bank and Insurance Transactions Tax ("BITT") on Foreign Exchange Transactions

The BITT is a tax that the Government of Turkey imposes on sales in foreign currencies. IDM at 13.  Turkish law also provides several exemptions from the BITT tax, including for "foreign exchange sales to enterprises having an industrial registry certificate."[2]  Id.  Commerce determined that Kaptan's reported exemptions from the BITT constituted a countervailable benefit because the exemptions were specific as a matter of law under 19 U.S.C. § 1677(5A)(D)(i).  Id.

Kaptan argued to Commerce that the exceptions are not specific because "all industrial enterprises are required to obtain an industry registry certificate," and thus the BITT exemptions are broadly available.  Kaptan Case Br. at 29.  Commerce rejected this argument in its Final 2021 Review, instead reasoning that the program is specific (1) because the Government of Turkey had

---

[2] Other exemptions are for

> (1) foreign exchange transactions among and between banks and authorized institutions; (2) foreign currency sales to the Ministry of Treasury and Finance; (3) foreign currency sales, by the lending local bank or the local bank that intermediates the loan, to the parties for repayment of their foreign currency-denominated loans . . . and ([4]) foreign currency sales to export companies which are members of exporters' associations.

IDM at 13, see also Letter from Law Office of David L. Simon, PLLC to G. Raimondo, re: Steel Concrete Reinforcing Bar from Turkey; Kaptan Initial Questionnaire Response at 51–52 (May 26, 2023), P.R. 59, C.R. 21 ("IQR").

"not demonstrate[d] that all eligible enterprises actually apply for and obtain industrial registry certificates" and (2) because "the universe of companies that may benefit from the program is necessarily limited to companies that make foreign exchange transactions. IDM at 13. Commerce further reasoned that it had previously found the program countervailable and the Government of Turkey "[had] provided no new information regarding this program that would cause [Commerce] to reconsider this finding." Id. (citing Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2020, 88 Fed. Reg. 34129 (Dep't Com. May 26, 2023), P.R. 156 ("Final 2020 Review")).

Commerce found that "Kaptan withheld necessary information requested by Commerce" because the company had not reported arbitrage transactions[3] in its Initial Questionnaire Response. Id. at 14–15. During verification, Kaptan later attempted to provide information on arbitrage exchanges, but Commerce indicated it "would not accept[] new information at verification." See Mem. from J. McGowan to A. Villanueva, re: Verification of the Questionnaire Responses of Kaptan Demir Celik Endustrisi ve Ticaret A.S: Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from Turkey at 7 (Dep't Com. Nov. 2, 2023), P.R. 222 ("Kaptan Verification Report"). Commerce rejected Kaptan's argument that the failure to report the arbitrage transactions "was made in good faith and with a misunderstanding of the scope of the program," and instead concluded that Kaptan had "failed to cooperate by not acting to the best of its ability to comply with a request for information." IDM at 15. Commerce applied adverse facts available to calculate a countervailing duty rate of 0.89 percent for Kaptan. Id. 16.

---

[3] Arbitrage transactions involve the exchange of one foreign currency for another. See Kaptan Case Br. at 34.

### B.    Rent-Free Lease for Kaptan's Affiliate

In its preliminary results, Commerce found that Nur, Kaptan's cross-owned affiliate, enjoyed a rent-free lease of government-owned land during the 2021 period of review.  Prelim. IDM at 16.  Commerce concluded that the Government of Turkey provided this benefit for less than adequate remuneration.[4]  Id.  Consistent with previous determinations, Commerce found the program to be countervailable as a financial contribution and regionally specific because it is a subsidy available to companies located only in certain geographic regions.  Id. (citing 19 U.S.C. § 1677(5)(D)(iii), (5A)(D)(iv)).

Lacking any direct valuation method for how much Nur would otherwise have paid for the rent-free land during the period of review, Commerce used a benchmark report prepared by Colliers that was submitted by petitioner and now Defendant-Intervenor Rebar Trade Action Coalition ("RTAC").[5]  Id. at 16–17.  In its preliminary results, Commerce did not address an alternate benchmark report that Kaptan proposed, prepared by Cushman & Wakefield ("C&W").  See Letter from Law Office of David L. Simon, PLLC to G. Raimondo, re: Steel Concrete Reinforcing Bar from Turkey; Kaptan Benchmark Submission (July 20, 2023), P.R. 133, C.R. 138–146; see generally Prelim. IDM at 16.  Kaptan argued that the C&W report more accurately reflected the value of the land, and that Commerce failed to properly evaluate the C&W benchmark

---

[4]  Government provision of goods or services for "less than adequate remuneration," as "determined in relation to prevailing market conditions for the good or service being provided," is one form of countervailable subsidy.  19 U.S.C. § 1677(5)(E)(iv); Nucor Corp. v. United States, 927 F.3d 1243, 1245 (Fed. Cir. 2019).

[5]  RTAC is "a trade association of domestic producers of steel concrete reinforcing bar," Def.-Inter.'s Mot. to Intervene at 2, July 17, 2024, ECF No. 15, comprised of Nucor Corporation, Gerdau Ameristeel US Inc., Commercial Metals Company, Byer Steel Group, Inc., and Steel Dynamics, Inc.  IDM at 2.

when preparing its preliminary results.  Kaptan Case Br. at 8–9.  In its final results, Commerce

rejected Kaptan's arguments, finding the Colliers report to be reliable and rejecting the C&W

report because it used business proprietary information provided by Kaptan and was commissioned

by Kaptan for purposes of the review or related litigation.  IDM at 10–12.  Using the Colliers report

as a benchmark to value the rent-free lease, Commerce imposed a countervailing duty rate of 0.74

percent.  Id. at 5–6.

### C.    Turkish Law 4447

Commerce also evaluated social security benefits provided under Turkish Law 4447 and,

applying adverse facts available, determined that this law provided Kaptan with a countervailable

subsidy.  IDM at 17–20.  While the precise contours of Turkish Law 4447 are not clear from the

record, the parties agreed during oral argument that Turkish Law 4447 seems to be an umbrella

law that implements at least two social security benefit programs.  Oral Arg. at 00:21:03–00:21:53

(Kaptan explanation), 00:38:15–00:38:55 (Government response, noting confusion in the record

over    the    law's    application),    01:03:25–01:03:40    (RTAC    response),

https://www.cit.uscourts.gov/sites/cit/files/20250708_24-00096_GSK.mp3.

Commerce applied adverse inferences at two stages of its calculation regarding the benefits

Kaptan received under Turkish Law 4447.

First, Commerce applied adverse facts available to find that Turkish Law 4447 was a

specific, countervailable subsidy within the meaning of 19 U.S.C. § 1677(5A) and 19 U.S.C.

§ 1677(5)(D)(iii).  IDM at 17–18.  Commerce found that the Government of Turkey "did not

provide any information" regarding Turkish Law 4447 in its initial questionnaire response and

"provided an incomplete response" in its supplemental questionnaire response.  Id. at 17.

Specifically, according to Commerce, the Government of Turkey "failed to clearly identify the

industry in which the respondent companies are classified under this program" and did not identify the numeric "usage codes" with which each industry is associated.  Id.  Commerce found that the Government of Turkey "withheld necessary information" and "failed to cooperate by not acting to the best of its ability to comply with . . . requests for information," and Commerce applied adverse facts available pursuant 19 U.S.C. § 1677e.  Id. at 17–18.

Second, Commerce applied adverse facts available to value the benefits Kaptan received under Turkish Law 4447.  Id. at 21.  Commerce determined that Kaptan had not reported benefits under Turkish Law 4447.  Id. at 19.  It rejected arguments from Kaptan that benefits reported under Turkish Law 6111 satisfied Kaptan's reporting requirement because "[the] two laws, as described by the [Government of Turkey] and Kaptan, relate to distinct programs."  Id.  It also rejected Kaptan's attempt to submit supplemental information, as discussed below, and Kaptan's arguments that Commerce failed to follow the required steps before applying adverse facts available.  Id. at 22–23.  Commerce concluded that Kaptan "created a gap in the record and failed to cooperate to the best of its ability regarding its reporting of these programs."  Id. at 23.  As a result, Commerce used an adverse inference when choosing among facts otherwise available and calculated a countervailing duty rate of 1.81 percent.  Id. at 6, 22–23.

### D.    Turkish Law 27256

Finally, Commerce found that Kaptan received "Social Security Support" from Turkish Law 27256, which it determined to be countervailable, and calculated a countervailing duty rate of 1.81 percent.  Id. at 6.  The specific benefits Kaptan received under Turkish Law 27256 are not part of the record and the court need not consider their exact nature to reach its decision here.

During the administrative review, Commerce twice rejected information that Kaptan attempted to submit regarding benefits received under Turkish Law 27256.  First, on October 12,

2023, Kaptan attempted to submit additional information regarding social security support programs. See Letter from Law Office of David L. Simon, PLLC to G. Raimondo, re: Steel Concrete Reinforcing Bar from Turkey: Clarification of Response of Government of Turkey Second Supplemental Questionnaire Responses (Oct. 12, 2023), P.R. 199 ("Supplemental Submission"); see also IDM at 7. Commerce rejected Kaptan's submission because it found that the submission was not meant for "rebutting, clarifying, or correcting factual information" that the Government of Turkey submitted, but to "clarify or correct its own response." See Letter from J. McGowan, AD/CVD Operations, to D. Simon at 1 (Oct. 16, 2023), P.R. 210 ("Rejection Letter") (citing 19 CFR § 351.301(c)(1)(v)). In its Rejection Letter, Commerce stated that Kaptan's submission contained "untimely new factual information regarding benefits received under three Social Security Institution programs," including Turkish Laws 4447 and 27256, and that it deleted Kaptan's submission from the record "in accordance with 19 [C.F.R. §] 351.302(d)(1)(i) and (2)."[6] Rejection Letter at 1–2. During verification, Kaptan again attempted to submit additional information about Turkish Laws 4447 and 27256. Kaptan Verification Report at 9–10. Commerce refused to accept this information. Id.

Commerce concluded that Kaptan's "attempt to provide untimely information created a gap in the record, and demonstrates that [Kaptan] failed to cooperate to the best of its ability." IDM at 22–23. Commerce reasoned that evidence that Kaptan benefited from the program was present in the record in two places: (1) Commerce's Rejection Letter and (2) the Kaptan Verification Report. Id. at 20–21. However, Kaptan's failure to report benefits received under

---

[6] The exact contents of Kaptan's October 12 letter are unknown to the court and are not relevant to the disposition of this case.

Court No. 24-00096                                                                 Page 12

Turkish Law 27256 "caused necessary information to be absent from the record," justifying the
application of adverse facts available to calculate the benefit Kaptan received under the law. Id.
at 23.

### III.     Procedural History

Kaptan timely challenged the Final 2021 Review, filing a complaint against Defendant, the
United States ("the Government"). See Am. Compl., July 1, 2024, ECF No. 12. On November
18, 2024, Kaptan filed a Motion for Judgment on the Agency Record challenging Commerce's
Final 2021 Review. Pl.'s Mot. for J. on the Agency R. at 3–5, Nov. 17, 2024, ECF No. 23 ("Pl.'s
Br."). On February 21, 2025, the Government filed its response. Def.'s Resp. to Pl.'s Mot. for J.
on the Agency R., Feb. 21, 2025, ECF No. 30 ("Gov't Br."). Defendant-Intervenor, RTAC,[7] filed
a response on the same day, defending the Final 2021 Review. Def.-Inter.'s Resp. to Pl.'s Mot. for
J. on the Agency R. at 12–14, Feb. 21, 2025, ECF No. 28 ("Def.-Inter.'s Br."). Kaptan filed its
reply brief on March 31, 2025. Pl.'s Reply Br., March 30, 2025, ECF No. 31 ("Pl.'s Reply"). In
advance of oral argument, the court posed written questions to the parties. See Letter re: Qs. for
Oral Arg., June 25, 2025, ECF No. 38. All parties timely responded to the court's questions. See
Pl.'s Resp. to Qs. for Oral Arg., July 3, 2025, ECF No. 41 ("Pl.'s OAQ Resp."); Def.'s Resp. to
Qs. for Oral Arg., July 3, 2025, ECF No. 43 ("Gov't OAQ Resp."); Def.-Inter.'s Resp. to Qs. for
Oral Arg., July 3, 2025, ECF No. 45 ("Def.-Inter.'s OAQ Resp."). Oral argument in this case took
place on July 8, 2025. At oral argument the court invited the parties to submit supplemental briefs.
Kaptan and the Government both responded by filing briefs on July 21, 2025. See Pl.'s Post-Arg.

---

[7] Kaptan and the Government consented to RTAC's motion to participate as Defendant-Intervenor,
Def.-Inter.'s Mot. to Intervene at 2, July 17, 2024, ECF No. 15, which the court granted. Order
Granting RTAC's Mot. to Intervene, July 25, 2024, ECF No. 19.

Cmts, July 21, 2025, ECF No. 49; Gov't Post-Arg. Subm., July 21, 2025, ECF No. 51.

In a parallel proceeding, the court previously remanded the results of the Final 2020 Review to Commerce. Kaptan Demir Celik Endustrisi v. Ticaret A.S. v. United States, 48 CIT __, __, 736 F. Supp. 3d 1318 (2024) ("Kaptan III"). In that case, Kaptan challenged two aspects of the Final 2020 Review that are similar to issues raised in this case: (1) Commerce's determination that the BITT exemption is specific as a matter of law; and (2) Commerce's decision to rely on the Collier's report instead of the C&W report as a benchmark for valuing Nur's rent-free lease of government land. Id. at 1325–1326. The court remanded both determinations to Commerce.[8] Id. at 1326. As discussed below, the court's analysis in Kaptan III informs the disposition of those two issues in this case.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction lies under 28 U.S.C. § 1581(c). 19 U.S.C. § 1516a(b)(1)(B)(i) supplies the standard of review: "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Broadcom Corp. v. Int'l Trade Comm'n, 28 F.4th 240, 249

---

[8] Subsequently, Kaptan and RTAC each challenged aspects of Commerce's remand decision. Pl.'s Comments on Remand Results, Kaptan III, Feb. 20, 2025, ECF No. 58; Def.-Inter.'s Comments on Remand Results, Kaptan III, Feb. 20, 2025, ECF No. 60. The court's decision in that case is being released concurrently with this opinion. See Kaptan Demir Celik Endustrisi v. Ticaret A.S. v. United States, No. 23-00131, Slip Op. 25-130, (Ct. Int'l Trade Oct. 6, 2025) ("Kaptan III Remand"). Kaptan separately challenged Commerce's 2018 and 2019 administrative reviews of the countervailing duty order on Turkish rebar. See Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, 633 F. Supp. 3d 1276 (2023) ("Kaptan I"); Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, 666 F. Supp. 3d 1334, 1336, appeal docketed, No. 24-1431 (Fed. Cir. Feb. 2, 2024) ("Kaptan I Remand"); Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, No. 22-00149 ("Kaptan II") (stayed pending resolution of Kaptan I). These cases are not relevant to the court's analysis here.

(Fed. Cir. 2022) (internal quotation marks and citation omitted).  To be supported by substantial

evidence, a determination must account for "whatever in the record fairly detracts from its weight,"

including "contradictory evidence or evidence from which conflicting inferences could be drawn."

Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994)

(quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487–88 (1951)).

Separately, Commerce is required to provide "an explanation of the basis for its

determination that addresses relevant arguments, made by interested parties who are parties to the

investigation or review." 19 U.S.C. § 1677f(i)(3)(A); see also Motor Vehicle Mfrs. Ass'n of U.S.,

Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Timken U.S. Corp. v. United States,

421 F.3d 1350, 1357 (Fed. Cir. 2005) (holding that section 1677f(i) codifies the State Farm

standard).

## DISCUSSION

As noted above, Kaptan challenges four aspects of the Final 2021 Review as being

unsupported by substantial evidence: (1) Commerce's finding that exemptions from the BITT are

specific as a matter of law; (2) Commerce's decision to rely on the Colliers report, instead of the

C&W report, to value the rent-free lease of land; (3) Commerce's decision to apply adverse facts

available to calculate Kaptan's benefit under Turkish Law 4447; and (4) Commerce's decision to

apply adverse facts available to calculate Kaptan's benefit under Turkish Law 27256.

For the reasons explained below, the court (1) remands Commerce's determination that the

BITT exemption is specific as a matter of law, (2) remands Commerce's selection of the Colliers

report as a benchmark, (3) sustains Commerce's application of adverse facts available to calculate

Kaptan's benefit under Turkish Law 4447, and (4) remands Commerce's application of adverse

facts available to calculate Kaptan's benefit under Turkish Law 27256.

### I.    Commerce's Determination That the BITT Exemption is Specific as a Matter of Law is Unsupported by Substantial Evidence.

Kaptan first argues that Commerce's determination that the BITT exemption is de jure specific is unsupported by substantial evidence.[9]  Pl.'s Br. at 3, 5.  In the <u>Final 2021 Review</u>, Commerce found the BITT exemption to be de jure specific and thus countervailable under 19 U.S.C. § 1677(5A)(D)(i), reasoning that the exemption is "limited to firms that conduct certain types of foreign exchange transactions."  IDM at 13.  Commerce reached the same conclusion in the prior 2020 administrative review.  Mem. from J. Maeder to L. Wang, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkey; 2020 at 11–12, Case No. C-489-819, Bar Code: 4379744-02 (Dep't Com. May 22, 2023) ("<u>Final 2020 Review</u> IDM").  The court previously remanded the <u>Final 2020 Review</u> for Commerce to reconsider whether the BITT exemption was specific and thus countervailable.  <u>Kaptan III</u>, 736 F. Supp. 3d at 1329–30.  Kaptan cites the court's remand order in <u>Kaptan III</u> and argues that Commerce made the same error here, in its <u>Final 2021 Review</u>.  Pl.'s Br. at 16–17.  The court agrees and remands this aspect of the <u>Final 2021 Review</u> for Commerce to reconsider whether the record supports a determination of de jure or de facto specificity.

Under the relevant law, as described above, Commerce may impose a countervailing duty equal to the value of a countervailable subsidy provided by a foreign government only if that

---

[9] Relatedly, Kaptan also challenges Commerce's decision to apply adverse facts available to Kaptan because Kaptan did not include arbitrage transactions in its benefits database, and Commerce considered these transactions to be covered by the BITT exemption.  Pl.'s Br. at 3–4. The court does not reach this argument because Commerce must first redetermine, on remand, whether the BITT exemption is specific and countervailable.

subsidy is specific.  19 U.S.C. § 1671(a); 19 U.S.C. § 1677(5)(A).  A subsidy is specific as a matter

of law when the law of the subsidy-providing government limits the subsidy to a specific

"enterprise or industry."  19 U.S.C. § 1677(5A)(D)(i).  Alternatively, a subsidy is specific as a

matter of fact when "such a limitation is apparent from observable facts about the subsidy's

distribution."  Kaptan III, 736 F. Supp. 3d at 1327 (describing 19 U.S.C. § 1677(5A)(D)(iii)).

 In Kaptan III, the court held that Commerce's Final 2020 Review impermissibly relied on

facts about the actual usage of the BITT exemption to support a conclusion of specificity as a

matter of law—a conclusion, the court held, that "is not supported by substantial evidence if it

rests only on factors that are unrelated to the construal of the law of the foreign jurisdiction."  Id.

at 1329.  The court noted that "[i]t may be that such extrinsic factors could establish a subsidy's

specificity, but only de facto specificity."  Id.

 The same malady afflicts the Final 2021 Review.  Here, Commerce again found the BITT

exemption to be specific as a matter of law despite the exemption's availability to any company

that holds an "industrial registry certificate"—a certificate that Kaptan argued "all enterprises are

required to hold."  IDM at 13.  Commerce reasoned that even if "industrial registry certificates can

be obtained by all industrial enterprises[,] . . . this does not demonstrate that all eligible enterprises

actually apply for and obtain industrial registry certificates."  Id.  Additionally, Commerce noted

that the exemption is limited to companies that make foreign exchange transactions.  Id.

Commerce concluded that "the BITT exemption necessarily only applies to a limited number of

companies that make foreign exchange transactions."  Id.

 While it is true that "prior decisions of this [c]ourt do not bind the present dispute," Gov't

Br. at 11 n.3, the reasoning underlying the court's previous decision remains sound and guides our

analysis here.  Neither the underlying facts regarding the BITT exemption nor Commerce's
reasons for finding the BITT exemption to be specific have changed.  In both the Final 2020
Review and the Final 2021 Review, Commerce premised its determination of specificity as a
matter of law on its view that the "universe of companies" that qualify for the exemption is limited
to those that make foreign exchange transactions.  See IDM at 13; Final 2020 Review IDM at 12.
This is the type of extrinsic factor that could potentially support a finding of specificity as a matter
of fact.  See 19 U.S.C. § 1677(5A)(D)(iii).  However, in neither administrative review did
Commerce make an adequate finding that Turkish law "expressly limits access to the subsidy to
an enterprise or industry," 19 U.S.C. § 1677(5A)(D)(i), as it must to find a benefit specific as a
matter of law.  See generally IDM at 13; Final 2020 Review IDM at 12.

       The Government does not offer any reason why the court should revisit the reasoning of
Kaptan III or question its application to the identical facts of this case.  The court's reasons for
finding Commerce's de jure specificity finding to be deficient in Kaptan III apply with equal force
in the present case.  See 736 F. Supp. 3d at 1327–29.  In brief, Commerce's determination that
eligibility for the BITT exemption is limited "does not automatically mean that the limitation
delineates an enterprise or industry," and does not justify a finding of specificity as a matter of
law.  Kaptan III, 736 F. Supp. 3d at 1328; see also Gov't of Quebec, 105 F.4th at 1374 (explaining
that the de jure and de facto specificity inquiries are "based on different factors").

       Accordingly, the court remands the Final 2021 Review for Commerce's redetermination
of whether the BITT Exemption is countervailable.  The court's remand instructions in Kaptan III
will suffice here: "In conducting this redetermination, Commerce may consider . . . whether
evidence in the record supports a determination of de facto specificity under section

1677(5A)(D)(iii). Alternatively, Commerce may attempt on remand to further explain why the BITT exemption is specific as a matter of law." 736 F. Supp. 3d at 1329–30 (citation omitted).

> **II.     Commerce Did Not Properly Explain its Rejection of the C&W Report to Value the Rent-Free Lease for Kaptan's Affiliate**

Kaptan next challenges Commerce's reliance on the Colliers report when valuing the rent-free lease of state-owned land by Kaptan's affiliate, Nur, during the period of review. Pl.'s Br. at 4. During the administrative review, Kaptan proposed using a different report prepared by C&W, see Kaptan's Case Br. at 10, which Commerce rejected as "not a usable benchmark." IDM at 11. Kaptan now challenges Commerce's rejection of the C&W report and its reliance on the Collier's report in the Final 2021 Review as being unsupported by substantial evidence. Pl's. Br. at 25. Kaptan raised similar challenges to the Commerce's land valuation determination in the Final 2020 Review, and the court remanded that decision to Commerce in Kaptan III. 756 F. Supp. 3d at 1333. The court concludes that Commerce's Final 2021 Review contained the same flaws identified by the court in Kaptan III, and the court accordingly remands this determination to Commerce.

In the Final 2020 Review, just as in the Final 2021 Review at issue here, Commerce used a report prepared by Colliers as a benchmark to value the same rent-free lease of state land held by Kaptan's affiliate and rejected a report prepared by C&W. Kaptan III, 756 F. Supp. 3d at 1324–25. Commerce provided a nearly identical explanation for its decision in both the Final 2020 Review and the Final 2021 Review. Compare IDM at 10–12 with Final 2020 Review IDM at 8–10. In both cases, Commerce began by addressing Kaptan's argument that the Collier's report is not reliable because it "disclaims liability for its accuracy and cites to itself as the data source," and concluded that this argument was unpersuasive. IDM at 10; Final 2020 Review IDM at 9.

Commerce then turned to Kaptan's argument that the data used by Colliers was not comparable.

In the <u>Final 2021 Review</u>, Commerce repeated its reasoning from the <u>Final 2020 Review</u> almost

word-for-word:

> Kaptan also argues that the Colliers report provides data that are distortive and not comparable to the land area used by Nur, Kaptan's affiliate. We disagree. Kaptan points to the fact that Commerce has limited the data in the Colliers report to only include one province (<u>i.e.</u>, Tekirdag) which has the most similar population density to the land where Nur is located and claims that Commerce has not considered any other factors such as the geographical location of the land within the country of [Turkey] in terms of its proximity to a commercial hub, or any other factors which would affect comparability.[10]
>
> As indicated above, we made an adjustment to the data in this report to use a comparable benchmark for industrial land based on population density information, but we did not opine as to the remaining factors because the record did not contain multiple data sources to choose from. We therefore chose Colliers as the most suitable benchmark on the record and limited our comparability analysis based on the most relevant and quantifiable metric available on the record, which is population density. As we will discuss below, the only other benchmark to assess the rental value of land on the record is Kaptan's submission, which, as discussed below, is not a usable benchmark.

IDM at 11 (footnotes omitted); <u>see also</u> <u>Final 2020 Review</u> IDM at 9.

As the court held in <u>Kaptan III</u>, this response does not address Kaptan's colorable concern

about the Colliers report's geographical sampling. <u>See</u> <u>Kaptan III</u>, 756 F. Supp. 3d at 1332.

"When confronted with a colorable claim that the data that Commerce is considering is

aberrational, Commerce must examine the data and provide a reasoned explanation as to why the

data it chooses is reliable and non-distortive." <u>Mittal Steel Galati S.A. v. United States</u>, 31 CIT

1121, 1135, 502 F. Supp. 2d 1295, 1308 (2007). Here, as in <u>Kaptan III</u>, Commerce failed to

---

[10] At this point in the IDM for the <u>Final 2020 Review</u>, Commerce stated that "[t]his argument is predicated on Kaptan's assumption that there are multiple data sources Commerce could choose from. However, the only usable data source on the record is the Colliers report, and is thus the only source Commerce may consider." <u>Final 2020 Review</u> IDM at 9. The IDM for the <u>Final 2021 Review</u> omits this language. <u>See</u> IDM at 11. The difference in the text does not alter our analysis.

provide "an explanation of the basis for its determination that addresse[d]" Kaptan's relevant argument regarding the geographic focus of the Collier's report.  See 19 U.S.C. § 1677f(i)(3)(A); see also Kaptan III, 736 F. Supp. 3d at 1332.

It is conceivable that "factors such as the geographical location of the land" might affect lease value and that a report that does not account for geographical location might not provide an accurate benchmark.  See IDM at 11.  Commerce was not entitled to ignore this potential problem by merely identifying separate problems with the C&W report.  "Commerce may not use the substantive flaws it identifies in one submission as a basis for declining to address possible flaws in the other."  Kaptan III, 756 F. Supp. 3d at 1333.

Furthermore, in the Final 2021 Review, Commerce again "resorted to a process of elimination in which it struck the C&W report and then selected the Colliers report by default." Kaptan III, 756 F. Supp. 3d at 1332.  As in the prior review, Commerce "simply stated that the C&W report was 'unusable,' " without basing the conclusion of "per se unusability on a sound legal basis."  Id.  In both the Final 2020 Review and the Final 2021 Review, Commerce rejected the C&W report because it was based on business proprietary information and was prepared for litigation.  IDM at 11–12; Final 2020 Review IDM at 9–10.  The court now reiterates that while "these assertions, if valid, might weigh against Commerce's use of the C&W report," they would not make the report per se unusable, nor would they "lift Commerce's statutory burden under 19 U.S.C.§ 1677f(i)(3)(A) to respond to Kaptan's objections to the use of the Collier's report."  See Kaptan III, 756 F. Supp. 3d at 1333.

Here too, the Government argues that "prior decisions by this [c]ourt do not bind the present dispute."  Gov't Br. at 14 n.4.  Maybe so, but where this court found Commerce's reasoning

in a prior review to be flawed, the court sees no reason to find that same reasoning adequate here. Commerce has offered no persuasive argument that the court should reach a different result.

The court accordingly remands this aspect of the <u>Final 2021 Review</u> for Commerce to fully address Kaptan's arguments regarding the Colliers report, and, if appropriate, reconsider its selection of the Colliers report over the C&W report as a benchmark.

### III.    *Kaptan Has Not Preserved its Arguments Regarding Turkish Law 4447*

We turn now to Kaptan's challenge to Commerce's countervailing subsidy determination regarding social security benefits received under Turkish Law 4447. Pl.'s Br. at 4–5. Recall that Commerce applied two adverse inferences in calculating the countervailable subsidies Kaptan received under Turkish Law 4447: Commerce (1) applied adverse facts available to conclude that the program was a specific countervailable subsidy because it found that Turkish Government failed to cooperate to the maximum possible extent, and (2) calculated Kaptan's benefit using an adverse inference because it found that Kaptan "failed to cooperate to the best of its ability." IDM at 17–18, 22–23. Kaptan argues Commerce's application of adverse facts available is not supported by substantial evidence. Pl.'s Br. at 34.

Before challenging a determination by Commerce before the USCIT, a party must exhaust its arguments by first presenting those arguments to Commerce. See <u>Luoyang Bearing Corp. v. United States</u>, 44 CIT __, __, 450 F. Supp. 3d 1402, 1406 (2020), <u>aff'd</u>, 844 F. App'x 368 (Fed. Cir. 2021); <u>Qingdao Sea-Line Trading Co. v. United States</u>, 766 F.3d 1378, 1388 (Fed. Cir. 2014). Separately, the party must include its arguments in its opening brief to the court; arguments omitted from the opening brief are considered waived. <u>Novosteel SA v. U. S., Bethlehem Steel Corp.</u>, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002). Kaptan's arguments regarding Turkish Law 4447 are either unexhausted before Commerce or waived before the court. The court accordingly sustains

Commerce's calculation of Kaptan's social security benefits under Turkish Law 4447.

### A.    Kaptan's Argument That There Is No Gap in the Record Is Unexhausted

Exhaustion of administrative remedies prior to challenging a determination by Commerce before the court is required both by statute and by Commerce's own regulations.  28 U.S.C. § 2637(d); 19 C.F.R. § 351.309(c)(2); see also Luoyang Bearing Corp., 450 F. Supp. 3d at 1406. To exhaust an argument, Commerce regulations instruct that parties must "present all arguments" in a case brief following publication of the agency's preliminary determination.  19 C.F.R. § 351.309(c)(2); see also Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010) ("Commerce regulations require the presentation of all issues and arguments in a party's administrative case brief.").  The exhaustion requirement serves the purposes of promoting procedural fairness, promoting judicial efficiency, and protecting the agency's interest in being the initial decisionmaker.  See Dorbest Ltd., 604 F.3d at 1375; Luoyang Bearing Corp., 450 F. Supp. 3d at 1409.

Courts may lift the exhaustion requirement in "circumstances in which institutional interests are not sufficiently weighty or application of the doctrine would otherwise be unjust." Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1146 (Fed. Cir. 2013); see also Luoyang Bearing Factory v. United States, 26 CIT 1156, 1186 n.26, 240 F. Supp. 2d 1268, 1297 n.26 (2002) (listing exceptions as (1) futility; (2) a subsequent court decision that may impact the agency's decision; (3) a pure question of law; or (4) when plaintiff had reason to believe the agency would not follow established precedent).  These exceptions are narrow, and the court "generally takes a strict view of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases."  Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (internal quotation marks omitted).

Kaptan makes one core contention in its opening brief to challenge Commerce's application of adverse facts available to find Turkish Law 4447 to be specific: that Commerce erred because there was no gap in the record.  See Pl.'s Br. at 35 ("Commerce's application of [adverse facts available] fails at the very first step, namely, identifying a gap in the record.").  Kaptan's assertion that the record contained no gap is premised on two arguments.  First, Kaptan argues that Commerce's determination "ignores Kaptan's timely reporting" of its benefits under Turkish Law 4447.  Id.  Specifically, Kaptan states that its Initial Questionnaire Response "reported receipt of benefits under Law 4447, a/k/a Law 6645."[11]  Id. at 31.  Second, Kaptan contends that Commerce did not properly consider the information provided in the Government of Turkey's second supplemental questionnaire, including "the text of the statute and regulations, the specific usage by Kaptan, and the . . . sectoral usage statistics."  Id. at 35–36.

However, Kaptan did not properly exhaust its administrative remedies because it did not raise these arguments in its case brief before Commerce.  See Qingdao Sea-Line, 766 F.3d at 1388.  In its case brief to Commerce, Kaptan included a general statement that "Commerce's stated rationale for resorting to facts available . . . [is] in error," Kaptan Case Br. at 42–43, but Kaptan did not argue to Commerce that there was no gap in the record, nor did it discuss its reporting under Law 6645 or the Government of Turkey's second supplemental questionnaire response.  See generally id.

In its opening brief to the court, Kaptan treats reporting benefits received under Law 6645

_____

[11] Kaptan did report benefits received under Turkish Law 6645 in its initial question response.  See IQR at Ex. 31.  However, Kaptan did not explain that these benefits were associated with Turkish Law 4447; in contrast, Kaptan did explain to Commerce that social security benefits under Turkish Law 6111 are related to Turkish Law 4447.  See id. at 57–58.

as equivalent to reporting benefits received under Turkish Law 4447.  See Pl.'s Br. at 31 ("Kaptan

reported benefits under Law 4447/6645").  Kaptan additionally argues that its reporting of benefits

under Turkish Law 6645 and Turkish Law 6111 together paint a holistic picture of Kaptan's

benefits under Turkish Law 4447.  Pl.'s OAQ Resp. at 9.  ("There are two programs under Law

4447: [t]he first is a provision of Law 4447 added by Law 6645 . . . .  [t]he second is a provision

of Law 4447 appended by Law 6111.").  In contrast, Kaptan's case brief to Commerce omitted any

mention of Turkish Law 6645 from its discussion of Turkish Law 4447.  See generally Kaptan

Case Br. at 40–45.  Instead, Kaptan argued in its case brief that "Kaptan did report Law

4447—which Kaptan noted had been amended by Law 6111."  See Kaptan Case Br. at 42.  Kaptan

did not fully articulate its view of how Turkish Law 4447 operates to Commerce, nor did it explain

to Commerce how its reporting of benefits received under Law 6645 completes the record.  See

generally id.  It therefore failed to give Commerce a chance to address those views in the first

instance, and this argument was not exhausted.

Similarly, Kaptan did not argue in its case brief that Commerce had failed to properly

consider the information provided by the Government of Turkey's second supplemental

questionnaire.  See generally id. at 40–45.  In its case brief, Kaptan noted Commerce's conclusion

that the Government of Turkey failed to provide complete information identifying usage of the

benefit by sector or explaining the industry in which Kaptan was classified.  Id. at 40–41.  It also

referenced the supplemental response from the Government in Turkey in arguing that Commerce

could have should have provided Kaptan an opportunity to remedy or explain a possible deficiency

that Commerce learned of through that response.  Id. at 44.  However, Kaptan did not argue in its

case brief, as it did in its opening brief to the court, that the sectoral category information provided

by the Government of Turkey was sufficient to fill the alleged gap in the record.  See generally id. Therefore, Kaptan did not present this argument to Commerce, and the argument was not exhausted.

In response to RTAC's contention that Kaptan failed to exhaust these two arguments, see Def-Inter.'s Br. at 31, Kaptan argued that it satisfied the administrative exhaustion requirement because "the issue of Kaptan's reporting of Law 4447 was squarely before the agency during the proceedings below." Pl.'s Reply at 19.  While the general issue was before Commerce, this does not change the fact that Kaptan failed to develop its arguments that there was no gap in the record, or that its reporting of benefits under Law 6645 and the second supplemental questionnaire response by the Government of Turkey filled any alleged gap.  See generally Kaptan Case Br. at 40–43.  The statement of an issue alone does not satisfy the exhaustion requirement; parties are also required to submit all relevant arguments. See Dorbest Ltd., 604 F.3d at 1375 (citing 19 C.F.R. § 351.309(c)(2)).

Furthermore, Kaptan does not argue that there is any reason for the court to lift the exhaustion requirement, such as futility or the existence of a pure question of law.  See Coral Staal B.V., 502 F.3d at 1379.  The court concludes that Kaptan did not exhaust its arguments that there was no gap in the record.

### B.    *Kaptan's Additional Arguments Challenging Commerce's Application of Adverse Facts to Benefits Received Under Turkish Law 4447 Are Waived*

Separately from exhaustion, any arguments not presented by the party in its opening brief to the court are considered waived.  Novosteel, 284 F.3d at 1273–74.  To avoid waiver, a party must articulate its argument; "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  See Home Prods. Int'l, Inc. v. United

States, 36 CIT 33, 37, 810 F. Supp. 2d 1373, 1379 (2012) (quoting United States v. Zannino, 895

F.2d 1, 17 (1st Cir. 1990)).  Making "passing reference" to an argument is not sufficient to preserve

that argument.  ArcelorMittal France v. AK Steel Corp., 700 F.3d 1314, 1325 n.6 (Fed. Cir. 2012)).

An argument is waived if it is not developed in a party's opening brief; inclusion in the

complaint, reply briefs, or oral argument does not suffice.  See Novosteel, 284 F.3d at 1274; Gold

E. Paper (Jiangsu) Co. v. United States, 36 CIT 1730, 1733 n.7, 896 F. Supp. 2d 1242, 1249 n.7

(2012) (issues raised in complaint but not briefed deemed waived); United States v. Ford Motor

Co., 463 F.3d 1267, 1276–77 (Fed. Cir. 2006) (argument raised for the first time in a reply brief

deemed waived); Shell Oil Co. v. United States, 35 CIT 673, 699–700, 781 F. Supp. 2d 1313,

1335–36 (2011), aff'd, 688 F.3d 1376 (Fed. Cir. 2012) (argument raised for the first time at oral

argument deemed waived).

The court has discretion to consider an issue that has been waived "in compelling

circumstances, particularly if the issue has been fully briefed, if the issue is a matter of law or the

record is complete, if there will be no prejudice to any party, and if no purpose is served by

remand."  Veterans4You LLC v. United States, 985 F.3d 850, 857–58 (Fed. Cir. 2021) (quoting

Automated Merch. Sys., Inc. v. Lee, 782 F.3d 1376, 1380 (Fed. Cir. 2015)) (cleaned up).  The

court may consider arguments raised after the initial brief if the opposing party does not argue that

the issue was waived and addressed the issue in subsequent briefing.  See, e.g., Best Mattresses

Int'l Co. v. United States, 47 CIT __, __, 622 F. Supp. 3d 1347, 1372 n.7 (2023).

In various stages throughout this proceeding, Kaptan has raised additional, independent

grounds for remand.  However, these arguments have been waived because they were not included

in Kaptan's opening brief to this court beyond a mere "passing reference."  See ArcelorMittal

France, 700 F.3d at 1325 n.6 (Fed. Cir. 2012).

In its opening brief, Kaptan contends that Commerce's decision to apply adverse facts available to find that Turkish Law 4447 is specific as a matter of fact is not supported by substantial evidence because it is contrary to the factual record.  See Pl.'s Br. at 34, 36.  Kaptan's only developed argument on this point regards the absence of a gap in the record, which was not exhausted, as discussed above.  Kaptan's opening brief alludes to other arguments against the application of adverse facts available, but the reference to these other arguments is at best "perfunctory," and the arguments are therefore waived.  See Home Prods. Int'l, 36 C.I.T. at 37, 810 F. Supp. at 1379.

For instance, Kaptan's opening brief mentions the inquiries Commerce must undertake before for applying adverse facts and selecting the applicable rate: Congress must separately evaluate "whether a respondent's cooperation was to the best of its ability" and "evaluate the respondent's conduct and select a rate commensurate to that conduct."  Pl.'s Br. at 34–35 (first citing 19 U.S.C. § 1677e(b); and then citing Qingdao Sea-Line, 503. F. Supp. 3d at 1361–1362).  However, Kaptan's opening brief does not allege that Commerce erred in conducting either inquiry.  See generally id. at 34–36.  Any argument that Commerce erred in conducting these inquiries is waived.

Additionally, in response to questions from the court prior to oral argument, Kaptan argues that Commerce failed to meet its statutory obligation under 19 U.S.C § 1677m(d) to provide Kaptan with an opportunity to correct its submission.  Pl.'s OAQ Resp. at 8.  However, Kaptan made—at best—only passing reference to this argument in its opening brief, without citing Commerce's statutory obligation.  See Pl.'s Br. at 36 ("If Commerce had any questions about

[sector usage categorizations included in the Government of Turkey's response], it could have

issued a supplemental questionnaire.").[12]  Therefore, even if a "most strained reading" of Kaptan's

complaint or its motion for judgement on the agency record might raise the issue, the issue is

waived and the court declines to consider Kaptan's argument that Commerce was required by 19

U.S.C. § 1677m(d) to provide Kaptan with an opportunity to correct its submission.  <u>See</u>

<u>Novosteel</u>, 284 F.3d at 1273–74.

Kaptan makes several other arguments that are similarly waived because Kaptan did not

present them in its opening brief.  These arguments include: (1) there were no material changes

from the previous administrative proceedings where Commerce found Turkish Law 4447 to be

specific, Pl.'s Reply at 17–18; (2) Commerce abused its discretion in rejecting a supplementary

submission, Am. Compl. at 13; and (3) Commerce incorrectly applied facts available that were

broader than the gap in the record, Pl.'s Reply at 20.  Though Kaptan raised these arguments

variously in its complaint, reply, and responses to the court's questions, they are waived because

they do not appear in Kaptan's opening brief.  <u>See generally</u> Pl.'s Br. at 34–36.

For the reasons stated above, the court sustains Commerce's findings on Turkish Law 4447.

## IV.    *Commerce's Decision to Apply Adverse Facts Available to Calculate Kaptan's Benefits Under Turkish Law 27256 Is Unsupported by Substantial Evidence*

Finally, Kaptan argues that Commerce's application of adverse facts available to Kaptan

---

[12] Kaptan itself provided a clear example of how to raise an argument based on 19 U.S.C.
§ 1677m(d) in the context of the BITT exemption.  <u>Compare</u> Pl.'s Br. at 20 ("19 U.S.C. § 1677m(d)
requires Commerce to notify a respondent if its submissions are deficient."), <u>with</u> Pl.'s Br. at 34–
36.  When Kaptan clearly raised a § 1677m(d) argument, both the Government and RTAC
submitted a fully developed counterargument in their response briefs.  <u>See</u> Gov't Br. at 22–23;
Def.-Inter.'s Br. at 18–19.  In contrast, the Government and RTAC did not submit arguments about
Commerce's obligation under § 1677m(d) to provide Kaptan with a supplemental questionnaire
about Turkish Law 4447.

with respect to social security benefits received under Turkish Law 27256 is unsupported by substantial evidence because Commerce's regulations prohibit it from making determinations based on information it rejected.  Pl.'s Br. at 5, 10.  As discussed above, before applying adverse facts available, Commerce's must first determine that there is a gap in the record.  See Zhejiang DunAn Hetian Metal, 652 F.3d at 1348.  Kaptan argues that, with regard to Turkish Law 27256, the sole basis for Commerce's finding of a gap in the record was evidence that Commerce had rejected.  See Pl.'s Br. at 41.  Commerce's own regulations preclude it from making "any determination" using "factual information, written argument, or other material that the Secretary rejects."  19 C.F.R. § 351.104(a)(2)(i).  The court agrees that Commerce may not rely on rejected information to establish a gap in the record, and therefore Commerce's calculation of Kaptan's benefits under Turkish Law 27256 is not supported by substantial evidence.  The court remands Commerce's calculation of Kaptan's benefits under Turkish Law 27256.

Recall that, during the administrative review, Commerce twice rejected information that Kaptan attempted to submit regarding benefits received under Law 27256.  See Rejection Letter at 1–2; Kaptan Verification Report at 9–10.  Commerce concluded that its own Rejection Letter and Kaptan Verification Report provided evidence that Kaptan benefited from the program and that Kaptan's attempt to provide supplemental information created a gap in the record.  IDM at 20–23.  Additionally, Commerce found that Kaptan's failure to report benefits received under Law 27256 "caused necessary information to be absent from the record," justifying the application of adverse facts available to calculate the benefit Kaptan received under the law.  Id. at 23.

Kaptan challenges Commerce's conclusion that the existence of Law 27256 is shown by evidence on the record, arguing that Commerce's regulations prohibit Commerce from using

information contained in a submission rejected as untimely.  Pl.'s Br. at 39–40 (citing 19 C.F.R.

§ 351.104(a)(2)(i)–(ii)).  Kaptan argues that "there is no gap in the record[] to be filled" by facts

available or adverse facts available because, absent the rejected submissions, there "is no record

evidence that Kaptan received or reported or tried to report any benefits under Law 27256, or even

that such a law exists."  Id. at 40.  Kaptan further argues that "Commerce cannot rely on factual

statements in its own letter as evidence in reaching a determination."  Id.  In the absence of

evidence on the record, the court holds that Commerce's determination is not supported by

substantial evidence.  See 19 U.S.C. § 1516a(b)(1)(B)(i).

        Commerce's regulations prohibit it from using information it rejected to make later

determinations.  First, 19 C.F.R. § 351.104(a)(2)(i) provides that "[t]he Secretary [of Commerce]

in making any determination under this part, will not use factual information, written argument, or

other material that the Secretary rejects."  The next subsection, in relevant part, allows for the

rejected document to be included in the official record "solely for purposes of establishing and

documenting the basis for rejecting the document," if the document was rejected for one of several

reasons, including that it "contains untimely filed new factual information."   19 C.F.R.

§ 351.104(a)(2)(ii).  Furthermore, 19 C.F.R. § 351.302(d)(1) instructs that Commerce "will not

consider . . . [u]ntimely filed factual information, written argument, or other material that the

Secretary rejects."

        Pursuant to these regulations, "Commerce generally does not consider untimely filed

factual information."  Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012); see

also Matra Americas, LLC v. United States, 48 C.I.T. __, __, 681 F. Supp. 3d 1339, 1349 (2024)

(citing 19 C.F.R. § 351.104(a)(2)(i)); Hoa Phat Steel Pipe Co. v. United States, 49 C.I.T __, __,

755 F. Supp. 3d 1337, 1349 (2025) (citing 19 C.F.R. § 351.302(d)(1)–(2)).  This court has likewise

declined to consider factual information contained in rejected submissions, as "Commerce retained

the submissions solely for the purposes of establishing and documenting the basis for its decision."

Papierfabrik August Koehler SE v. United States, 38 CIT 1239, 1253 n.9, 7 F. Supp. 3d 1304,

1318 n.9 (2014) (internal quotation marks omitted).

The Government suggests that these regulations do not apply to this case because

Commerce did not rely on the "factual information" in the rejected materials, but on the reference

to Turkish Law 27256 in Commerce's Rejection Letter and the Kaptan Verification Report.  See

Gov't OAQ Resp. at 7–8; IDM at 20–21 ("[Law 27256] was listed in both Commerce's Rejection

Letter rejecting the submission, and was identified in the [Kaptan] Verification Report.").

Similarly, in its post-argument brief to the court, the Government contends that Commerce

properly relied on "facts and inferences to the existence of program" when applying adverse facts

available.  Gov't Post-Arg. Subm. at 4.

This argument is unpersuasive.  The Government admits that Commerce had "no

knowledge of the program" prior to Kaptan's attempt to submit information on October 12, 2023.

Gov't Br. at 28.  It states that "Commerce's awareness of Law 27256 resulted from Kaptan's

actions during the proceeding, including its belated attempts to submit information regarding this

program." Id. at 30.  Any reference to the existence of Law 27256 in Commerce's own documents

on the record is therefore derived from information that Commerce rejected.  See Rejection Letter

at 1; Kaptan Verification Report at 10.

By relying on the Rejection Letter and Kaptan Verification Report "to establish a gap in

the record," see Gov't OAQ Response at 5, Commerce is selectively utilizing factual information

it rejected to make a determination, contrary to the requirements of 19 C.F.R. § 351.104(a)(2)(i).

In effect, Commerce would preserve information about the existence of Turkish Law 27256 in its

own documents, while rejecting information about the extent of Kaptan's benefits.  This is

impermissible under Commerce's regulations.  As Kaptan argues, 19 C.F.R. § 351.104(a)(2)(i)

does not distinguish between "the 'substance' of rejected submissions and some supposedly

insubstantial aspect of a rejected submission.  Either the submission is rejected or it is not; the

regulation gives no middle ground."  Pl.'s Reply at 23.

      The Government makes several additional arguments for allowing the use of rejected

information to establish the existence of a gap in the record, but these arguments do not overcome

the limitations imposed by Commerce's own regulations.

      First, the Government argues that "[a]ccepting Kaptan's argument would directly

contradict the purpose of the [adverse facts available] statute: to ensure that a party does not 'obtain

a more favorable result by failing to cooperate than if it had cooperated fully,' " or benefit from

the party's " 'own lack of cooperation.' "  Gov't Br. at 29 (quoting Uruguay Round Agreements

Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 at 870 (1994) ("SAA")).

The Government argues that the application of adverse facts available is needed to avoid rewarding

Kaptan for failing to timely report any benefit received under Turkish Law 27256.  Id.

      The Government's reference to legislative purpose, as reflected in the SAA,[13] is not

dispositive.  The Government does not allege that the regulations are not in accordance with the

---

[13] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d).

statutory text,[14] merely that the outcome in this case—that Kaptan's failure to timely report its benefit received under Turkish Law 27256 would allow it to obtain a more favorable result than if it had initially reported the benefit—would circumvent the goals of the adverse facts available statute.  See id.  However, Commerce has the authority to promulgate regulations governing the development of the agency record, see PSC VSMPO-Avisma Corp. v. United States, 688 F.3d 751, 760 (Fed. Cir. 2012), and Commerce must abide by the text of those regulations.  See Torrington Co. v. United States, 82 F.3d 1039, 1049 (Fed. Cir. 1996) (citing Fort Stewart Schools v. Federal Labor Relations Auth., 495 U.S. 641, 654 (1990)); Tension Steel Indus. Co. v. United States, 40 CIT 661, 664–65, 179 F. Supp. 3d 1185, 1190–91 (2016) (finding that Commerce's practice violated the "plain language" of Commerce's regulations).

Second, the Government argues that 19 U.S.C. § 1677e(d)(2) allows it to consider "the situation that resulted in the administering authority using an adverse inference."  Gov't Br. at 30.  The Government claims that this statutory provision allows it to consider as evidence the "situation" that led Commerce to become aware of Turkish Law 27256—i.e., Kaptan's attempts to submit information that Commerce rejected.  Id.  The Government's citation to § 1677e(d)(2) is not relevant.  Section 1677e(d)(2) addresses Commerce's "[d]iscretion to apply highest rate," not its determination that there is a gap in the record.  Where § 1677e(d)(2) applies, Commerce has already determined that there is a gap in the record and that the application of adverse facts available is warranted, and Commerce is merely deciding how to set the dumping margin.  See

---

[14] This court rejected such an agreement in Ferrostaal Metals Gmbh v. United States, 45 CIT __, __, 518 F. Supp. 3d 1357, 1369 (2021) (concluding that Commerce's refusal to consider submissions rejected pursuant to 19 C.F.R. § 351.104(a)(2)(i) was proper and that the regulation did not violate 19 U.S.C. §§ 1677m(d), 1677m(e))).

Hyundai Elec. & Energy Sys. Co. v. United States, 15 F.4th 1078, 1082 (Fed. Cir. 2021) ("If

Commerce properly draws an adverse inference, then . . . it may exercise discretion to apply the

highest dumping margin if warranted based on the situation that resulted in the administering

authority using an adverse inference." (internal quotation marks omitted)).

Third, in support of its argument, the Government cites another instance in which

Commerce relied on rejected information to identify a gap in the record and apply an adverse

inference. Gov't OAQ Resp. at 5 (citing Mosaic Co. v. United States, 49 CIT __, __, 774 F. Supp.

3d 1362, 1379–82 (2025)). The facts in Mosaic Co. are similar to those of this case. See Mosaic

Co., 774 F. Supp. 3d at 1379–80. There, a company belatedly disclosed that it received a payroll

tax refund at the start of verification. See Letter from J. Moore through I. Tzafolias to The File,

Verification of the Questionnaire Responses of OCP S.A., re: Phosphate Fertilizers from Morocco

at 2, Case No. C-714-001, Bar Code: 4444007-01 (October 6, 2023) ("Mosaic Company

Verification Report"). The company provided an explanation for its delay, the relevant data, and

a proposed calculation method for the benefit. Mosaic, 774 F. Supp. 3d at 1379. Commerce

"rejected [the submitted] data in its entirety," and assigned a rate based on adverse facts available.

Id. The court ultimately sustained Commerce's decision to apply adverse facts available as

supported by substantial evidence and in accordance with the law. Id. at 1379–81.

However, in Mosaic, the company did not raise the issue of whether Commerce's actions

were inconsistent with its own regulations or whether there was sufficient evidence on the record.

See generally id. at 1380 (arguing instead that the reported benefit was minor, Commerce's

determination contradicted its established practices, and there was no gap in the record because

the company provided all of Commerce's needed information by the end of verification). More

importantly, the fact that Commerce has previously relied upon rejected evidence does not make this practice permissible. To the extent that Commerce relied upon rejected information, it violated the "plain language" of 19 C.F.R. § 351.104(a)(2)(i), (ii) and 19 C.F.R. § 351.302(d). See Tension Steel, 40 CIT at 664–65.

The court concludes that Commerce's regulations preclude it from considering evidence it rejected in determining that there is a gap in the record or deciding to apply an adverse inference. See 19 C.F.R. § 351.104(a)(2)(i)–(ii); 19 C.F.R. § 351.302(d). Furthermore, Commerce may not circumvent this regulatory restriction through reference to its own rejection of information. In the absence of factual information regarding Turkish Law 27256 other than that contained in the Kaptan's rejected submissions, Commerce's determination of Kaptan's benefits under that provision is supported by no record evidence at all. Sustaining Commerce's actions would therefore contradict the court's statutory mandate to "hold unlawful any determination, finding or conclusion found . . . be unsupported by substantial evidence on the record." See 19 U.S.C. § 1516a(b)(1)(B)(i). The court remands this aspect of the Final 2021 Review to Commerce.

## CONCLUSION

For the reasons explained above, the court remands the Final 2021 Review for Commerce's reconsideration or further explanation of its determinations: (1) that the BITT tax exemption is specific as a matter of law, (2) to rely on the Colliers report to calculate a benchmark for the Nur rent-free lease without adequately addressing Kaptan's critiques of the report, and (3) to apply adverse facts available to calculate Kaptan's benefits under Turkish Law 27256. The court does not compel a result for any issue on remand. The court sustains Commerce's calculation of Kaptan's benefits under Turkish Law 4447. It is hereby:

Court No. 24-00096                                                      Page 36

     **ORDERED** that Commerce shall file its remand redetermination with the court within ninety days of the date of this opinion.  The timeline for filings and comments regarding the second remand redetermination shall proceed according to USCIT Rule 56.2(h).

*/s/  Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>October 6, 2025</u>
      New York, New York